# U.S. District Court
# Eastern District of Arkansas (Central Division)
## CIVIL DOCKET FOR CASE #: 4:21−cv−00450−JM
### *Internal Use Only*

Brandt et al v. Griffin et al
Assigned to: Judge James M. Moody Jr.
Case in other court:  USCA8, 21−02875
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 05/25/2021
Date Terminated: 06/20/2023
Jury Demand: None
Nature of Suit: 950 Constitutional − State Statute
Jurisdiction: Federal Question

**Plaintiff**

**Dylan Brandt**
*by and through his mother Joanna Brandt*

represented by **Alexander S. Holland**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004−2498
212−558−4262
Email: hollanda@sullcrom.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alexander F.R. Peacocke**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004−2498
646−236−3152
Email: peacockea@sullcrom.com
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004−2498
631−418−4323
Email: arun.bodapati@usdoj.gov
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
Sullivan & Cromwell LLP
550 Hamilton Avenue
Palo Alto, CA 94301−2010

650–461–5600
Fax: 650–461–5700
Email: halperna@sullcrom.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–4158
Email: rodgersonb@sullcrom.com
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
Walas Law Firm, PLLC
711 West Third Street
Little Rock, AR 72201
501–246–1067
Email: breean@walaslawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
American Civil Liberties Union
125 Broad Street, Suite 1800
New York, NY 10004–2400
212–284–7320
Email: cstrangio@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
Gill Ragon Owen P.A.
425 West Capitol Avenue, Suite 3800
Little Rock, AR 72201–2413
501–376–3800
Fax: 501–372–3359
Email: travis@gill–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
Sullivan & Cromwell LLP
1700 New York Avenue
Washington, DC 20006
202–956–7024
Email: Richardsond@sullcrom.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
Sullivan & Cromwell LLP
550 Hamilton Avenue
Palo Alto, CA 94301–2010
650–461–5619
Fax: 650–461–5700
Email: simpsond@sullcrom.com
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–4178
Email: armbrustere@sullcrom.com
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–3737
Email: beeneyg@sullcrom.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–3483
Email: lesterj@sullcrom.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–4000

Email: ossipj@gmail.com
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
Sullivan & Cromwell LLP
550 Hamilton Avenue
Palo Alto, CA 94301–2010
650–461–5600
Fax: 650–461–5746
Email: oswelll@sullcrom.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–4023
Email: goldsmithl@sullcrom.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
American Civil Liberties Union
125 Broad Street, Suite 1800
New York, NY 10004–2400
212–549–2627
Email: lcooper@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
American Civil Liberties Union
125 Broad Street, Suite 1800
New York, NY 10004–2400
206–348–3163
Email: lnowlin–sohl@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
Sullivan & Cromwell LLP
1208 Pacific Street, Suite 4G
Brooklyn, NY 11216
212–558–3495
Email: matthewm@sullcrom.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
Gill Ragon Owen P.A.
425 West Capitol Avenue, Suite 3800
Little Rock, AR 72201–2413
501–376–3800
Email: mann@gill–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
Sullivan & Cromwell, LLP
125 Broad Street, Suite 2424
New York, NY 10004–2498
212–558–3963
Email: kadoshr@sullcrom.com
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
Arkansas Civil Liberties Union
Foundation, Inc.
904 West Second Street, Suite 2
Little Rock, AR 72201
918–766–4028
Email: sarah@acluarkansas.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
Gill Ragon Owen P.A.
425 West Capitol Avenue, Suite 3800
Little Rock, AR 72201–2413
501–376–3800
Email: echols@gill–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
Equal Employment Opportunity
Commission
820 Louisiana Street
Suite 200
Little Rock, AR 72201
501–900–6145
Email: GARY.SULLIVAN@EEOC.GOV
*TERMINATED: 05/23/2023*

*ATTORNEY TO BE NOTICED*

**James D. Esseks**
American Civil Liberties Union
125 Broad Street, Suite 1800
New York, NY 10004–2400
917–495–5745
Fax: 212–549–2650
Email: jesseks@aclu.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joanna Brandt**                   represented by   **Alexander S. Holland**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Alexander F.R. Peacocke**
                                                     (See above for address)
                                                     *TERMINATED: 12/30/2022*
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Arun Bodapati**
                                                     (See above for address)
                                                     *TERMINATED: 06/12/2023*
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Aviv S. Halpern**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Brandyn J. Rodgerson**
                                                     (See above for address)
                                                     *TERMINATED: 08/11/2022*
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Breean Walas**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Chase Strangio**
                                                     (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sabrina Jennen**
*by and through her parents Lacey and
Aaron Jennen*

represented by **Alexander S. Holland**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alexander F.R. Peacocke**
(See above for address)
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lacey Jennen**                    represented by  **Alexander S. Holland**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Alexander F.R. Peacocke**
(See above for address)
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)

*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Aaron Jennen**                    represented by  **Alexander S. Holland**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alexander F.R. Peacocke**
(See above for address)
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brooke Dennis**
*by and through her parents Amanda and*
*Shayne Dennis*

represented by **Alexander S. Holland**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alexander F.R. Peacocke**
(See above for address)
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amanda Dennis**                    represented by    **Alexander S. Holland**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Alexander F.R. Peacocke**
(See above for address)
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)

*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shayne Dennis**                    represented by    **Alexander S. Holland**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Alexander F.R. Peacocke**
                                                       (See above for address)
                                                       *TERMINATED: 12/30/2022*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Arun Bodapati**
                                                       (See above for address)
                                                       *TERMINATED: 06/12/2023*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Aviv S. Halpern**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Brandyn J. Rodgerson**
                                                       (See above for address)
                                                       *TERMINATED: 08/11/2022*
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Breean Walas**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)

*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Parker Saxton**                                    represented by    **Alexander S. Holland**
*by and through his father Donnie Saxton*                              (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Alexander F.R. Peacocke**
                                                                       (See above for address)
                                                                       *TERMINATED: 12/30/2022*
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Arun Bodapati**
                                                                       (See above for address)
                                                                       *TERMINATED: 06/12/2023*
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Aviv S. Halpern**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Brandyn J. Rodgerson**
                                                                       (See above for address)
                                                                       *TERMINATED: 08/11/2022*
                                                                       *LEAD ATTORNEY*
                                                                       *PRO HAC VICE*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Breean Walas**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Chase Strangio**
                                                                       (See above for address)
                                                                       *LEAD ATTORNEY*
                                                                       *ATTORNEY TO BE NOTICED*

                                                                       **Christopher L. Travis**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| Donnie Saxton | represented by | **Alexander S. Holland** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |

**Alexander F.R. Peacocke**
(See above for address)
*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Michele Hutchison**                     represented by    **Alexander S. Holland**
*on behalf of herself and her patients*                     (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Alexander F.R. Peacocke**
                                                            (See above for address)

*TERMINATED: 12/30/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arun Bodapati**
(See above for address)
*TERMINATED: 06/12/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aviv S. Halpern**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kathryn Stambough**                     represented by     **Alexander S. Holland**
*on behalf of herself and her patients*                     (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Alexander F.R. Peacocke**
                                                             (See above for address)
                                                             *TERMINATED: 12/30/2022*
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Arun Bodapati**
                                                             (See above for address)
                                                             *TERMINATED: 06/12/2023*
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Aviv S. Halpern**
                                                             (See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brandyn J. Rodgerson**
(See above for address)
*TERMINATED: 08/11/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Breean Walas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Strangio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher L. Travis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel J. Richardson**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Duncan C. Simpson LaGoy**
(See above for address)
*TERMINATED: 07/12/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Emily T. Armbruster**
(See above for address)
*TERMINATED: 08/24/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Garrard Russ Beeney**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan G. Lester**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan J. Ossip**
(See above for address)
*TERMINATED: 06/02/2022*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Kabler Oswell**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lauren Maisel Goldsmith**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leslie Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Li Nowlin–Sohl**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Maxime D. Matthew**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Peter Drake Mann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Kadosh**
(See above for address)
*TERMINATED: 05/11/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Sarah Everett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Elizabeth Echols**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gary Sullivan**
(See above for address)
*TERMINATED: 05/23/2023*
*ATTORNEY TO BE NOTICED*

**James D. Esseks**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tim Griffin**
*in her official capacity as the Arkansas Attorney General (originally named as Leslie Rutledge)*

represented by **Michael Cantrell**
Arkansas Attorney General's Office
Catlett–Prien Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201–2610
501–682–2401
Email: michael.cantrell@arkansasag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
Arkansas Attorney General's Office
Catlett–Prien Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201–2610
501–682–6302
Email: nicholas.bronni@arkansasag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
Arkansas Department of Transformation
and Shared Services
501 Woodlane Street, Suite 501
Little Rock, AR 72201
501–682–5142
Email: amanda.land@arkansas.gov

*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
Arkansas Attorney General's Office
Catlett–Prien Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201–2610
501–682–2700
Email: dylan.jacobs@arkansasag.gov
*ATTORNEY TO BE NOTICED*

**Emily Yu**
Arkansas Attorney General's Office
Catlett–Prien Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201–2610
703–826–5223
Email: emily.yu@arkansasag.gov
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
Arkansas Attorney General's Office
Catlett–Prien Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201–2610
870–373–2865
Email: hannah.templin@arkansasag.gov
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
Friday, Eldredge & Clark, LLP
Catlett–Prien Tower Building
400 West Capitol Avenue
Little Rock, AR 72201–3522
501–370–3309
Fax: 501–537–2930
Email: KHodge@FridayFirm.com
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
Alliance Defendant Freedom
Catlett–Prien Tower Building
44180 Riverside Parkway
Landowne, VA 20176
571–707–4655
Email: vwagner@adflegal.org
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Amy E Embry**
*in her official capacity as the Executive Director of the Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sylvia D Simon**
*in official capacity as member of the Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**

(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert Breving, Jr**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John H Scribner**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elizabeth Anderson**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rhys L Branman**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**

(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Edward Gardner**
*"Ward"; in official capacity as member of the Arkansas State Medical Board*

represented by    **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Rodney Griffin**<br>*in official capacity as member of the*<br>*Arkansas State Medical Board* | represented by | **Michael Cantrell**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Betty Guhman**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian T Hyatt**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**

(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timothy C Paden**
*in official capacity as member of the
Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Don R Philips**<br>*in official capacity as member of the*<br>*Arkansas State Medical Board* | represented by | **Michael Cantrell**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**William L Rutledge**
*in official capacity as member of the Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**David L Staggs**
*in official capacity as member of the Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**

(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Veryl D Hodges**
*in official capacity as member of the*
*Arkansas State Medical Board*

represented by **Michael Cantrell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas J. Bronni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda Denise Land**
(See above for address)
*TERMINATED: 01/11/2023*
*ATTORNEY TO BE NOTICED*

**Dylan L. Jacobs**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Yu**
(See above for address)
*TERMINATED: 08/19/2021*
*ATTORNEY TO BE NOTICED*

**Hannah Lorraine Templin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kat Hodge**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Vincent Moore Wagner**
(See above for address)
*TERMINATED: 02/15/2022*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **American Academy of Pediatrics** | represented by | **Cortlin Hall Lannin** |

Covington & Burling LLP
Salesforce Tower, Suite 5400
415 Mission Street
San Francisco, CA 94105
415−591−7078
Email: clannin@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
Covington & Burling LLP
One City Center
850 Tenth Street N.W.
Washington, DC 20001
202−662−5294
Email: jveta@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
Covington & Burling LLP
One City Center
850 Tenth Street N.W.
Washington, DC 20001
202−662−5888
Email: ebaia@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
Covington & Burling LLP
1999 Avenue of the Stars
Suite 3500

Los Angeles, CA 90067
424–332–4780
Email: mlanosa@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
Covington & Burling LLP
One City Center
850 Tenth Street N.W.
Washington, DC 20001
202–662–5102
Email: wisasi@cov.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
Kutak Rock LLP
124 West Capitol Avenue
Suite 2000
Little Rock, AR 72201–3740
501–975–3142
Fax: 501–975–3001
Email: andrew.king@kutakrock.com
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
Kutak Rock LLP
124 West Capitol Avenue
Suite 2000
Little Rock, AR 72201–3740
501–975–3000
Fax: 501–975–3001
Email: jess.askew@kutakrock.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**Academic Pediatric Association**            represented by  **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**American Academy of Child and Adolescent Psychiatry**          represented by   **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **American Association of Physicians for Human Rights Inc**<br>*doing business as*<br>GLMA: Health Professionals Advancing LGBTQ Equality | represented by | **Cortlin Hall Lannin**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **American College of Osteopathic Pediatricians** | represented by | **Cortlin Hall Lannin**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **D. Jean Veta**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Elizabeth Baia**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Michael J. Lanosa**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **William R. Isasi**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrew King**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Jess L. Askew , III**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **American Medical Association** | represented by | **Cortlin Hall Lannin**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **D. Jean Veta**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Elizabeth Baia** |

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**American Pediatric Society**          represented by  **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**American Psychiatric Association**          represented by          **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

| | | |
|---|---|---|
| **Arkansas Chapter of the American Academy of Pediatrics** | represented by | **Cortlin Hall Lannin** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **D. Jean Veta** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **Elizabeth Baia** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **Michael J. Lanosa** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **William R. Isasi** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **Andrew King** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **Jess L. Askew , III** (See above for address) *ATTORNEY TO BE NOTICED* |

<u>Amicus</u>

| | | |
|---|---|---|
| **Arkansas Council on Child and Adolescent Psychiatry** | represented by | **Cortlin Hall Lannin** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **D. Jean Veta** (See above for address) *LEAD ATTORNEY* *PRO HAC VICE* *ATTORNEY TO BE NOTICED* |
| | | **Elizabeth Baia** |

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Arkansas Psychiatric Society**          represented by   **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Association of Medical School
Pediatric Department Chairs**          represented by  **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Endocrine Society**                      represented by **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**National Association of Pediatric
Nurse Practitioners**                      represented by **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Pediatric Endocrine Society**          represented by  **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Society for Adolescent Health and Medicine**  represented by  **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Society for Pediatric Research**

represented by **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Society of Pediatric Nurses**

represented by **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**World Professional Association for Transgender Health**
   represented by   **Cortlin Hall Lannin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**D. Jean Veta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Baia**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Lanosa**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William R. Isasi**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jess L. Askew , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **LiveRamp Holdings Inc** | represented by | **Boris Bershteyn** |

Skadden, Arps, Slate, Meagher & Flom
LLP
One Manhattan West
New York, NY 10001−8602
212−735−3834
Email: boris.bershteyn@skadden.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John E. Tull , III**
Quattlebaum, Grooms & Tull PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201−3325
501−379−1705
Email: jtull@qgtlaw.com
*ATTORNEY TO BE NOTICED*

**Meredith Autumn Powell**
Quattlebaum, Grooms & Tull PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201−3325
501−379−1710
Fax: 501−379−3810
Email: mpowell@qgtlaw.com
*ATTORNEY TO BE NOTICED*

**Michael Joshua Leicht**
Attorney at Law
2670 Orchard Park Road
Conway, AR 72032
501−733−8311
Email: josh.leicht@gmail.com
*ATTORNEY TO BE NOTICED*

**Shayne Dixon Smith**
Acxiom Corporation
301 East Dave Ward Drive

Conway, AR 72032
501−342−5095
Email: shayne.smith@acxiom.com
*ATTORNEY TO BE NOTICED*

**Steven W. Quattlebaum**
Quattlebaum, Grooms & Tull PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201−3325
501−379−1707
Fax: 501−379−3807
Email: quattlebaum@qgtlaw.com

<u>**Amicus**</u>

**Acxiom LLC**                           represented by   **Boris Bershteyn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gerald (Jerry) Cleveland Jones**
LiveRamp
301 Main Street
Second Floor
Little Rock, AR 72201
501−766−3359
Email: jerry.jones@liveramp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E. Tull , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Autumn Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joshua Leicht**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shayne Dixon Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven W. Quattlebaum**
(See above for address)

<u>**Amicus**</u>

**Kinesso LLC**                          represented by

**Boris Bershteyn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gerald (Jerry) Cleveland Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E. Tull , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Autumn Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joshua Leicht**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shayne Dixon Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven W. Quattlebaum**
(See above for address)

**Amicus**

| | | |
|---|---|---|
| **Northwest Arkansas Council** | represented by | **Boris Bershteyn** |

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gerald (Jerry) Cleveland Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E. Tull , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Autumn Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joshua Leicht**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Shayne Dixon Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven W. Quattlebaum**
(See above for address)

<u>Amicus</u>

**Arkansas State Chamber of
Commerce**

represented by **Boris Bershteyn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gerald (Jerry) Cleveland Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E. Tull , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Autumn Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joshua Leicht**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shayne Dixon Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven W. Quattlebaum**
(See above for address)

<u>Amicus</u>

**Walton Family Foundation Inc**

represented by **Boris Bershteyn**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gerald (Jerry) Cleveland Jones**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E. Tull , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Meredith Autumn Powell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joshua Leicht**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Shayne Dixon Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven W. Quattlebaum**
(See above for address)

**Amicus**

**Alabama, State of**        represented by  **Alexander Barrett Bowdre**
Office of the Attorney General
Post Office Box 300152
Montgomery, AL 36130–0152
334–353–8892
Email: barrett.bowdre@alabamaag.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David R. Hogue**
Hogue Corbitt & Ward PLC
Post Office Box 11200
Conway, AR 72034
501–255–0112
Email: dh@hoguecorbittward.com
*ATTORNEY TO BE NOTICED*

**Edmund G. LaCour , Jr.**
Office of the Attorney General
Post Office Box 300152
Montgomery, AL 36130–0152
334–353–2196
Email: edmund.lacour@AlabamaAG.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Alaska, State of**        represented by  **David R. Hogue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Arizona, State of**                    represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Georgia, State of**                    represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Idaho, State of**                      represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Indiana, State of**                    represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Kansas, State of**                     represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Kentucky, State of**                   represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Louisiana, State of**                  represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Mississippi, State of**                represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Missouri, State of**                   represented by    **David R. Hogue**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Amicus**

**Montana, State of**                    represented by

|  |  | David R. Hogue |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Amicus**

| **Nebraska, State of** | represented by | **David R. Hogue** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Amicus**

| **South Carolina, State of** | represented by | **David R. Hogue** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Amicus**

| **South Dakota, State of** | represented by | **David R. Hogue** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Amicus**

| **Tennessee, State of** | represented by | **David R. Hogue** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Amicus**

| **Texas, State of** | represented by | **David R. Hogue** |
|  |  | (See above for address) |
|  |  | *ATTORNEY TO BE NOTICED* |

**Amicus**

| **Jimmy Hickey**<br>*Senator, in his role as President Pro Tempore of the Senate and on behalf of the Arkansas Senate* | represented by | **Matthew Bauer Miller**<br>Bureau of Legislative Research<br>Arkansas Legislative Council<br>State Capitol Building<br>Room 500<br>Little Rock, AR 72201<br>501–537–9122<br>Email: millerm@blr.arkansas.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| **Matthew Shepherd**<br>*Representative, in his role as Speaker of the House of Representatives and on behalf of the Arkansas House of Representatives* | represented by | **Matthew Bauer Miller**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

Email All Attorneys (Primary Address)

Email All Attorneys (Primary and Secondary Address)

| Date Filed | # | Docket Text |
|---|---|---|
| 05/25/2021 | 1 | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF against All Defendants filed by Michele Hutchison, Aaron Jennen, Donnie Saxton, Amanda Dennis, Dylan Brandt, Kathryn Stambough, Parker Saxton, Sabrina Jennen, Lacey Jennen, Joanna Brandt, Shayne Dennis, Brooke Dennis. (Filing Fee of $402 paid. Receipt #LIT082242.) Summons issued and returned to counsel for service. (Attachment: # 1 Civil Cover Sheet) (llg) (Entered: 05/26/2021) |
| 05/26/2021 | 2 | MOTION for Leave to Appear pro hac vice by Beth Echols. Fee $100 receipt number AAREDC−4019444. Filed by All Plaintiffs (Attachments: # 1 Document, # 2 Document)(Echols, Sharon) (Entered: 05/26/2021) |
| 05/26/2021 | 3 | MOTION for Leave to Appear pro hac vice by Beth Echols. Fee $100 receipt number AAREDC−4019456. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 05/26/2021) |
| 05/26/2021 | 4 | MOTION for Leave to Appear pro hac vice by Beth Echols. Fee $100 receipt number AAREDC−4019460. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 05/26/2021) |
| 05/26/2021 | 5 | MOTION for Leave to Appear pro hac vice by Beth Echols. Fee $100 receipt number AAREDC−4019464. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 05/26/2021) |
| 05/27/2021 | 6 | MOTION for Leave to Appear pro hac vice by Beth Echols. Fee $100 receipt number AAREDC−4020079. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 05/27/2021) |
| 05/27/2021 | 7 | MOTION for Leave to Appear pro hac vice by Beth Echols. Fee $100 receipt number AAREDC−4020089. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 05/27/2021) |
| 05/27/2021 | 8 | ORDER granting 2 , 3 , 4 , 5 , 6 , 7 motions to admit counsel pro hac vice on behalf of Plaintiffs. Garrard R. Beeney, Alexander S. Holland, Jonathan J. Ossip, Laura Kabler Oswell, Chase Strangio, and Duncan C. Simpson LaGoy are hereby admitted to appear before this Court as co−counsel of record in this action. Signed by Judge James M. Moody Jr. on 05/27/2021. (llg) (Entered: 05/27/2021) |
| 06/08/2021 | 9 | AFFIDAVIT by Dylan Brandt. (Attachments: # 1 Affidavit)(Echols, Sharon) (Entered: 06/08/2021) |
| 06/08/2021 | 10 | AFFIDAVIT by Dylan Brandt. (Echols, Sharon) (Entered: 06/08/2021) |
| 06/15/2021 | 11 | MOTION for Preliminary Injunction by All Plaintiffs (Attachments: # 1 Exhibit 1 – Declaration of Dylan Brandt, # 2 Exhibit 2 – Declaration of Joanna Brandt, # 3 Exhibit 3 – Declaration of Sabrina Jennen, # 4 Exhibit 4 – Declaration of Aaron and Lacey Jennen, # 5 Exhibit 5 – Declaration of Brooke Dennis, # 6 Exhibit 6 – Declaration of Shayne and Amanda Dennis, # 7 Exhibit 7 – Declaration of Parker Sexton, # 8 Exhibit 8 – Declaration of Donnie Sexton, # 9 Exhibit 9 – Declaration of Dr. Michele Hutchinson, # 10 Exhibit 10 – Declaration of Dr. Kathryn Stambough, # 11 Exhibit 11 – Declaration of Dr. Deanna Adkins, # 12 Exhibit 12 – Declaration of Dr. Armand H. Matheny Antommaria)(Walas, Breean) (Entered: 06/15/2021) |

| | | |
|---|---|---|
| 06/15/2021 | 12 | BRIEF IN SUPPORT re 11 Motion for Preliminary Injunction,, filed by All Plaintiffs. (Walas, Breean) (Entered: 06/15/2021) |
| 06/16/2021 | 13 | NOTICE of Appearance by Nicholas J. Bronni on behalf of All Defendants (Bronni, Nicholas) (Entered: 06/16/2021) |
| 06/16/2021 | 14 | NOTICE of Appearance by Michael Cantrell on behalf of All Defendants (Cantrell, Michael) (Entered: 06/16/2021) |
| 06/16/2021 | 15 | NOTICE of Appearance by Emily Yu on behalf of All Defendants (Yu, Emily) (Entered: 06/16/2021) |
| 06/16/2021 | 16 | NOTICE of Appearance by Vincent Moore Wagner on behalf of All Defendants (Wagner, Vincent) (Entered: 06/16/2021) |
| 06/16/2021 | 17 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM () by All Defendants (Wagner, Vincent) (Entered: 06/16/2021) |
| 06/16/2021 | 18 | BRIEF IN SUPPORT re 17 Motion to Dismiss/Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim filed by All Defendants. (Wagner, Vincent) (Entered: 06/16/2021) |
| 06/17/2021 | 19 | STATEMENT of Interest of the United States re 1 filed by USA. (jap) (Docket text modified on 6/17/2021 to include filing party.)(cmn) (Entered: 06/17/2021) |
| 06/17/2021 | | NOTICE OF DOCKET CORRECTION re 19 Statement. CORRECTION: The docket text was modified to include correct the description to include, "filed by USA" as indicated by the document. (cmn) (Entered: 06/17/2021) |
| 06/17/2021 | 20 | NOTICE of Appearance by Ka Tina Rena Guest on behalf of Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs (Guest, Ka Tina) (Entered: 06/17/2021) |
| 06/22/2021 | 21 | Emergency MOTION for Extension of Time to File Response/Reply as to 11 MOTION for Preliminary Injunction *; and to Shorten Plaintiffs' Time to Respond to this Motion* by All Defendants (Wagner, Vincent) (Entered: 06/22/2021) |
| 06/22/2021 | 22 | ORDER granting 21 Defendants' motion for an extension of time conditionally on the Defendants' agreement to appear for a hearing on the motion for preliminary injunction and motion to dismiss. With that agreement, the Defendants will have up to and including 07/09/2021 to file their response to the 11 motion for preliminary injunction. The hearing on the motion for preliminary injunction and motion to dismiss is hereby scheduled for 7/21/2021, at 09:00 AM, in Little Rock Courtroom #4A before Judge James M. Moody Jr. Signed by Judge James M. Moody Jr. on 06/22/2021. (llg) (Entered: 06/22/2021) |
| 06/23/2021 | 23 | MOTION for Leave to File Brief of Amici Curiae by all Movants. (fjg) (Entered: 06/23/2021) |
| 06/24/2021 | 24 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 23 Motion for Leave to File Amicus brief. Signed by Judge James M. Moody Jr. on 6/24/2021. (sjh) (Entered: 06/24/2021) |
| 06/24/2021 | 25 | |

| | | MOTION for Leave to Appear pro hac vice by D. Jean Veta. Fee $100 receipt number AAREDC–4042029. Filed by Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (King, Andrew) (Entered: 06/24/2021) |
|---|---|---|
| 06/24/2021 | 26 | MOTION for Leave to Appear pro hac vice by Elizabeth Baia. Fee $100 receipt number AAREDC–4042032. Filed by Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (King, Andrew) (Entered: 06/24/2021) |
| 06/24/2021 | 27 | MOTION for Leave to Appear pro hac vice by Michael J. Lanosa. Fee $100 receipt number AAREDC–4042045. Filed by Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (King, Andrew) (Entered: 06/24/2021) |
| 06/24/2021 | 28 | MOTION for Leave to Appear pro hac vice by William R Isasi. Fee $100 receipt number AAREDC–4042049. Filed by Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (King, Andrew) (Entered: 06/24/2021) |
| 06/24/2021 | 29 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear pro hac vice by Cortlin H. Lannin. Fee $100 receipt number AAREDC−4042068. Filed by Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (King, Andrew) (Entered: 06/24/2021) |
| 06/24/2021 | 30 | BRIEF filed by Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health *Brief of Amici Curiae American Academy of Pediatrics and Additional National and State Medical, Mental Health, and Educational Organizations in Support of Plaintiffs' Motion for Preliminary Injunction* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Askew, Jess) (Entered: 06/24/2021) |
| 06/25/2021 | 31 | ORDER granting 25 , 26 , 27 , 28 , 29 motions to admit counsel pro hac vice. Signed by Judge James M. Moody Jr. on 06/25/2021. (ajt) (Entered: 06/25/2021) |
| 06/30/2021 | 32 | NOTICE of Appearance by Michael J. Lanosa on behalf of Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (Lanosa, Michael) (Entered: 06/30/2021) |
| 06/30/2021 | 33 | RESPONSE in Opposition re 17 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by All Plaintiffs. (Everett, Sarah) (Entered: 06/30/2021) |
| 07/02/2021 | 34 | NOTICE of Appearance by D. Jean Veta on behalf of Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of |

| | | |
|---|---|---|
| | | the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (Veta, D.) (Entered: 07/02/2021) |
| 07/02/2021 | 35 | MOTION for Leave to File Brief of Amici Curiae by LiveRamp Holdings Inc, Acxiom LLC, Kinesso LLC, Northwest Arkansas Council, Arkansas State Chamber of Commerce, Walton Family Foundation Inc (Attachments: # 1 proposed Amicus Curiae) (jap) (Entered: 07/02/2021) |
| 07/02/2021 | 36 | NOTICE of Appearance by Cortlin Hall Lannin on behalf of Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (Lannin, Cortlin) (Entered: 07/02/2021) |
| 07/06/2021 | 37 | NOTICE of Appearance by William R. Isasi on behalf of Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (Isasi, William) (Entered: 07/06/2021) |
| 07/07/2021 | 38 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 35 Motion for Leave to File Brief. Signed by Judge James M. Moody Jr. on 7/7/2021. (sjh) (Entered: 07/07/2021) |
| 07/07/2021 | 39 | NOTICE of Appearance by Steven W. Quattlebaum on behalf of Acxiom LLC, Arkansas State Chamber of Commerce, Kinesso LLC, LiveRamp Holdings Inc, Northwest Arkansas Council, Walton FamilyFoundation Inc (Quattlebaum, Steven) (Entered: 07/07/2021) |
| 07/07/2021 | 40 | NOTICE of Appearance by John E. Tull, III on behalf of Acxiom LLC, Arkansas State Chamber of Commerce, Kinesso LLC, LiveRamp Holdings Inc, Northwest Arkansas Council, Walton FamilyFoundation Inc (Tull, John) (Entered: 07/07/2021) |
| 07/07/2021 | 41 | NOTICE of Appearance by Meredith Autumn Powell on behalf of Acxiom LLC, Arkansas State Chamber of Commerce, Kinesso LLC, LiveRamp Holdings Inc, Northwest Arkansas Council, Walton FamilyFoundation Inc (Powell, Meredith) |

| | | (Entered: 07/07/2021) |
|---|---|---|
| 07/07/2021 | 42 | MOTION for Leave to Appear pro hac vice by Boris Bershteyn. Fee $100 receipt number AAREDC−4049038. Filed by Acxiom LLC, Arkansas State Chamber of Commerce, Kinesso LLC, LiveRamp Holdings Inc, Northwest Arkansas Council, Walton FamilyFoundation Inc (Powell, Meredith) (Entered: 07/07/2021) |
| 07/07/2021 | 43 | BRIEF filed by Acxiom LLC, Arkansas State Chamber of Commerce, Kinesso LLC, LiveRamp Holdings Inc, Northwest Arkansas Council, Walton FamilyFoundation Inc *Amicus Brief – July 7, 2021* (Powell, Meredith) (Entered: 07/07/2021) |
| 07/09/2021 | 44 | RESPONSE in Opposition re 11 MOTION for Preliminary Injunction filed by All Defendants. (Wagner, Vincent) (Entered: 07/09/2021) |
| 07/09/2021 | 45 | ADDENDUM filed by Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs to 44 Response in Opposition to Motion. *Preliminary Injunction Exhibits* (Attachments: # 1 Exhibit 1.Declaration of Stephen B. Levine, M.D., # 2 Exhibit 2.Declaration of Mark Regnerus, Ph.D., # 3 Exhibit 3.Declaration of Paul W. Hruz, M.D., Ph.D., # 4 Exhibit 4.Declaration of Patrick W. Lappert, M.D., # 5 Exhibit 5.Finland Evidence Review, # 6 Exhibit 6.Sweden Evidence Review, # 7 Exhibit 7.Sweden Karolinska Hospital Policy, # 8 Exhibit 8.Sweden Karolinska Hospital Guideline, # 9 Exhibit 9.UK NICE Evidence Review of Puberty Blockers, # 10 Exhibit 10.UK NICE Evidence Review of Cross−Sex Hormones, # 11 Exhibit 11.Cochrane Review, # 12 Exhibit 12.Brnstrm & Pachankis Correction, # 13 Exhibit 13.Brnstrm & Pachankis Letters to the Editor, # 14 Exhibit 14.James M. Cantor Article, # 15 Exhibit 15.Devita Singh, et al., Article, # 16 Exhibit 16.Michael Biggs, The Tavistocks Experimentation with Puberty Blockers., # 17 Exhibit 17.Michael Biggs, The Tavistocks Experiment with Puberty Blockers (Jul. 2019)., # 18 Exhibit 18.Steven H. Woolf Article, # 19 Exhibit 19.WPATH Guidelines, # 20 Exhibit 20.WPATH Position Statement on Medical Necessity, # 21 Exhibit 21.Endocrine Society Guidelines, # 22 Exhibit 22.American Psychological Association Guidelines, # 23 Exhibit 23.American Academy of Pediatrics Guidelines, # 24 Exhibit 24.DSM−5 Excerpt, # 25 Exhibit 25.Declaration of Roger Hiatt, Jr., M.D., # 26 Exhibit 26.Declaration of Christine Cryer., # 27 Exhibit 27.Declaration of Clifton Francis Burleigh, Jr., # 28 Exhibit 28.Declaration of Walt Heyer., # 29 Exhibit 29.Declaration of Laura Perry.)(Wagner, Vincent) (Entered: 07/09/2021) |
| 07/13/2021 | 46 | NOTICE of Appearance by Elizabeth Baia on behalf of Academic Pediatric Association, American Academy of Child and Adolescent Psychiatry, American Academy of Pediatrics, American Association of Physicians for Human Rights Inc, American College of Osteopathic Pediatricians, American Medical Association, American Pediatric Society, American Psychiatric Association, Arkansas Chapter of the American Academy of Pediatrics, Arkansas Council on Child and Adolescent Psychiatry, Arkansas Psychiatric Society, Association of Medical School Pediatric Department Chairs, Endocrine Society, National Association of Pediatric Nurse Practitioners, Pediatric Endocrine Society, Society for Adolescent Health and Medicine, Society for Pediatric Research, Society of Pediatric Nurses, World Professional Association for Transgender Health (Baia, Elizabeth) (Entered: 07/13/2021) |
| 07/13/2021 | 47 | UNOPPOSED MOTION for Leave to File Brief as Amici Curiae by Alabama, State of, Alaska, State of, Arizona, State of, Georgia, State of, Idaho, State of, Indiana, |

| | | |
|---|---|---|
| | | State of, Kansas, State of, Kentucky, State of, Louisiana, State of, Mississippi, State of, Missouri, State of, Montana, State of, Nebraska, State of, South Carolina, State of, South Dakota, State of, Tennessee, State of, Texas, State of (Attachments: # 1 proposed Amici Curiae Brief). (jap) (Entered: 07/14/2021) |
| 07/14/2021 | 48 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 47 Motion for Leave to File brief. Signed by Judge James M. Moody Jr. on 7/14/2021. (sjh) (Entered: 07/14/2021) |
| 07/14/2021 | 49 | BRIEF as Amici Curiae re 44 Response in Opposition to Motion for Preliminary Injunction filed by State of Alabama, Alaska, Arizona, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, South Carolina, South Dakota, Tennessee, AND Texas. (Hogue, David) (Docket text modified on 7/15/2021 to correct the description of the document filed and the party filers) (jak) (Entered: 07/14/2021) |
| 07/15/2021 | | NOTICE OF DOCKET CORRECTION re 49 Brief in Support. CORRECTION: The docket text was modified to correct the description of the document filed and the party filers as "BRIEF as Amici Curiae re 44 Response in Opposition to Motion for Preliminary Injunction filed by State of Alabama, Alaska, Arizona, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, South Carolina, South Dakota, Tennessee, AND Texas" as marked on the document. (jak) (Entered: 07/15/2021) |
| 07/16/2021 | 50 | NOTICE of Appearance by James D. Esseks on behalf of All Plaintiffs (Esseks, James) (Entered: 07/16/2021) |
| 07/16/2021 | 51 | REPLY to Response to Motion re 11 MOTION for Preliminary Injunction *Reply Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction* filed by All Plaintiffs. (Attachments: # 1 Exhibit 13 – Declaration of Dr. Jack Turban, # 2 Exhibit 14 – Supplemental Declaration of Dr. Deanna Adkins, # 3 Exhibit 15 – Supplemental Declaration of Dr. Armand H. Matheny Antommaria)(Walas, Breean) (Entered: 07/16/2021) |
| 07/19/2021 | 52 | ORDER authorizing Chase Strangio, Leslie Cooper, Duncan Simpson, James Esseks, and Elsa Rainey to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, on Wednesday, 07/21/2021, for the motion hearing. Signed by Judge James M. Moody Jr. on 07/19/2021. (llg) (Entered: 07/19/2021) |
| 07/19/2021 | 53 | MOTION for Leave to Appear pro hac vice by Alexander Barrett Bowdre. Fee $100 receipt number AAREDC–4054961. Filed by Alabama, State of. (cmn) (Entered: 07/19/2021) |
| 07/19/2021 | 54 | MOTION for Leave to Appear pro hac vice by Edmund G. LaCour Jr. Fee $100 receipt number AAREDC–4054931. Filed by Alabama, State of. (cmn) (Entered: 07/19/2021) |
| 07/19/2021 | 55 | ADDENDUM filed by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs to 44 Response in Opposition to Motion. (Attachments: # 1 Exhibit Exhibit 30.Supplemental Declaration of Stephen B. Levine, M.D., # 2 Exhibit Exhibit 31.Supplemental Declaration of Mark Regnerus, Ph.D., # 3 Exhibit Exhibit 32.Supplemental |

| | | Declaration of Paul W. Hruz, M.D., Ph.D., # 4 Exhibit Exhibit 33.Roberto DAngelo, et al. Article)(Wagner, Vincent) (Entered: 07/19/2021) |
|---|---|---|
| 07/20/2021 | 56 | ORDER granting the motions to admit counsel pro hac vice on behalf of Amici Curiae the State of Alabama 53 and 54 . Signed by Judge James M. Moody Jr. on 07/20/2021. (llg) (Entered: 07/20/2021) |
| 07/20/2021 | 57 | ORDER granting 42 motion to admit counsel pro hac vice on behalf of Amici Curiae, LiveRamp Holdings, Inc., Acxiom LLC, Kinesso, LLC, the Northwest Arkansas Council, the Arkansas State Chamber of Commerce, and the Walton Family Foundation, Inc. Signed by Judge James M. Moody Jr. on 07/20/2021. (llg) (Entered: 07/20/2021) |
| 07/21/2021 | 58 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: MOTION HEARING held on 7/21/2021. Chase Strangio, Breean Walas, and Duncan C. Simpson LaGoy present for Plaintiffs; Vincent Wagner, Ka Tina Guest, Michael Cantrell, Nicholas Bronni, and Emily Yu present for Defendants. After argument from counsel, the Court GRANTS 11 Plaintiffs' MOTION for Preliminary Injunction and DENIES 17 Defendants' MOTION to Dismiss for the reasons stated on the record. A final hearing date will be set. (Court Reporter: Karen Dellinger.) (kog) (Entered: 07/21/2021) |
| 07/21/2021 | 59 | ORDER denying 17 Defendants' Motion to Dismiss; and granting 11 Plaintiffs' Motion for Preliminary Injunction. Signed by Judge James M. Moody Jr. on 07/21/2021. (ajt) (Entered: 07/21/2021) |
| 07/26/2021 | 60 | TRANSCRIPT of Motion Hearing held on 7/21/2021, before Judge James M. Moody Jr. Court Reporter Karen Dellinger. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 8/2/2021. Redaction Request due 8/16/2021. Redacted Transcript Deadline set for 8/26/2021. Release of Transcript Restriction set for 10/25/2021. (fcd) (Entered: 07/26/2021) |
| 07/27/2021 | 61 | Mail Returned Undeliverable as to Shayne Dixon Smith re 52 Order. (fjg) (Entered: 07/27/2021) |
| 07/28/2021 | 62 | Unopposed MOTION to Extend Time *to File Motion for Attorneys' Fees and Costs* by All Plaintiffs (Everett, Sarah) (Entered: 07/28/2021) |
| 08/02/2021 | 63 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 62 Motion to Extend Time to file motion for attorneys' fees. Signed by Judge James M. Moody Jr. on 8/2/2021. (sjh) (Entered: 08/02/2021) |
| 08/02/2021 | 64 | SUPPLEMENTAL ORDER: Defendants and successors in office are enjoined from enforcing any provision of House Bill 1570, Act 626 of the 93rd General Assembly of Arkansas, to be codified at Ark. Code Ann. §§ 20–9–1501 to 20–9–1504 and 23–79–164 during the pendency of the litigation of this case. Signed by Judge James M. Moody Jr. on 08/02/2021. (llg) (Entered: 08/02/2021) |
| 08/19/2021 | 65 | MOTION to Withdraw as Attorney *Emily Yu* by All Defendants (Yu, Emily) (Entered: 08/19/2021) |
| 08/19/2021 | 66 | |

| | | |
|---|---|---|
| | | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 65 Motion to Withdraw as Attorney. Attorney Emily Yu terminated. Signed by Judge James M. Moody Jr. on 8/19/2021. (sjh) (Entered: 08/19/2021) |
| 08/20/2021 | 67 | NOTICE OF INTERLOCUTORY APPEAL as to 64 Order, 59 Order on Motion for Preliminary Injunction, Order on Motion to Dismiss/Lack of Jurisdiction, Order on Motion to Dismiss for Failure to State a Claim by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs. (Wagner, Vincent) (Entered: 08/20/2021) |
| 08/20/2021 | 68 | NOTIFICATION OF APPEAL and NOA SUPPLEMENT as to 67 Notice of Interlocutory Appeal re 59 Order and 64 Supplemental Order. NOTIFICATION TO COUNSEL: REQUEST FOR TRANSCRIPTS SHOULD BE FILED WITH THE DISTRICT COURT CLERK. (cmn) (Entered: 08/20/2021) |
| 08/23/2021 | 69 | USCA Docketing Letter as to 67 Notice of Interlocutory Appeal, filed by Don R Philips, Brian T Hyatt, Veryl D Hodges, Robert Breving, Jr, Sylvia D Simon, Timothy C Paden, Edward Gardner, Rodney Griffin, Betty Guhman, John H Scribner, Amy E Embry, William L Rutledge, Leslie Rutledge, David L Staggs, Elizabeth Anderson, Rhys L Branman. USCA Case Number 21–2875. (jbh) (Entered: 08/24/2021) |
| 08/23/2021 | 70 | USCA Scheduling Order as to 67 Notice of Interlocutory Appeal, filed by Don R Philips, Brian T Hyatt, Veryl D Hodges, Robert Breving, Jr, Sylvia D Simon, Timothy C Paden, Edward Gardner, Rodney Griffin, Betty Guhman, John H Scribner, Amy E Embry, William L Rutledge, Leslie Rutledge, David L Staggs, Elizabeth Anderson, Rhys L Branman. Transcript due by 10/4/2021. (jbh) (Entered: 08/24/2021) |
| 08/24/2021 | 71 | USCA Appeal Fees received $505.00 Receipt # LIT083416 re 67 Notice of Interlocutory Appeal, filed by all Defendants. (fjg) (Entered: 08/24/2021) |
| 09/09/2021 | 72 | MOTION for Order ; *specifically Motion for Scheduling Order* by All Plaintiffs (Attachments: # 1 Exhibit A – Proposed Final Scheduling Order)(Walas, Breean) (Entered: 09/09/2021) |
| 09/14/2021 | 73 | ANSWER to 1 Complaint, by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs.(Wagner, Vincent) (Entered: 09/14/2021) |
| 09/23/2021 | 74 | RESPONSE in Opposition re 72 MOTION for Order ; *specifically Motion for Scheduling Order* filed by All Defendants. (Wagner, Vincent) (Entered: 09/23/2021) |
| 09/28/2021 | 75 | REPLY to Response to Motion re 72 MOTION for Order ; *specifically Motion for Scheduling Order* filed by All Plaintiffs. (Everett, Sarah) (Entered: 09/28/2021) |
| 09/30/2021 | 76 | FINAL SCHEDULING ORDER: Bench Trial set sometime during the week of 7/25/2022 at 9:15 AM in Little Rock Courtroom # 4A before Judge James M. Moody Jr. Discovery due by 12/17/2021; Motions due by 4/22/2022; Pretrial Disclosure Sheet due by 5/31/2022; Status Report due by 4/29/2022. Signed at the Direction of |

| | | the Court on 9/30/2021. (kog) (Entered: 09/30/2021) |
|---|---|---|
| 09/30/2021 | 77 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 72 Motion for Scheduling Order. Signed by Judge James M. Moody Jr. on 9/30/2021. (sjh) (Entered: 09/30/2021) |
| 10/25/2021 | 78 | REPORT of Rule 26(f) Planning Meeting by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Everett, Sarah) (Entered: 10/25/2021) |
| 11/16/2021 | 79 | Unopposed MOTION for Extension of Time to Complete Discovery *up to and including February 25, 2022* by Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, Sylvia D Simon, David L Staggs (Guest, Ka Tina) (Entered: 11/16/2021) |
| 11/17/2021 | 80 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 79 Motion for Extension of Time to Complete Discovery until February 25, 2022. Signed by Judge James M. Moody Jr. on 11/17/2021. (sjh) (Entered: 11/17/2021) |
| 12/27/2021 | 81 | MOTION for Leave to Appear pro hac vice by Brandyn J Rodgerson. Fee $100 receipt number AAREDC−4173174. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 12/27/2021) |
| 12/28/2021 | 82 | ORDER granting 81 motion to admit counsel pro hac vice. Brandyn J. Rodgerson is hereby admitted to appear before this Court as co−counsel of record in this action. Signed by Judge James M. Moody Jr. on 12/28/2021. (jbh) (Entered: 12/29/2021) |
| 01/13/2022 | 83 | Mail Returned Undeliverable as to Shayne Dixon Smith re 82 Order. (fjg) (Entered: 01/13/2022) |
| 01/20/2022 | 84 | MOTION for Order to Show Cause *and to Compel Production of Documents* by All Plaintiffs (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14)(Walas, Breean) (Entered: 01/20/2022) |
| 01/20/2022 | 85 | BRIEF IN SUPPORT re 84 Motion for Order to Show Cause, *and to Compel Production of Documents* filed by All Plaintiffs. (Walas, Breean) (Entered: 01/20/2022) |
| 01/31/2022 | 86 | NOTICE of Appearance by Dylan L. Jacobs on behalf of All Defendants (Jacobs, Dylan) (Entered: 01/31/2022) |
| 01/31/2022 | 87 | Unopposed MOTION for Extension of Time to File Response/Reply as to 84 MOTION for Order to Show Cause *and to Compel Production of Documents by Respondent Legislators* by All Defendants (Jacobs, Dylan) (Entered: 01/31/2022) |
| 02/01/2022 | 88 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 87 Unopposed Motion for Extension of Time to File Response. Response due by 2/17/2022. Signed by Judge James M. Moody Jr. on 2/1/2022. (sjh) (Entered: 02/01/2022) |
| 02/02/2022 | 89 | |

| | | |
|---|---|---|
| | | STIPULATION *Stipulated Protective Order* by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Walas, Breean) (Entered: 02/02/2022) |
| 02/07/2022 | 90 | STIPULATED PROTECTIVE ORDER. Signed by Judge James M. Moody Jr. on 2/7/2022. (jbh) (Entered: 02/07/2022) |
| 02/11/2022 | 91 | MOTION to Withdraw as Attorney by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs (Guest, Ka Tina) (Entered: 02/11/2022) |
| 02/14/2022 | 92 | MOTION to Withdraw as Attorney by All Defendants (Wagner, Vincent) (Entered: 02/14/2022) |
| 02/15/2022 | 93 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 91 Motion to Withdraw as Attorney. Attorney Ka Tina Rena Guest terminated; granting 92 Motion to Withdraw as Attorney. Attorney Vincent Moore Wagner terminated. Signed by Judge James M. Moody Jr. on 2/15/2022. (sjh) (Entered: 02/15/2022) |
| 02/17/2022 | 94 | RESPONSE in Opposition re 84 MOTION for Order to Show Cause *and to Compel Production of Documents by Respondent Legislators* filed by All Defendants. (Jacobs, Dylan) (Entered: 02/17/2022) |
| 02/23/2022 | 95 | STIPULATION *and Proposed Order* by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Attachments: # 1 Document Proposed Final Scheduling Order)(Holland, Alexander) (Entered: 02/23/2022) |
| 02/24/2022 | 96 | REPLY to Response to Motion re 84 MOTION for Order to Show Cause *and to Compel Production of Documents* filed by All Plaintiffs. (Walas, Breean) (Entered: 02/24/2022) |
| 02/25/2022 | 97 | Mail Returned Undeliverable as to Shayne Dixon Smith re 93 Text Entry Only Order. Resent to updated address. (fjg) (Entered: 02/28/2022) |
| 02/28/2022 | 98 | ORDER granting in part and denying in part 84 Motion for Order to Show Cause and to Compel Production of Documents. The Legislators' objections to Plaintiffs' subpoena duces tecum are overruled. The Legislators are directed to file a privilege log with the Court within ten (10) days of this Order. The Court grants the parties' Stipulation and Proposed Scheduling Order except for the proposed trial date which will be scheduled to begin the week of 10/17/2022. A new scheduling order will follow. Signed by Judge James M. Moody Jr. on 2/28/2022. (fcd) (Entered: 02/28/2022) |
| 02/28/2022 | 99 | AMENDED FINAL SCHEDULING ORDER: Bench Trial set sometime during the week of 10/17/2022 at 9:15 AM in Little Rock Courtroom # 4A before Judge James M. Moody Jr. Discovery due by 5/26/2022; Motions due by 6/17/2022; Pretrial Disclosure Sheet due by 8/2/2022; Status Report due by 7/1/2022. Signed at the Direction of the Court on 2/28/2022. (kog) (Entered: 02/28/2022) |
| 03/07/2022 | 100 | |

| | | MOTION to Compel *Production of Documents* by All Plaintiffs (Attachments: # 1 Exhibit 1 – Plfs First RFPs, # 2 Exhibit 2 – Defs Resp to First RFPs, # 3 Exhibit 3 – Defs Resp (DEF001–DEF008), # 4 Exhibit 4 – 12.6.21 Ltr to Guest, # 5 Exhibit 5 – 1.10.22 Ltr to Simpson LaGoy, # 6 Exhibit 6 – Defs Supp Resp to First RFPs (excerpts), # 7 Exhibit 7 – Defs 1.21.22 Privilege Log, # 8 Exhibit 8 – 1.21.22 Ltr to Simpson LaGoy, # 9 Exhibit 9 – 1.31.22 Ltr to Guest, # 10 Exhibit 10 – 2.1.22 Ltr to Simpson LaGoy)(Walas, Breean) (Entered: 03/07/2022) |
|---|---|---|
| 03/07/2022 | 101 | BRIEF IN SUPPORT re 100 Motion to Compel,, filed by All Plaintiffs. (Walas, Breean) (Entered: 03/07/2022) |
| 03/09/2022 | 102 | NOTICE of Appearance by Graham Caughman Talley on behalf of Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, and Jim Wooten. (Talley, Graham) (Docket text modified on 5/19/2022 to correct the party filers) (jak) (Entered: 03/09/2022) |
| 03/09/2022 | 103 | MOTION to Extend Time on behalf of Senator Alan Clark and Representatives Mary Bentley, Robin Lundstrum, Marcus Richmond and Jim Wooten. (Talley, Graham) (Docket text modified on 5/19/2022 to correct the party filers) (jak). (Entered: 03/09/2022) |
| 03/09/2022 | 104 | NOTICE of Appearance by Anton Leo Janik, Jr on behalf of Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, and Jim Wooten. (Janik, Anton) (Docket text modified on 5/19/2022 to correct the party filers) (jak) (Entered: 03/09/2022) |
| 03/09/2022 | 105 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting in part and denying in part 103 Motion to Extend Time. The deadline to provide the privilege log is extended to March 24, 2022. Signed by Judge James M. Moody Jr. on 3/9/2022. (amr) (Entered: 03/09/2022) |
| 03/09/2022 | 106 | MOTION to Withdraw as Attorney *for Legislators and to Substitute Appearance for All Defendants* by All Defendants (Jacobs, Dylan) (Entered: 03/09/2022) |
| 03/14/2022 | 107 | ORDER granting 106 Motion to Withdraw as Attorney for the Legislator Defendants. Attorney Dylan Jacobs is Attorney of Record for the State Defendants only. Signed by Judge James M. Moody Jr. on 3/14/2022. (sjh) (Entered: 03/14/2022) |
| 03/21/2022 | 108 | RESPONSE in Opposition re 100 MOTION to Compel *Production of Documents* filed by All Defendants. (Attachments: # 1 Exhibit 1 – Discovery)(Cantrell, Michael) (Entered: 03/21/2022) |
| 03/24/2022 | 109 | NOTICE by Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, Jim Wooten. (Attachments: # 1 Exhibit Privilege Log)(Talley, Graham) (Docket text modified on 5/19/2022 to correct the party filers) (jak) (Entered: 03/24/2022) |
| 03/28/2022 | 110 | REPLY to Response to Motion re 100 MOTION to Compel *Production of Documents* filed by All Plaintiffs. (Holland, Alexander) (Entered: 03/28/2022) |
| 03/31/2022 | 111 | MOTION for Leave to Appear pro hac vice by Daniel J. Richardson. Fee $100 receipt number AAREDC–4235432. Filed by All Plaintiffs (Echols, Sharon) (Entered: 03/31/2022) |
| 03/31/2022 | 112 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) NOTICE of Hearing on 100 MOTION to Compel: MOTION HEARING set for 4/5/2022 at 3:00 PM in Little Rock Courtroom # 4A before Judge James M. |

| | | Moody Jr. (kog) (Entered: 03/31/2022) |
|---|---|---|
| 04/01/2022 | 113 | NOTICE of Appearance by Gary L. Sullivan on behalf of All Plaintiffs (Sullivan, Gary) (Entered: 04/01/2022) |
| 04/01/2022 | 114 | ORDER granting 111 motion to admit counsel pro hac vice on behalf of Plaintiffs. Daniel J. Richardson is hereby admitted to appear before this Court as co−counsel of record in this action. Signed by Judge James M. Moody Jr. on 4/1/2022. (jbh) (Entered: 04/01/2022) |
| 04/04/2022 | 115 | NOTICE of Appearance by Amanda Denise Land on behalf of Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs (Land, Amanda) (Entered: 04/04/2022) |
| 04/05/2022 | 116 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: MOTION HEARING held on 4/5/2022. Daniel Richardson was present for Plaintiffs; Dylan Jacobs was present for Defendants. After argument from counsel, the Court takes 100 MOTION to Compel Production of Documents under advisement. A written order is forthcoming. (Court Reporter: Karen Dellinger.) (kog) (Entered: 04/05/2022) |
| 04/06/2022 | 117 | ORDER granting 100 Motion to Compel; and directing Defendants to produce a privilege log regarding these documents within 10 days of the date of this Order. Signed by Judge James M. Moody Jr. on 4/6/2022. (jbh) (Entered: 04/06/2022) |
| 05/05/2022 | 118 | MOTION for Leave to Appear pro hac vice by Emily T. Armbruster. Fee $100 receipt number AAREDC−4259873. Filed by All Plaintiffs (Attachments: # 1 Document Armbrister Certificate of Good Standing)(Echols, Sharon) (Entered: 05/05/2022) |
| 05/10/2022 | 119 | MOTION to Quash *and for Protective Order* by Robin Lundstrum. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Talley, Graham) (Docket text modified on 5/19/2022 to correct the party filer) (jak) (Entered: 05/10/2022) |
| 05/10/2022 | 120 | BRIEF IN SUPPORT re 119 Motion to Quash *and for Protective Order* filed by Robin Lundstrum. (Talley, Graham) (Docket text modified on 5/19/2022 to correct the party filer) (jak) (Entered: 05/10/2022) |
| 05/12/2022 | 121 | ORDER granting 118 Motion to Appear Pro Hac Vice; and admitting Emily T. Armbruster to appear before this Court as co−counsel of record in this action. Signed by Judge James M. Moody Jr. on 5/12/2022. (ldb) (Entered: 05/12/2022) |
| 05/13/2022 | 122 | MOTION to Compel *the Production of Documents* by All Plaintiffs (Attachments: # 1 Appendix A, # 2 Appendix B, # 3 Appendix C, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3)(Holland, Alexander) (Entered: 05/13/2022) |
| 05/13/2022 | 123 | BRIEF IN SUPPORT re 122 Motion to Compel *the Production of Documents* filed by All Plaintiffs. (Holland, Alexander) (Entered: 05/13/2022) |
| 05/16/2022 | 124 | MOTION for Leave to File Brief of Amici Curiae by Jimmy Hickey, Matthew Shepherd. (Attachments: # 1 Exhibit 1)(kth) (Entered: 05/16/2022) |
| 05/16/2022 | 125 | |

| | | NOTICE of Appearance by Matthew Bauer Miller on behalf of Jimmy Hickey and Matthew Shepherd. (kth) (Entered: 05/16/2022) |
|---|---|---|
| 05/18/2022 | 126 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 124 Motion for Leave to File a brief of amici curiae. Signed by Judge James M. Moody Jr. on 5/18/2022. (sjh) (Entered: 05/18/2022) |
| 05/18/2022 | 127 | RESPONSE in Opposition re 122 MOTION to Compel the Production of Documents filed by Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, and Jim Wooten. (Talley, Graham)(Docket text modified on 5/19/2022 to correct the party filers)(jak) (Entered: 05/18/2022) |
| 05/19/2022 | | NOTICE OF DOCKET CORRECTION re 119 MOTION to Quash *and for Protective Order*. CORRECTION: The docket text was modified to correct the party filer as Robin Lundstrum as marked on the document. (jak) (Entered: 05/19/2022) |
| 05/19/2022 | 128 | BRIEF of President Pro Tempore of the Senate, on Behalf of the Arkansas Senate, and Speaker of the House of Representatives, on Behalf of the Arkansas House of Representatives, as Amici Curiae In Support of Representative Robin Lundstrum's Motion to Quash and for Protective Order filed by Jimmy Hickey, Matthew Shepherd re 119 . (jap) (Entered: 05/19/2022) |
| 05/19/2022 | | NOTICE OF DOCKET CORRECTION re 102 Notice of Appearance, 103 Motion to Extend Time, 104 Notice of Appearance, 109 Notice, 120 Brief in Support, and 127 Response in Opposition to Motion. CORRECTION: The docket texts were modified to correct the party filers as Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, and Jim Wooten as marked on the documents. (jak) (Entered: 05/19/2022) |
| 05/19/2022 | 129 | REPLY to Response to Motion re 122 MOTION to Compel *the Production of Documents* filed by All Plaintiffs. (Holland, Alexander) (Entered: 05/19/2022) |
| 05/20/2022 | 130 | MOTION for Protective Order *and to Quash Notice of Deposition of Separate Defendant Rhys L. Branman*, MOTION to Quash () by All Defendants (Land, Amanda) (Additional attachment(s) added on 5/23/2022: # 1 Exhibit A (submitted 5/23/2022), # 2 Exhibit B (submitted 5/23/2022)) (jak). (Entered: 05/20/2022) |
| 05/20/2022 | 131 | BRIEF IN SUPPORT re 130 Motion for Protective Order, Motion to Quash filed by All Defendants. (Land, Amanda) (Entered: 05/20/2022) |
| 05/23/2022 | 132 | NOTICE OF DOCKET CORRECTION re 130 MOTION for Protective Order. CORRECTION: The exhibits A and B were not submitted with the original filing. The exhibits were added to docket entry 130 based on the attached correspondence. (jak) (Entered: 05/23/2022) |
| 05/24/2022 | 133 | MOTION for Leave to File *Supplement to Preliminary Response in Opposition to Motion to Compel* by Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, Jim Wooten (Attachments: # 1 Document Supplement to Preliminary Response in Opposition to Motion to Compel)(Talley, Graham) (Entered: 05/24/2022) |
| 05/24/2022 | 134 | RESPONSE in Opposition re 119 MOTION to Quash *and for Protective Order* filed by All Plaintiffs. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Exhibit Exhibit 6, # 7 Exhibit Exhibit 7, # 8 Exhibit Exhibit 8, # 9 Exhibit Exhibit 9, # 10 Exhibit Exhibit 10, # 11 Exhibit Exhibit 11, # 12 Exhibit Exhibit 12, # 13 Exhibit Exhibit 13, # 14 Exhibit Exhibit 14, # 15 Exhibit Exhibit 15, # 16 Exhibit Exhibit 16, # 17 |

| | | |
|---|---|---|
| | | Exhibit Exhibit 17, # 18 Exhibit Exhibit 18, # 19 Exhibit Exhibit 19, # 20 Exhibit Exhibit 20, # 21 Exhibit Exhibit 21, # 22 Exhibit Exhibit 22, # 23 Exhibit Exhibit 23, # 24 Exhibit Exhibit 24, # 25 Exhibit Exhibit 25, # 26 Exhibit Exhibit 26, # 27 Exhibit Exhibit 27)(Everett, Sarah) (Entered: 05/24/2022) |
| 05/25/2022 | 135 | RESPONSE in Opposition re 130 MOTION for Protective Order *and to Quash Notice of Deposition of Separate Defendant Rhys L. Branman* MOTION to Quash filed by All Plaintiffs. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Holland, Alexander) (Entered: 05/25/2022) |
| 05/26/2022 | 136 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 133 Motion for Leave to File Supplemental Response. Signed by Judge James M. Moody Jr. on 5/26/2022. (sjh) (Entered: 05/26/2022) |
| 05/26/2022 | 137 | ADDENDUM filed by Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, Jim Wooten to 127 Response in Opposition to Motion,. *Supplement to Preliminary Response in Opposition to Motion to Compel* (Talley, Graham) (Entered: 05/26/2022) |
| 05/27/2022 | 138 | RESPONSE in Opposition re 122 MOTION to Compel *the Production of Documents* filed by Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, Jim Wooten. (Talley, Graham) (Entered: 05/27/2022) |
| 06/01/2022 | 139 | MOTION to Withdraw as Attorney *Jonathan J. Ossip* by All Plaintiffs (Attachments: # 1 Document, # 2 Document)(Ossip, Jonathan) (Entered: 06/01/2022) |
| 06/01/2022 | 140 | MOTION for Leave to File *Reply in Support of Motion for Protective Order and to Quash Notice of Deposition of Separate Defendant Dr. Rhys L. Branman* by All Defendants (Attachments: # 1 Document Reply in Support of Motion for Protective Order and to Quash Notice of Deposition of Separate Defendant Dr. Rhys L. Branman)(Land, Amanda) (Entered: 06/01/2022) |
| 06/02/2022 | 141 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 139 Motion to Withdraw as Attorney. Attorney Jonathan Joseph Ossip terminated. Signed by Judge James M. Moody Jr. on 6/2/2022. (sjh) (Entered: 06/02/2022) |
| 06/02/2022 | 142 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 140 Motion for Leave to File Reply. Signed by Judge James M. Moody Jr. on 6/2/2022. (sjh) (Entered: 06/02/2022) |
| 06/02/2022 | 143 | REPLY to Response to Motion re 130 MOTION for Protective Order *and to Quash Notice of Deposition of Separate Defendant Rhys L. Branman* MOTION to Quash filed by All Defendants. (Land, Amanda) (Entered: 06/02/2022) |
| 06/03/2022 | 144 | MOTION for Leave to File by All Plaintiffs (Attachments: # 1 Exhibit A – Proposed Plaintiffs' Reply in Support of Motion to Compel Production of Documents)(Walas, Breean) (Entered: 06/03/2022) |
| 06/07/2022 | 145 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 144 Motion for Leave to File Reply. Signed by Judge James M. Moody Jr. on 6/7/2022. (sjh) (Entered: 06/07/2022) |
| 06/07/2022 | 146 | REPLY to Response to Motion re 122 MOTION to Compel *the Production of Documents Reply in Support of Motion to Compel Production of Documents* filed by All Plaintiffs. (Walas, Breean) (Entered: 06/07/2022) |

| 06/09/2022 | 147 | ORDER granting in part and denying in part 119 Motion to Quash; taking under advisement 122 Motion to Compel, pending Defendants' response; denying 130 Motion to Quash Dr. Branman's Deposition; directing Defendants to file a substantive response to Plaintiffs' Motion to Compel by Friday, 6/17/2022; and directing Dr. Branman to sit for a deposition and Representative Robin Lundstrom to sit for a deposition regarding her non–legislative activity within 20 days from the date of this Order. Signed by Judge James M. Moody Jr. on 6/9/2022. (jbh) (Entered: 06/10/2022) |
|---|---|---|
| 06/16/2022 | 148 | Mail Returned Undeliverable as to Emily T. Armbruster re 136 Text Entry Only Order. (fjg) (Entered: 06/16/2022) |
| 06/16/2022 | 149 | MOTION to Amend/Correct *the Amended Final Scheduling Order* by All Plaintiffs (Attachments: # 1 Exhibit A)(Holland, Alexander) (Entered: 06/16/2022) |
| 06/17/2022 | 150 | NOTICE by Mary Bentley, Alan Clark, Robin Lundstrum, Marcus Richmond, Jim Wooten (Talley, Graham) (Entered: 06/17/2022) |
| 06/17/2022 | 151 | RESPONSE in Opposition re 122 MOTION to Compel *the Production of Documents* filed by All Defendants. (Cantrell, Michael) (Entered: 06/17/2022) |
| 06/21/2022 | 152 | STIPULATION AND ORDER granting an extension for the deadline for all motions, with the exception of motions in limine, to 6/22/2022, the deadline for any responses to these motions to 7/15/2022, and the deadline for all motions in limine to 7/20/2022. Signed by Judge James M. Moody Jr. on 6/21/2022. (jbh) (Entered: 06/21/2022) |
| 06/22/2022 | 153 | MOTION to Exclude *EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT* by All Plaintiffs (Holland, Alexander) (Entered: 06/22/2022) |
| 06/22/2022 | 154 | BRIEF IN SUPPORT re 153 Motion to Exclude *EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT* filed by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Holland, Alexander) (Entered: 06/22/2022) |
| 06/22/2022 | 155 | MOTION to Exclude *EXPERT TESTIMONY OF MARK D. REGNERUS* by All Plaintiffs (Holland, Alexander) (Entered: 06/22/2022) |
| 06/22/2022 | 156 | BRIEF IN SUPPORT re 155 Motion to Exclude *EXPERT TESTIMONY OF MARK D. REGNERUS* filed by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8)(Holland, Alexander) (Entered: 06/22/2022) |
| 07/05/2022 | 157 | STATUS REPORT by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Holland, Alexander) (Entered: 07/05/2022) |
| 07/08/2022 | 158 | MOTION to Exclude *Plaintiffs' Evidentiary Deposition Designations and Incorporated Brief in Support* by All Defendants (Attachments: # 1 Exhibit Plaintiffs' Deposition Designations for Amy Embry, # 2 Defendants' Counter–Designations for Amy Embry)(Land, Amanda) (Entered: 07/08/2022) |
| 07/12/2022 | 159 | MOTION to Withdraw as Attorney *Duncan C. Simpson LaGoy* by All Plaintiffs (Attachments: # 1 Document 1, # 2 Document 2)(Simpson LaGoy, Duncan) (Entered: 07/12/2022) |

| 07/12/2022 | 160 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 159 Motion to Withdraw as Attorney. Attorney Duncan C. Simpson LaGoy terminated. Signed by Judge James M. Moody Jr. on 7/12/2022. (sjh) (Entered: 07/12/2022) |
|---|---|---|
| 07/15/2022 | 161 | RESPONSE in Opposition re 155 MOTION to Exclude *EXPERT TESTIMONY OF MARK D. REGNERUS* filed by All Defendants. (Land, Amanda) (Entered: 07/15/2022) |
| 07/15/2022 | 162 | RESPONSE in Opposition re 153 MOTION to Exclude *EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT* filed by All Defendants. (Land, Amanda) (Entered: 07/15/2022) |
| 07/15/2022 | 163 | RESPONSE in Opposition re 158 MOTION to Exclude *Plaintiffs' Evidentiary Deposition Designations and Incorporated Brief in Support* filed by All Plaintiffs. (Attachments: # 1 Exhibit 1: (30(b)(6) Deposition of Defendant Arkansas State Medical Board, May 10, 2022), # 2 Appendix A: Response to Objections)(Walas, Breean) (Entered: 07/15/2022) |
| 07/20/2022 | 164 | MOTION in Limine by All Defendants (Attachments: # 1 Exhibit A – Excerpts of Laura Perry Deposition, # 2 Exhibit B – Excerpts of Billy Burleigh Deposition, # 3 Exhibit C – Excerpts of Dr. Paul Hruz Deposition, # 4 Exhibit D – Excerpts of Dr. Mark Regnerus Deposition, # 5 Exhibit E – Excerpts of Amy Embry Deposition, # 6 Exhibit F – Excerpts of Dr. Rhys Branman Deposition)(Land, Amanda) (Entered: 07/20/2022) |
| 07/20/2022 | 165 | BRIEF IN SUPPORT re 164 Motion in Limine, filed by All Defendants. (Land, Amanda) (Entered: 07/20/2022) |
| 07/22/2022 | 166 | MOTION for Leave to File *REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF PATRICK W. LAPPERT* by All Plaintiffs (Attachments: # 1 Exhibit 1 – REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF PATRICK W. LAPPERT)(Walas, Breean) (Entered: 07/22/2022) |
| 07/22/2022 | 167 | MOTION for Leave to File *REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK D. REGNERUS* by All Plaintiffs (Attachments: # 1 Exhibit 1 – REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF MARK D. REGNERUS)(Walas, Breean) (Entered: 07/22/2022) |
| 07/25/2022 | 168 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 166 Motion for Leave to File Reply; granting 167 Motion for Leave to File Reply. Signed by Judge James M. Moody Jr. on 7/25/2022. (sjh) (Entered: 07/25/2022) |
| 07/25/2022 | 169 | REPLY to Response to Motion re 153 MOTION to Exclude *EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT* filed by All Plaintiffs. (Walas, Breean) (Entered: 07/25/2022) |
| 07/25/2022 | 170 | REPLY to Response to Motion re 155 MOTION to Exclude *EXPERT TESTIMONY OF MARK D. REGNERUS* filed by All Plaintiffs. (Walas, Breean) (Entered: 07/25/2022) |
| 07/27/2022 | 171 | RESPONSE in Opposition re 164 MOTION in Limine filed by All Plaintiffs. (Attachments: # 1 Exhibit 1 – Deposition Transcript of Amy Embry, # 2 Exhibit 2 – Deposition Transcript of Rhys Branman)(Walas, Breean) (Entered: 07/27/2022) |

| 07/28/2022 | 172 | MOTION to Exclude *Plaintiffs' Evidentiary Deposition Designations of Dr. Rhys Branman and Incorporated Brief in Support* by All Defendants (Attachments: # 1 Exhibit A – Plaintiffs' Deposition Designations for Dr. Rhys Branman, # 2 Exhibit B – Defendants' Counter–Designations for Dr. Rhys Branman)(Land, Amanda) (Entered: 07/28/2022) |
|---|---|---|
| 08/01/2022 | 173 | MOTION for Leave to Appear pro hac vice by Lauren M. Goldsmith. Fee $100 receipt number AAREDC–4318537. Filed by All Plaintiffs (Echols, Sharon) (Entered: 08/01/2022) |
| 08/01/2022 | 174 | MOTION for Leave to Appear pro hac vice by Rebecca S. Kadosh. Fee $100 receipt number AAREDC–4318558. Filed by All Plaintiffs (Echols, Sharon) (Entered: 08/01/2022) |
| 08/01/2022 | 175 | MOTION for Leave to Appear pro hac vice by Aviv S. Halpern. Fee $100 receipt number AAREDC–4318563. Filed by All Plaintiffs (Echols, Sharon) (Entered: 08/01/2022) |
| 08/03/2022 | 176 | ORDER granting 173 , 174 , 175 motions to admit counsel pro hac vice. Lauren M. Goldsmith, Rebecca S. Kadosh, and Aviv S. Halpern are hereby admitted to appear before this Court as co–counsel of record in this action. Signed by Judge James M. Moody Jr. on 8/3/2022. (jbh) (Entered: 08/03/2022) |
| 08/04/2022 | 177 | RESPONSE in Opposition re 172 MOTION to Exclude *Plaintiffs' Evidentiary Deposition Designations of Dr. Rhys Branman and Incorporated Brief in Support* filed by All Plaintiffs. (Attachments: # 1 Appendix A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)(Holland, Alexander) (Entered: 08/04/2022) |
| 08/04/2022 | 178 | ORDER granting in part and denying in part 122 motion to compel the production of documents. Signed by Judge James M. Moody Jr. on 8/4/2022. (jbh) (Docket text modified on 8/5/2022 to correct a typographical error.) (jak) (Entered: 08/04/2022) |
| 08/05/2022 | 179 | MOTION for Leave to Appear pro hac vice by Alexander F.R. Peacocke. Fee $100 receipt number AAREDC–4321820. Filed by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough (Attachments: # 1 Exhibit Certificate of Good Standing)(Mann, Peter) (Additional attachment(s) added on 8/5/2022: # 2 Main Document – Correct (submitted 8/5/2022)) (jak). (Entered: 08/05/2022) |
| 08/05/2022 | 180 | MOTION for Leave to Appear pro hac vice by Arun Bodapati. Fee $100 receipt number AAREDC–4321851. Filed by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough (Attachments: # 1 Exhibit Certificate of Good Standing)(Mann, Peter) (Additional attachment(s) added on 8/5/2022: # 2 Main Document – Correct (submitted 8/5/2022)) (jak). (Entered: 08/05/2022) |
| 08/05/2022 | 181 | NOTICE OF DOCKET CORRECTION re 179 and 180 MOTIONS for Leave to Appear pro hac vice by Alexander F.R. Peacocke and Arun Bodapati. CORRECTION: The original document was submitted in error (wrong image files). The correct documents were added to docket entries 179 and 180 based on the attached correspondence. (jak) (Entered: 08/05/2022) |
| 08/08/2022 | 182 | |

| | | |
|---|---|---|
| | | PRETRIAL DISCLOSURE SHEET by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs. (Land, Amanda) (Entered: 08/08/2022) |
| 08/08/2022 | 183 | PRETRIAL DISCLOSURE SHEET by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Attachments: # 1 Appendix A – Plaintiffs Proposed Joint Stipulations of Fact, # 2 Appendix B – Plaintiffs Deposition Designations – Lundstrum, # 3 Appendix C – Plaintiffs Deposition Designations – Embry, # 4 Appendix D – Plaintiffs Deposition Designations – Branman)(Walas, Breean) (Entered: 08/08/2022) |
| 08/09/2022 | 184 | MOTION to Exclude *Plaintiffs' Evidentiary Deposition Designations of Representative Robin Lundstrum and Incorporated Brief in Support* by All Defendants (Attachments: # 1 Exhibit A – Plaintiffs' Deposition Designations for Rep. Robin Lundstrum, # 2 Exhibit B – Defendants' Counter–Designations for Rep. Robin Lundstrum)(Land, Amanda) (Entered: 08/09/2022) |
| 08/10/2022 | 185 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 179 Motion to Appear Pro Hac Vice; granting 180 Motion to Appear Pro Hac Vice. Signed by Judge James M. Moody Jr. on 8/10/2022. (sjh) (Entered: 08/10/2022) |
| 08/10/2022 | 186 | NOTICE by All Plaintiffs *Regarding the Parties' Joint Stipulation of Facts Not in Controversy* (Holland, Alexander) (Entered: 08/10/2022) |
| 08/10/2022 | 187 | STIPULATION *Defendants' Proposed Stipulations of Fact* by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs. (Land, Amanda) (Entered: 08/10/2022) |
| 08/10/2022 | 188 | MOTION to Withdraw as Attorney *Brandyn J. Rodgerson* by All Plaintiffs (Attachments: # 1 Document 1, # 2 Document 2)(Holland, Alexander) (Entered: 08/10/2022) |
| 08/11/2022 | 189 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 188 Motion to Withdraw as Attorney. Attorney Brandyn J. Rodgerson terminated. Signed by Judge James M. Moody Jr. on 8/11/2022. (sjh) (Entered: 08/11/2022) |
| 08/16/2022 | 190 | RESPONSE in Opposition re 184 MOTION to Exclude *Plaintiffs' Evidentiary Deposition Designations of Representative Robin Lundstrum and Incorporated Brief in Support* filed by All Plaintiffs. (Attachments: # 1 Appendix A – Responses to Objections to Rep. Lundstrum Designations, # 2 Exhibit 1 – Rep. Lundstrum Deposition Transcript, # 3 Exhibit 2 – Rep. Lundstrum Deposition Ex. 29, # 4 Exhibit 3 – Rep. Lundstrum Deposition Ex. 30)(Walas, Breean) (Entered: 08/16/2022) |
| 08/23/2022 | 191 | MOTION to Withdraw as Attorney *Emily T. Armbruster* by All Plaintiffs (Attachments: # 1 Document 1, # 2 Document 2)(Holland, Alexander) (Entered: 08/23/2022) |

| 08/24/2022 | 192 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 191 Motion to Withdraw as Attorney. Attorney Emily T. Armbruster terminated. Signed by Judge James M. Moody Jr. on 8/24/2022. (sjh) (Entered: 08/24/2022) |
|---|---|---|
| 08/25/2022 | 193 | OPINION of USCA as to 67 Notice of Interlocutory Appeal, filed by Don R Philips, Brian T Hyatt, Veryl D Hodges, Robert Breving, Jr, Sylvia D Simon, Timothy C Paden, Edward Gardner, Rodney Griffin, Betty Guhman, John H Scribner, Amy E Embry, William L Rutledge, Leslie Rutledge, David L Staggs, Elizabeth Anderson, Rhys L Branman. (jbh) (Entered: 08/25/2022) |
| 08/25/2022 | 194 | USCA JUDGMENT as to 67 Notice of Interlocutory Appeal, filed by Don R Philips, Brian T Hyatt, Veryl D Hodges, Robert Breving, Jr, Sylvia D Simon, Timothy C Paden, Edward Gardner, Rodney Griffin, Betty Guhman, John H Scribner, Amy E Embry, William L Rutledge, Leslie Rutledge, David L Staggs, Elizabeth Anderson, Rhys L Branman: The judgment of the district court in this cause is affirmed in accordance with the opinion of this Court. (jbh) (Entered: 08/25/2022) |
| 08/30/2022 | 195 | ORDER denying 153 , 155 motions to exclude the expert testimony of Dr. Patrick W. Lappert and Dr. Mark Regnerus; and granting in part and denying in part 164 motion in limine. Signed by Judge James M. Moody Jr. on 8/30/2022. (jbh) (Entered: 08/30/2022) |
| 09/22/2022 | 196 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) The Court has advised the parties that the admissibility of the deposition designations and counter–designations will be ruled upon during trial. Accordingly, ORDER finding as moot 158 Motion to Exclude; finding as moot 172 Motion to Exclude; finding as moot 184 Motion to Exclude. Further, the attorneys of record are directed to update their contact information, if the information has changed, as soon as possible. Signed by Judge James M. Moody Jr. on 9/22/2022. (sjh) (Entered: 09/22/2022) |
| 09/23/2022 | 197 | MOTION for Leave to Appear pro hac vice by Lisa "Li" Nowlin–Sohl. Fee $100 receipt number AAREDC–4357469. Filed by All Plaintiffs (Echols, Sharon) (Entered: 09/23/2022) |
| 09/26/2022 | 198 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 197 Lisa "Li" Nowlin–Sohl's Motion to Appear Pro Hac Vice. Signed by Judge James M. Moody Jr. on 9/26/2022. (sjh) (Entered: 09/26/2022) |
| 09/28/2022 | 199 | NOTICE of Appearance by Lisa Nowlin–Sohl on behalf of All Plaintiffs (Nowlin–Sohl, Lisa) (Entered: 09/28/2022) |
| 09/28/2022 | 200 | NOTICE of Appearance by Hannah Lorraine Templin on behalf of All Defendants (Templin, Hannah) (Entered: 09/28/2022) |
| 09/29/2022 | 201 | ORDER: COURTROOM AND MEDIA PROTOCOL. Signed by Judge James M. Moody Jr. on 9/29/2022. (ldb) (Entered: 09/29/2022) |
| 10/11/2022 | 202 | ORDER authorizing Leslie Cooper, Chase Strangio, James Esseks, Ali King, Robert Stodola, Laura Kabler Oswell, Lauren Goldsmith, Alexander Peacocke, Arun Bodapati, Aviv Halpern, Rebecca Kadosh, Daniel Richardson, Jonathan Lester, Sophia Matthew, Gregory Smith, Kenza Nadifi, Cate Llewellyn and Li Nowlin–Sohl to bring a cell phone, laptop computer, or personal digital assistant into the |

| | | |
|---|---|---|
| | | courthouse in Little Rock, Arkansas, for the trial scheduled for 10/17/2022. Signed by Judge James M. Moody Jr. on 10/11/2022. (llg) (Entered: 10/11/2022) |
| 10/12/2022 | 203 | STIPULATION *and Joint Proposed Pretrial Order* by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Bodapati, Arun) (Entered: 10/12/2022) |
| 10/14/2022 | 204 | ORDER: Gillian Branstetter, Rizelle Aaron, Beth Echols, Dr. Michele Hutchison, Dr. Kathryn Stambough, Joanna Brandt, Lacey Jennen, Aaron Jennen, Amanda Dennis, Shayne Dennis, and Donnie Saxton are hereby authorized to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the trial scheduled for 10/17/2022 subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 10/14/2022. (jbh) (Docket text modified on 10/17/2022 to correct a typographical error) (jak) (Entered: 10/14/2022) |
| 10/17/2022 | 205 | JOINT PRETRIAL ORDER. Signed by Judge James M. Moody Jr. on 10/17/2022. (llg) (Entered: 10/17/2022) |
| 10/17/2022 | 206 | ORDER: Dr. Deanna Adkins, Dr. Jack Turban, and Dr. Armand Antommaria are hereby authorized to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the trial scheduled for 10/17/2022 subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 10/17/2022. (jbh) (Entered: 10/17/2022) |
| 10/17/2022 | 207 | MOTION for Leave to Appear pro hac vice by Jonathan G. Lester. Fee $100 receipt number AAREDC−4374388. Filed by All Plaintiffs (Attachments: # 1 Document)(Echols, Sharon) (Entered: 10/17/2022) |
| 10/17/2022 | 212 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.:BENCH TRIAL (DAY 1) held on Monday, 10/17/2022 in Little Rock. Plaintiffs' proof begins. Arun Bodapati, Chase Strangio, Leslie Cooper, Breean Walas, Lauren Goldsmith, Gary Sullivan, Li Nowlin−Sohl present for Plaintiffs; Michael Cantrell, Dylan Jacobs, Amanda Land, Hannah Templin present for Defendants. (Court Reporters: Karen Dellinger/Valarie Flora/Elaine Hinson.) (kog)(Docket text modified on 10/19/2022 to correct a typographical error) (jak) (Entered: 10/18/2022) |
| 10/18/2022 | 208 | ORDER authorizing the following duly identified and authorized representatives of the media, Dale Ellis, Kathleen Perrin, Tess Vrbin, Austin Bailey, and Janice Hisle, to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Tuesday, 10/18/2022, through Friday, 10/21/2022. Signed by Judge James M. Moody Jr. on 10/18/2022. (llg) (Entered: 10/18/2022) |
| 10/18/2022 | 209 | ORDER granting 207 motion to admit counsel pro hac vice on behalf of Plaintiffs; and admitting Jonathan G. Lester to appear before this Court as co−counsel of record in this action. Signed by Judge James M. Moody Jr. on 10/18/2022. (llg) (Entered: 10/18/2022) |
| 10/18/2022 | 210 | ORDER authorizing duly identified and authorized representative of the media, Josie Lenora Efird, to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Tuesday, 10/18/2022, through Friday, 10/21/2022. Signed by Judge James M. Moody Jr. on 10/18/2022. (llg) (Entered: 10/18/2022) |

| | | |
|---|---|---|
| 10/18/2022 | 211 | ORDER authorizing duly identified and authorized representative of the media, Andrew Demillo, to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Tuesday, 10/18/2022, through Friday, 10/21/2022. Signed by Judge James M. Moody Jr. on 10/18/2022. (llg) (Entered: 10/18/2022) |
| 10/18/2022 | 213 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.:BENCH TRIAL (DAY 2) held on 10/18/2022. Plaintiffs' proof continues. (Court Reporters: Karen Dellinger/Valarie Flora.) (kog) (Docket text modified on 10/19/2022 to correct a typographical error) (jak) (Entered: 10/18/2022) |
| 10/19/2022 | 214 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: BENCH TRIAL (DAY 3) held on 10/19/2022. Plaintiffs' proof continues. (Court Reporters: Elaine Hinson/Valarie Flora/Karen Dellinger.) (kog) Docket text modified on 10/21/2022 to correct spacing errors. (kbc) (Entered: 10/20/2022) |
| 10/20/2022 | 215 | ORDER authorizing Dr. Stephanie Ho, Dr. Janet Cathey, Dr. Cathy Campbell, and Steve Zega to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the trial scheduled for 10/21/2022. Signed by Judge James M. Moody Jr. on 10/20/2022. (llg) (Entered: 10/20/2022) |
| 10/20/2022 | 216 | ORDER authorizing duly identified and authorized representative of the media, Sonny Albarado, to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled on Friday, 10/21/2022. Signed by Judge James M. Moody Jr. on 10/20/2022. (jak) (Additional attachment(s) added on 10/20/2022: # 1 Main Document – Correct) (jak). (Entered: 10/20/2022) |
| 10/20/2022 | 217 | NOTICE OF DOCKET CORRECTION re 216 Order. CORRECTION: The original document was attached in error (incorrect signature date). The correct document was added to docket entry 216 and is attached hereto for service on the parties. (jak) (Entered: 10/20/2022) |
| 10/21/2022 | 218 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.)CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.:BENCH TRIAL (DAY 4) held on 10/21/2022. Plaintiffs rest; Defendants' proof begins. The bench trial in this matter will reconvene on Monday, 11/28/2022 at 9:00 AM in Little Rock Courtroom # 4A before Judge James M. Moody Jr. (Court Reporters: Valarie Flora/Karen Dellinger.) (kog) (Entered: 10/21/2022) |
| 10/24/2022 | 219 | Transcript of Bench Trial – Volume 1 filed for the date of 10/17/2022, before Judge James M. Moody Jr, re 67 Notice of Interlocutory Appeal. Court Reporters Karen Dellinger, Valarie Flora, and Elaine Hinson. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Request Redaction due 10/31/2022. Redaction Request due 11/14/2022. Redacted Transcript Deadline set for 11/25/2022. Release of Transcript Restriction set for 1/23/2023. (fcd) (Entered: 10/24/2022) |
| 10/25/2022 | 220 | Transcript of Bench Trial – Volume 2 filed for the date of 10/18/2022, before Judge James M. Moody Jr, re 67 Notice of Interlocutory Appeal. Court Reporters Karen Dellinger and Valarie Flora. Transcript may be viewed only at the public terminals in |

| | | |
|---|---|---|
| | | the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Request Redaction due 11/1/2022. Redaction Request due 11/15/2022. Redacted Transcript Deadline set for 11/25/2022. Release of Transcript Restriction set for 1/23/2023. (fcd) (Entered: 10/25/2022) |
| 10/26/2022 | 221 | MOTION for Leave to Appear pro hac vice by Sophia M. Matthew. Fee $100 receipt number AAREDC–4380753. Filed by All Plaintiffs (Attachments: # 1 Document Certificate of Good Standing)(Echols, Sharon) (Entered: 10/26/2022) |
| 10/26/2022 | 222 | SEALED TRANSCRIPT. (fcd) (Entered: 10/26/2022) |
| 10/27/2022 | 223 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 221 Motion to Appear Pro Hac Vice. Signed by Judge James M. Moody Jr. on 10/27/2022. (sjh) (Entered: 10/27/2022) |
| 10/27/2022 | 224 | Transcript of Bench Trial – Volume 4 filed for the date of 10/21/2022, before Judge James M. Moody Jr, re 67 Notice of Interlocutory Appeal. Court Reporters Valarie Flora and Karen Dellinger. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Request Redaction due 11/3/2022. Redaction Request due 11/17/2022. Redacted Transcript Deadline set for 11/28/2022. Release of Transcript Restriction set for 1/25/2023. (fcd) (Entered: 10/27/2022) |
| 11/02/2022 | 225 | Transmitted Record on Appeal to US Court of Appeals re 67 Notice of Interlocutory Appeal: Copies of Docket Entries 219 , 220 , 222 , 224 (Transcript of Bench Trial). (jbh) (Entered: 11/02/2022) |
| 11/16/2022 | 226 | ORDER of USCA as to 67 Notice of Interlocutory Appeal: The petition for rehearing en banc is denied. The petition for panel rehearing is also denied. (jbh) (Entered: 11/16/2022) |
| 11/21/2022 | 227 | ORDER authorizing Kathleen Perrin and Janice Hisle to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Monday, 11/28/2022, through Friday, 12/2/2022, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/21/2022. (jbh) (Entered: 11/21/2022) |
| 11/23/2022 | 228 | MANDATE of USCA in accordance with the opinion and judgment of 8/25/2022 as to 67 Notice of Interlocutory Appeal, filed by Don R Philips, Brian T Hyatt, Veryl D Hodges, Robert Breving, Jr, Sylvia D Simon, Timothy C Paden, Edward Gardner, Rodney Griffin, Betty Guhman, John H Scribner, Amy E Embry, William L Rutledge, Leslie Rutledge, David L Staggs, Elizabeth Anderson, Rhys L Branman. (jbh) (Entered: 11/23/2022) |
| 11/28/2022 | 229 | ORDER authorizing Chase Strangio, Leslie Cooper, James Esseks, Laura Kabler Oswell, Lauren Goldsmith, Aviv Halperin, Arun Bodapati, Beth Echols, and Daniel Richardson, Rizelle Aaron, Joanna Brandt and Aaron Jennen to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the trial scheduled for the week of 11/28/2022 subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |

| 11/28/2022 | 230 | ORDER authorizing Eliza Fawcett and Austin Bailey to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Monday, 11/28/2022, through Friday, 12/02/2022, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |
|---|---|---|
| 11/28/2022 | 231 | ORDER authorizing Tess Vrbin to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Monday, 11/28/2022, through Friday, 12/02/2022, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |
| 11/28/2022 | 232 | ORDER authorizing M. Gregg Bloche to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Monday, 11/28/2022, through Friday, 12/02/2022, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |
| 11/28/2022 | 233 | ORDER authorizing Josie Lenora Efird to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Monday, 11/28/2022, through Friday, 12/02/2022, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |
| 11/28/2022 | 234 | ORDER authorizing Andrew Demillo to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Monday, 11/28/2022, through Friday, 12/02/2022, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |
| 11/28/2022 | 235 | ORDER authorizing Patrick Lappert and Paul Hruz to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the trial scheduled for the week of 11/28/2022 subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/28/2022. (llg) (Entered: 11/28/2022) |
| 11/28/2022 | 236 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: BENCH TRIAL (DAY 5) held on 11/28/2022. Defendants' proof continues. (Court Reporter Karen Dellinger/Valarie Flora/Elaine Hinson.) (kog) (Entered: 11/29/2022) |
| 11/29/2022 | 237 | ORDER authorizing Julissa Garza is to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the trial scheduled for the week of 11/28/2022 subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/29/2022. (llg) (Additional attachment(s) added on 11/29/2022: # 1 Main Document – Correct) (cmn) (Docket text modified on 11/29/2022 to correct typographical error.)(cmn) (Entered: 11/29/2022) |
| 11/29/2022 | 238 | NOTICE OF DOCKET CORRECTION re 237 Order. CORRECTION: The original document was attached to the docket in error (typographical error). The correct document was added as an attachment to 237 docket entry and is attached hereto for service/review by the parties. (cmn) (Entered: 11/29/2022) |
| 11/29/2022 | 239 | ORDER authorizing Jessica Ranck to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial of this matter scheduled for Wednesday, 11/30/2022, through Friday, 12/2/2022, |

| | | subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/29/2022. (ldb) (Entered: 11/29/2022) |
|---|---|---|
| 11/29/2022 | 240 | ORDER authorizing Laura Perry, Billy Burleigh, and Roger Hiatt to bring a cell phone, laptop computer, or personal digital assistant into the courthouse in Little Rock, Arkansas, for the bench trial on Wednesday, 11/30/2022, through the conclusion of the trial, subject to the rules in this Order. Signed by Judge James M. Moody Jr. on 11/29/2022. (llg) (Entered: 11/29/2022) |
| 11/29/2022 | 241 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: BENCH TRIAL (DAY 6) held on 11/29/2022. Defendants' proof continues. (Court Reporters: Karen Dellinger/Valarie Flora/Elaine Hinson.) (kog) (Docket text modified on 11/30/2022 to correct a typographical error) (jak) (Entered: 11/30/2022) |
| 11/30/2022 | 242 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: BENCH TRIAL (DAY 7) held on 11/30/2022. Defendants' proof continues. (Court Reporters: Karen Dellinger/Valarie Flora.)(kog) (Entered: 11/30/2022) |
| 12/01/2022 | 243 | CLERK'S MINUTES for proceedings held before Judge James M. Moody Jr.: BENCH TRIAL (DAY 8) held on 12/1/2022. Defendants' proof concludes, Defendants' rest. The parties agree to submit a joint proposed briefing schedule to the court. Court adjourned. Counsel for Plaintiffs: Arun Bodapati, Chase Strangio, Leslie Cooper, Breean Walas, Lauren Goldsmith, Gary Sullivan, Lisa Nowlin–Sohl; Counsel for Defendants: Dylan Jacobs, Michael Cantrell, Amanda Land, Hannah Templin (Court Reporter Valarie Flora/Elaine Hinson.) (kog) Docket text modified on 12/5/2022 to correct spacing error. (kbc) (Entered: 12/02/2022) |
| 12/01/2022 | 244 | PLAINTIFFS' WITNESS AND EXHIBIT LIST(kog) (Entered: 12/02/2022) |
| 12/01/2022 | 245 | DEFENDANTS' WITNESS AND EXHIBIT LIST(kog) (Entered: 12/02/2022) |
| 12/05/2022 | 246 | TRANSCRIPT of Bench Trial – Volume 5 held on 11/28/2022, before Judge James M. Moody, Jr. Court Reporters Karen Dellinger, Valarie D. Flora, Elaine Hinson. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 12/12/2022. Redaction Request due 12/27/2022. Redacted Transcript Deadline set for 1/5/2023. Release of Transcript Restriction set for 3/6/2023. (jbh) (Entered: 12/05/2022) |
| 12/06/2022 | 247 | TRANSCRIPT of Bench Trial – Volume 7 held on 11/30/2022, before Judge James M. Moody Jr. Court Reporter Karen Dellinger. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 12/13/2022. Redaction Request due 12/27/2022. Redacted Transcript Deadline set for 1/6/2023. Release of Transcript Restriction set for 3/6/2023. (fcd) (Entered: 12/06/2022) |
| 12/07/2022 | 248 | TRANSCRIPT of Bench Trial – Volume 6 held on 11/29/2022, before Judge James M. Moody Jr. Court Reporters Karen Dellinger, Elaine Hinson, and Valarie Flora. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline |

| | | |
|---|---|---|
| | | for Release of Transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 12/14/2022. Redaction Request due 12/28/2022. Redacted Transcript Deadline set for 1/9/2023. Release of Transcript Restriction set for 3/7/2023. (fcd) (Entered: 12/07/2022) |
| 12/08/2022 | 249 | TRANSCRIPT of Bench Trial – Volume 8 held on 12/1/2022, before Judge James M. Moody Jr. Court Reporters Valarie Flora and Elaine Hinson. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 12/15/2022. Redaction Request due 12/29/2022. Redacted Transcript Deadline set for 1/9/2023. Release of Transcript Restriction set for 3/8/2023. (fcd) (Entered: 12/08/2022) |
| 12/15/2022 | 250 | STIPULATION *and Proposed Order* by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough. (Halpern, Aviv) (Entered: 12/15/2022) |
| 12/29/2022 | 251 | MOTION to Withdraw as Attorney *for Plaintiffs* by All Plaintiffs (Attachments: # 1 Exhibit Declaration, # 2 Exhibit Proposed Order)(Peacocke, Alexander) (Entered: 12/29/2022) |
| 12/30/2022 | 252 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 251 Motion to Withdraw as Attorney. Attorney Alexander F.R. Peacocke terminated. Signed by Judge James M. Moody Jr. on 12/30/2022. (sjh) (Entered: 12/30/2022) |
| 01/06/2023 | 253 | MOTION to Withdraw as Attorney by All Defendants (Land, Amanda) (Entered: 01/06/2023) |
| 01/11/2023 | 254 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 253 Motion to Withdraw as Attorney. Attorney Amanda Denise Land terminated. Signed by Judge James M. Moody Jr. on 1/11/2023. (sjh) (Entered: 01/11/2023) |
| 01/17/2023 | 255 | STIPULATION AND ORDER. Signed by Judge James M. Moody Jr. on 01/17/2023. (llg) (Entered: 01/17/2023) |
| 01/18/2023 | 256 | NOTICE by All Defendants *of Substitution of Party* (Jacobs, Dylan) (Entered: 01/18/2023) |
| 01/18/2023 | 257 | Proposed Findings of Fact by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, Leslie Rutledge, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs(Jacobs, Dylan) (Entered: 01/18/2023) |
| 01/18/2023 | 258 | MOTION to Seal Document *Motion to Seal Unredacted Proposed Findings of Fact* by All Defendants (Jacobs, Dylan) (Entered: 01/18/2023) |
| 01/18/2023 | 259 | Proposed Findings of Fact by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough(Sullivan, Gary) (Entered: 01/18/2023) |

| 01/18/2023 | 260 | MOTION to Seal Document *Unredacted Proposed Findings of Fact* by All Plaintiffs (Sullivan, Gary) (Entered: 01/18/2023) |
|---|---|---|
| 01/19/2023 | 261 | ORDER directing the Clerk to change the name of Defendant Leslie Rutledge to Tim Griffin. Signed by Judge James M. Moody Jr. on 01/19/2023. (llg) (Entered: 01/19/2023) |
| 01/19/2023 | 262 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 258 Motion to Seal Document; granting 260 Motion to Seal Document. Signed by Judge James M. Moody Jr. on 1/19/2023. (sjh) (Entered: 01/19/2023) |
| 01/19/2023 | 263 | SEALED DOCUMENT. (llg) (Entered: 01/19/2023) |
| 01/19/2023 | 264 | SEALED DOCUMENT. (fjg) (Entered: 01/19/2023) |
| 02/01/2023 | 265 | TRIAL BRIEF *Defendants' Post–Trial Briefing* by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Edward Gardner, Rodney Griffin, Tim Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs(Jacobs, Dylan) (Entered: 02/01/2023) |
| 02/01/2023 | 266 | TRIAL BRIEF *Redacted* by Dylan Brandt, Joanna Brandt, Amanda Dennis, Brooke Dennis, Shayne Dennis, Michele Hutchison, Aaron Jennen, Lacey Jennen, Sabrina Jennen, Donnie Saxton, Parker Saxton, Kathryn Stambough(Sullivan, Gary) (Entered: 02/01/2023) |
| 02/01/2023 | 267 | MOTION to Seal Document *Unredacted Trial Brief* by All Plaintiffs (Sullivan, Gary) (Entered: 02/01/2023) |
| 02/03/2023 | 268 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 267 Motion for Leave to File Document Under Seal. Signed by Judge James M. Moody Jr. on 2/3/2023. (kog) (Entered: 02/03/2023) |
| 02/06/2023 | 269 | SEALED BRIEF. (fjg) (Entered: 02/06/2023) |
| 05/09/2023 | 270 | MOTION to Seal *Motion for Change of Attorney's Name* by All Plaintiffs (Sullivan, Gary) (Entered: 05/09/2023) |
| 05/10/2023 | 271 | MOTION to Withdraw as Attorney by All Plaintiffs (Attachments: # 1 Affidavit, # 2 Document)(Kadosh, Rebecca) (Entered: 05/10/2023) |
| 05/11/2023 | 272 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 271 Motion to Withdraw as Attorney. Attorney Rebecca Kadosh terminated. Signed by Judge James M. Moody Jr. on 5/11/2023. (sjh) (Entered: 05/11/2023) |
| 05/11/2023 | 273 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 270 Motion to Seal. Signed by Judge James M. Moody Jr. on 5/11/2023. (sjh) (Entered: 05/11/2023) |
| 05/11/2023 | 274 | SEALED Motion. (jap) (Entered: 05/11/2023) |
| 05/23/2023 | 275 | TRANSCRIPT of Bench Trial – Volume 3 held on 10/19/2022, before Judge James M. Moody Jr. Court Reporters Elaine Hinson/Valarie Flora/Karen Dellinger. Transcript may be viewed only at the public terminals in the Clerk's office. Copies of transcript are only available through the Official Court Reporter before the deadline |

| | | |
|---|---|---|
| | | for Release of Transcript Restriction. After that date it may be obtained through PACER. DEADLINES: Notice of Intent to Request Redaction due 5/30/2023. Redaction Request due 6/13/2023. Redacted Transcript Deadline set for 6/23/2023. Release of Transcript Restriction set for 8/21/2023. (fcd) (Entered: 05/23/2023) |
| 05/23/2023 | 276 | MOTION to Withdraw as Attorney by All Plaintiffs (Sullivan, Gary) (Entered: 05/23/2023) |
| 05/23/2023 | 277 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 276 Motion to Withdraw as Attorney. Attorney Gary L. Sullivan terminated. Signed by Judge James M. Moody Jr. on 5/23/2023. (sjh) (Entered: 05/23/2023) |
| 05/25/2023 | 278 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 274 Motion for Order. Signed by Judge James M. Moody Jr. on 5/25/2023. (sjh) (Entered: 05/25/2023) |
| 06/07/2023 | 279 | NOTICE by All Plaintiffs *of Supplemental Authority* (Bodapati, Arun) (Entered: 06/07/2023) |
| 06/08/2023 | 280 | MOTION to Withdraw as Attorney by All Plaintiffs (Attachments: # 1 Affidavit, # 2 Document)(Bodapati, Arun) (Entered: 06/08/2023) |
| 06/12/2023 | 281 | (This is a TEXT ENTRY ONLY. There is no pdf document associated with this entry.) ORDER granting 280 Motion to Withdraw as Attorney. Attorney Arun Bodapati terminated. Signed by Judge James M. Moody Jr. on 6/12/2023. (sjh) (Entered: 06/12/2023) |
| 06/20/2023 | 282 | SEALED TRANSCRIPT. (fcd) (Entered: 06/20/2023) |
| 06/20/2023 | 283 | FINDINGS OF FACT AND CONCLUSIONS OF LAW permanently enjoining Defendant Tim Griffin, in his official capacity as Attorney General of the State of Arkansas, and all those acting in concert with him, including employees, agents, successors in office, and the members of the Arkansas State Medical Board from enforcing House Bill 1570, Act 626 of the 93rd General Assembly of Arkansas, codified at Ark. Code Ann. §§ 20–9–1501 to 20–9–1504 and 23–79–164; and directing the Clerk to close the case. The Court retains jurisdiction to consider motions for attorneys' fees. Signed by Judge James M. Moody Jr. on 06/20/2023. (llg) (Docket text modified on 6/20/2023 to correct description.)(cmn) (Entered: 06/20/2023) |
| 06/20/2023 | | NOTICE OF DOCKET CORRECTION re 283 Order. CORRECTION: The docket text was modified to correct the title of the document as, "FINDINGS OF FACT AND CONCLUSIONS OF LAW" as indicated by the document. (cmn) (Entered: 06/20/2023) |
| 06/20/2023 | 284 | JUDGMENT: Pursuant to 283 Order entered on this day, Judgment is hereby entered in favor of the Plaintiffs and against the Defendants. Signed by Judge James M. Moody Jr. on 06/20/2023. (llg) (Entered: 06/20/2023) |
| 06/29/2023 | 285 | MOTION to Extend Time *TO FILE MOTION FOR ATTORNEYS FEES AND COSTS* by All Plaintiffs (Holland, Alexander) (Entered: 06/29/2023) |
| 07/11/2023 | 286 | ORDER granting in part and denying in part 285 Plaintiffs' motion to extend time to file their motion for attorneys' fees and costs; and giving Plaintiffs until 09/20/2023 to submit their motion. Signed by Judge James M. Moody Jr. on 07/11/2023. (llg) |

| | | |
|---|---|---|
| | | (Modified on 7/11/2023 to correct typographical error.)(kdr) (Docket text modified on 7/13/2023 to correct typographical error.)(cmn) (Entered: 07/11/2023) |
| 07/20/2023 | 287 | NOTICE OF APPEAL as to 283 Order,, 284 Judgment by Elizabeth Anderson, Rhys L Branman, Robert Breving, Jr, Amy E Embry, Endocrine Society, Edward Gardner, Rodney Griffin, Tim Griffin, Betty Guhman, Veryl D Hodges, Brian T Hyatt, Timothy C Paden, Don R Philips, William L Rutledge, John H Scribner, Sylvia D Simon, David L Staggs. (Jacobs, Dylan) (Entered: 07/20/2023) |
| 07/20/2023 | 288 | NOTIFICATION OF APPEAL and NOA SUPPLEMENT as to 287 Notice of Appeal, 283 Order, 284 Judgment. NOTIFICATION TO COUNSEL: REQUEST FOR TRANSCRIPTS SHOULD BE FILED WITH THE DISTRICT COURT CLERK. (fcd) (Entered: 07/20/2023) |

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DYLAN BRANDT, et al.,                                   PLAINTIFFS

V.                              4:21CV00450 JM

LESLIE RUTLEDGE,[1] et al.,                             DEFENDANTS

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs bring their claims under the Fourteenth Amendment's Equal Protection and

Due Process Clauses and the First Amendment. Pursuant to Federal Rule of Civil Procedure

52(a), the Court makes the following specific findings of fact and conclusions of law. Act

626 is unconstitutional. The Court determines that Plaintiffs are entitled to judgment in their

favor on all claims. The State is permanently enjoined from enforcing Act 626.

### I.     Procedural History

On April 6, 2021, the Arkansas Legislature passed House Bill 1570, Act 626 of

the 93rd General Assembly of Arkansas, codified at Ark. Code Ann. §§ 20-9-1501 to 20-

9-1504 and 23-79-164 ("Act 626").[2] Act 626 prohibits a physician or other healthcare

professional from providing "gender transition procedures" to any individual under

eighteen years of age and from referring any individual under eighteen years of age to

any healthcare professional for "gender transition procedures."

> "Gender transition procedures" means the process in which a person goes
> from identifying with and living as a gender that corresponds to his or her
> biological sex to identifying with and living as a gender different from his
> or her biological sex, and may involve social, legal, or physical changes;

---

[1] Tim Griffin succeeded Leslie Rutledge as Arkansas Attorney General.
[2] The Arkansas Legislature titled the Act as "Arkansas Save Adolescents from Experimentation (Safe) Act." Because the title is misleading, the Court will refer to the Act as "Act 626" in this order.

(6)(A) "Gender transition procedures" means any medical or surgical service, including without limitation physician's services, inpatient and outpatient hospital services, or prescribed drugs related to gender transition that seeks to:

(i)  Alter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex; or

(ii)  Instill or create physiological or anatomical characteristics that resemble a sex different from the individual's biological sex, including without limitation medical services that provide puberty-blocking drugs, cross-sex hormones, or other mechanisms to promote the development of feminizing or masculinizing features in the opposite biological sex, or genital or nongenital gender reassignment surgery performed for the purpose of assisting an individual with a gender transition.

AR LEGIS 626 (2021), 2021 Arkansas Laws Act 626 (H.B. 1570). The Act creates a private right of action for an "actual or threatened" violation. The Act does not define a "threatened violation." The statute of limitations for bringing an administrative or judicial proceeding under the Act is two years. However, an individual under eighteen years of age may bring an action throughout their minority through a parent and may bring an action in their own name for twenty years after reaching majority. A party who prevails under the Act must be awarded attorneys' fees.

Arkansas Governor Asa Hutchinson vetoed HB1570 because he believed it created "new standards of legislative interference with physicians and parents as they deal with some of the most complex and sensitive matters concerning our young people." He explained his concern that HB1570 "put[] the state as the definitive oracle of medical care, overriding parents, patients and health-care experts" and described the bill as a "vast government overreach." The Governor added that "The leading Arkansas medical associations, the American Academy of Pediatrics and medical experts across the country

2

all" opposed the bill, voicing concerns that "denying best practice medical care to transgender youth can lead to significant harm to the young person." He also noted that HB1570 "does not grandfather in those young people who are currently under hormone treatment," and that those adolescents would "be left without treatment" when Act 626 went into effect. (Pls.' Ex. 17).

HB1570 was enacted into law as Act 626 on April 6, 2021, following the Legislature's override of Governor Hutchinson's veto. *See* Pls.' Ex. 16, at 10; Pls.' Ex. 26; Pls.' Ex. 27. A simple majority of the Arkansas General Assembly overrode the Governor's veto.

Plaintiffs filed a complaint alleging that Act 626 violates the Equal Protection Clause, Due Process Clause, and the First Amendment. Plaintiffs seek a declaratory judgment on each claim and a permanent injunction of enforcement of Act 626. Plaintiffs filed a motion for a preliminary injunction. After a hearing, the Court granted the motion for preliminary injunction on the record and filed a written order supplementing the ruling on August 2, 2021. The State appealed the Court's Order to the Eighth Circuit Court of Appeals. On August 25, 2022, the Eighth Circuit affirmed, *see Brandt by & through Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022).

The Court held an eight-day bench trial on this matter. At trial, the Court heard testimony from: Plaintiffs' fact witnesses—Plaintiffs Joanna Brandt, Dylan Brandt, Aaron Jennen, Donnie Ray Saxton, Amanda Dennis, and Dr. Kathryn Stambough; and Dr. Michele Hutchison;[3] Plaintiffs' expert witnesses—Dr. Dan Karasic, Dr. Deanna Adkins, Dr. Jack Turban, and Dr. Armand Antommaria; the State's fact witnesses—Dr.

---

[3] During the trial, the Court dismissed Plaintiff Hutchison as a party because she no longer practices medicine in the State of Arkansas.

Stephanie Ho, Dr. Janet Cathey, Cathy Campbell, Dr. Roger Hiatt, Laura Smalts, and Clifton Francis "Billy" Burleigh Jr.; and the State's expert witnesses—Dr. Stephen Levine, Prof. Mark Regnerus, Dr. Patrick Lappert, and Dr. Paul Hruz.

The Court also received exhibits from both parties, as well as testimony from Defendant Amy Embry (the Rule 30(b)(6) designee of Defendant Arkansas State Medical Board), Dr. Rhys Branman and non-party Representative Robin Lundstrom by deposition designations.

The parties filed post-trial briefs (ECF Nos. 265, 266) and proposed findings of fact (ECF Nos. 257, 259) for the Court's consideration.

Plaintiffs contend that Act 626 categorically prohibits transgender adolescents[4] with gender dysphoria from treatment that the patient, their parents, and their medical providers agree is medically necessary and in the adolescent's best interest. They allege that the Act singles out individuals in need of medically necessary gender-affirming care solely because the individual's gender identity does not conform to their assigned sex at birth. The State asserts that Arkansas has a compelling government interest in protecting the health and safety of its citizens, particularly "vulnerable" children who are gender nonconforming or who experience distress at identifying with their biological sex. AR LEGIS 626 (2021). The State also contends that it has a compelling government interest in ensuring the ethical standards of the healthcare profession.

---

[4] Under Arkansas law, a minor is a person under the age of eighteen (18) years old. The term "adolescent" is used to describe a person from the time they begin puberty until they reach adulthood on their eighteenth birthday. For purposes of this opinion, the Court will use the terms "adolescent" and "minor" interchangeably.

4

## II.   **Findings of Fact**[5]

### A. **Gender Identity, Gender Incongruence and Gender Dysphoria**

1.   "Gender identity" refers to a person's deeply felt internal sense of belonging to a particular gender. (Tr. 24:11-15, ECF No. 219 (Karasic)). It is a "core part of who you are." (Tr. 266:6-11, 267:11-15, ECF No. 219 (Adkins)).

2.   Most people are "cisgender" and have a gender identity that aligns with their sex assigned at birth—the sex placed on their birth certificate at birth based on their external genitalia. (Tr. 24:16-20, ECF No. 219 (Karasic)).

3.   Transgender people have a gender identity that does not align with their birth-assigned sex. (Tr. 24:21-23, ECF No. 219 (Karasic)).

4.   "Gender incongruence" is a condition where a person's gender identity does not align with their birth-assigned sex.

5.   There is no evidence that gender incongruence is the result of a dysfunctional family life, and many transgender people come from healthy, supportive families. (Tr. 100:4-16, ECF No. 219 (Karasic)).

6.   Gender identity is not something that an individual can control or voluntarily change. *Id.* at 29:13-15 (Karasic); 267:11-15 (Adkins).

7.   Efforts to change a person's gender identity to become congruent with their birth-assigned sex have been attempted in the past without success and with harmful effects. *Id.* at 29:16-20, 30:3-24 (Karasic).

---

[5] These facts are accurate as of the date of trial.

5

8.    Efforts to change an individual's gender identity can harm individuals by increasing feelings of shame and creating an expectation that change is possible when it is not, which can increase a sense of failure. *Id.* at 30:12-19 (Karasic).

9.    Because efforts to change an individual's gender identity through therapy are ineffective, such efforts are now considered unethical by many mental health organizations including the American Psychological Association. *Id.* at 30:3-11 (Karasic); Tr. 325:18-326:4, ECF No. 220 (Turban).

10.   Although people cannot voluntarily change their gender identity, a person's understanding of their gender identity can change over time. (Tr. 30:25-31:9, ECF No. 219 (Karasic); 266:12-267:15, 270:24-271:1 (Adkins); Tr. 331:9-15, ECF No. 220 (Turban)).

11.   Research and clinical experience show that when gender incongruence continues after the onset of puberty, it is very unlikely that the individual will come to identify with their sex assigned at birth later in life. *Id.* at 310:16-25 (Turban); Tr. 267:25-268:7, 271:2-15, ECF No. 219 (Adkins); 98:7-25, 173:2-9 (Karasic).

12.   The term "transgender male" refers to a person who was assigned female at birth who has a male gender identity. "Transgender female" refers to a person who was assigned male at birth who has a female gender identity.

13.   The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders-5 ("DSM") is a list of mental health disorders put out by the American Psychiatric Association and updated periodically. (Tr. 25:16-20, ECF No. 219 (Karasic)). It compiles criteria for psychiatric diagnoses that are generally relied on by practitioners in the psychiatric profession. *Id.* at 142:10-15 (Karasic).

6

14.   The lack of alignment between one's gender identity and their sex assigned at birth (gender incongruence) can cause significant distress. The medical term for this distress is gender dysphoria. *Id.* at 24:7-10 (Karasic).

15.   Gender dysphoria can increase with the onset of puberty and the development of secondary sex characteristics that do not align with one's gender identity. *Id.* at 37:14-22 (Karasic).

16.   The diagnostic criteria for gender dysphoria in adolescents and adults include incongruence between an individual's experienced or expressed gender and their sex assigned at birth lasting for at least six months and accompanied by clinically significant distress or impairment in social or occupational function. *Id.* at 26:20-27:3 (Karasic).

17.   The diagnosis of gender dysphoria is made by a clinician who assesses whether a patient meets criteria based on a clinical interview, the clinician's observations of the patient, and the reports of the minor's parents. *Id.* at 27:7-28:1 (Karasic). This is how diagnoses of other mental health conditions are generally made. *Id.* at 28:2-5 (Karasic); Tr. 894:23-895:6, ECF No. 246 (Levine).

18.   Gender dysphoria is a serious condition that, if left untreated, can result in other psychological conditions including depression, anxiety, self-harm, suicidality, and impairment in functioning. (Tr. 28:17-21, ECF No. 219 (Karasic); 236:11-19 (Adkins)).

19.   It is widely recognized in the medical and mental health fields that, for many people with gender dysphoria, the clinically significant distress caused by the condition can be relieved only by living in accordance with their gender identity, which is referred to as gender transition. This can include social transition—e.g., dressing, grooming, and using a name and pronouns consistent with one's gender identity—and, for adolescents and

7

adults, may also include gender-affirming medical care—i.e., medical treatments to align the body with one's gender identity. (Tr. 111:1-18, ECF No. 219 (Karasic); 197:16-20, 232:23-233:5 (Adkins); Tr. 324:18-325:3, ECF No. 220 (Turban)).

20.   There is evidence of a rise in referrals to gender clinics in the United States in recent years. The increase in gender clinic patients is not surprising given the undisputed testimony that there is an increase in awareness of gender dysphoria and an increase in the number of gender clinics and insurance coverage for treatment, making such care available when it previously was not. (Tr. 77:17-78:15, 79:3-79:10, ECF No. 219 (Karasic)).

21.   If any adolescents are seeking care at gender clinics because of social influence, they would not meet the criteria of gender dysphoria or be considered for gender-affirming medical treatment unless they had a longstanding incongruent gender identity and clinically significant distress. *Id.* at 87:6-88:1 (Karasic).

**B. The Science and Resulting Guidelines**

22.   The Arkansas chapter of the American Academy of Pediatrics, the Arkansas Academy of Pediatrics, the American College of OB/GYN, the American Academy of Child Adolescent Psychologists, the American Academy of Child and Adolescent Psychiatry, the Arkansas Psychological Association, and other scientific and medical organizations all recognized the effectiveness and safety of gender-affirming medical care. (Pls.' Ex. 24 at 30:20-31:17, 32:4-19; Pls.' Ex. 25 at 40:19-42:16).

23.   Two professional associations, the World Professional Association for Transgender Health (WPATH) and the Endocrine Society,[6] have published widely-accepted clinical

---

[6] Both associations joined in an Amici Curiae brief in support of Plaintiffs' Motion for Preliminary Injunction. (ECF No. 30).

practice guidelines for the treatment of gender dysphoria. *Id.* at 31:11- 22, 33:22-34:1 (Karasic).

24.    WPATH is a professional association that develops treatment recommendations through a committee of renowned experts in transgender health. *Id.* at 31:23-25, 32:13-18 (Karasic). WPATH has been publishing guidelines for the treatment of gender dysphoria and prior diagnoses related to gender incongruence since 1979. Its current version—the WPATH Standards of Care for the Treatment of Transgender and Gender Diverse People, Version 8—was published in 2022. *Id.* at 31:17-22 (Karasic).

25.    The Endocrine Society is a professional society of over 15,000 endocrinologists and endocrinology researchers. (Tr. 383:11-14, ECF No. 220 (Antommaria)).

26.    The Endocrine Society first published guidelines for the treatment of gender dysphoria in 2011 with a second edition in 2017. They are called Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Guideline. (Tr. 31:17-22, 33:12-17, ECF No. 219 (Karasic)).

27.    The Endocrine Society Guideline for treatment of gender dysphoria is similar to other clinical practice guidelines published by the Endocrine Society concerning other medical treatments. *Id.* at 198:10-16 (Adkins).

28.    Like other clinical practice guidelines, the WPATH Standards of Care and Endocrine Society Guidelines were developed by experts in the field, including clinicians and researchers, who used systematic processes for collecting and reviewing scientific evidence. *Id.* at 32:13-18, 102:14-103:2 (Karasic).

29.    Both WPATH and the Endocrine Society, like other large medical and mental health associations such as the American Psychiatric Association, develop guidelines for

Appellate Case: 23-2681   Page: 109   Date Filed: 07/21/2023 Entry ID: 5298226

treatment as well as advocate for policies relevant to their patient populations. *Id.* at 104:25-105:21 (Karasic).

30.   The WPATH Standards of Care and Endocrine Society Guidelines for the treatment of gender dysphoria are recognized as best practices by the major medical and mental health professional associations in the United States, including the American Academy of Pediatrics, the American Psychiatric Association, the American Psychological Association, the American Medical Association, and the American Academy of Child and Adolescent Psychology. *Id.* at 34:2-12 (Karasic).

31.   The WPATH Standards of Care and Endocrine Society Guidelines are widely followed by clinicians. *Id.* at 34:13-19 (Karasic); 197:24-198:20, 273:5-8 (Adkins).

32.   Transgender care is not experimental care.

33.   Providing treatment for gender dysphoria does not cause a person to be or remain transgender and there is no treatment that can change a person's gender identity. *Id.* at 29:13-20, 98:7-99:21 (Karasic).

34.   Under the WPATH Standards of Care and Endocrine Society Guidelines, treatment for gender dysphoria differs depending on whether the patient is a prepubertal child, an adolescent, or an adult. *Id.* at 35:20-37:13 (Karasic).

35.   Under the WPATH Standards of Care and Endocrine Society Guidelines, before puberty, treatment is focused on support for the child and family. Some prepubertal children may socially transition. No medical interventions are indicated or provided for the treatment of gender dysphoria in prepubertal children. *Id.* at 36:5-10 (Karasic); 198:21-199:2 (Adkins).

36.     In addition to social transition, medical interventions such as medications to delay
        puberty ("puberty blockers" or "pubertal suppression"), hormone therapy, and in some
        more rare instances, surgery, may become medically indicated for youth who experience
        distress after the onset of puberty (i.e., during adolescence) under the WPATH Standards
        of Care and Endocrine Society Guidelines. *Id.* at 36:11-37:13; 38:19- 39:1 (Karasic);
        199:3-12 (Adkins).

37.     Under the WPATH Standards of Care and Endocrine Society Guidelines, treatment
        decisions for adolescents with gender dysphoria are individualized based on the needs of
        the patient, and gender-affirming medical treatments are not indicated or appropriate for
        all adolescents with gender dysphoria. *Id.* at 43:9-12 (Karasic); 200:18-24 (Adkins).

38.     As with clinical practice guidelines in other areas of medicine, the WPATH Standards of
        Care recognize that it may be appropriate for doctors to deviate from the guidelines in
        individual cases where, in the clinician's judgment, such deviation is appropriate. (Tr.,
        35:11-19, 187:5-188:15, ECF No. 219 (Karasic)).

**C. <u>Informed consent</u>**

39.     The WPATH Standards of Care and Endocrine Society Guidelines have provisions for
        informed consent for treatment that are consistent with principles of informed consent
        used throughout the field of medicine. (Tr. 401:4-15, ECF No. 220 (Antommaria)).

40.     In general, before any medical treatment is provided to a patient, the health care provider
        must obtain informed consent. Informed consent means patients—and in the case of
        minors, their parents or guardians—are informed of the potential risks, benefits, and
        alternatives to treatment so they can weigh them and decide whether to pursue treatment.
        (Tr. 53:7-13, ECF No. 219 (Karasic); Tr. 380:10-19, ECF No. 220 (Antommaria)).

41.     In general, adolescents are able to understand the risks, benefits, and alternatives to a medical intervention. *Id.* at 381:1-8, 381:18-22 (Antommaria). The assent of adolescents—meaning their agreement with the proposed course of treatment— should be obtained. *Id.* at 380:20-381:8 (Antommaria).

42.     Even when adolescents are able to understand the risks, benefits, and alternatives to treatment and assent to treatment, their parents or guardians must still provide informed consent. *Id.* at 380:1-9 (Antommaria).

43.     The WPATH Standards of Care and Endocrine Society Guidelines provide that, before gender-affirming medical treatments are provided to adolescent patients, the patient and their parents or guardians must be informed of the potential risks, benefits and alternatives to treatment and consent must be provided by the parents or guardians. *Id.* at 400:11-401:3 (Antommaria); Tr. 274:7-275:19, ECF No. 219 (Adkins).

44.     For hormonal therapy, the WPATH Standards of Care and Endocrine Society Guidelines specifically provide that patients and their parents or guardians must be informed of the potential impact of treatment on fertility and counseled on options for preserving fertility. (Tr. 400:11-21, ECF No. 220 (Antommaria); Tr. 53:25-54:12, ECF No. 219 (Karasic)).

45.     The WPATH Standards of Care also provide that clinicians should inform families about the nature and limits of the evidence base regarding gender-affirming medical treatment for adolescents as part of the informed consent process. *Id.* at 55:7- 16 (Karasic).

46.     The WPATH Standards of Care provide that, before any potentially irreversible medical treatments, families should be informed that some individuals may come to feel gender-affirming medical care is not a good fit for them as their feelings about their gender identity could change. *Id.* at 54:13-55:6 (Karasic).

12

47.   In some cases, a mental health diagnosis may impair an individual's medical decision-making capacity, in which case treatment would be delayed. (Tr. 382:7-11, ECF No. 220 (Antommaria); 321:12-322:3 (Turban)). Having a mental health diagnosis does not necessarily mean that an individual lacks medical decision- making capacity. *Id.* at 382:12-14 (Antommaria). If a patient suffers from depression or anxiety, that does not mean they cannot consent to treatment. *Id.* at 414:2-11 (Antommaria); Tr. 1056:3-22; ECF No. 248 (Lappert)).

48.   The informed consent process is adequate to enable minor patients and their parents to make decisions about gender-affirming medical care for adolescents.

**D. <u>Medical Interventions</u>**

**Step One: Psychotherapy**

49.   The WPATH Standards of Care spell out that the comprehensive mental health assessment prior to medical treatments for adolescents should include a thorough history of the person's gender identity and the stability of that identity; an assessment of other conditions that could affect presentation like a co-occurring psychiatric disorder; and the adolescent's cognitive maturity to make decisions and understand the future consequences of those decisions and their capacity to participate in care. (Tr. 43:13-45:2, ECF No. 219 (Karasic)).

50.   The WPATH Standards of Care provide that any co-occurring mental health conditions should be addressed. *Id.* at 48:17-21 (Karasic); Tr. 199:21-24, ECF No. 219 (Adkins).

51.   The WPATH Standards of Care recognize that autism spectrum disorder is present in higher rates among youth with gender dysphoria and that this needs to be considered when diagnosing and assessing a patient for treatment. WPATH Standards of Care

13

recommend that when assessing patients who have autism spectrum disorder, more time may be needed and differences in communication should be taken into account. *Id.* 48:6-16 (Karasic).

52. The WPATH Standards of Care and Endocrine Society Guidelines recommend that mental health professionals should be involved in decisions about whether medical treatments are indicated and appropriate for a given adolescent. *Id.* at 45:23-46:9; 47:1-7 (Karasic); Tr. 307:13-22, ECF No. 220 (Turban). WPATH Standards of Care specifically recommend that "health care professionals involve relevant disciplines, including mental health and medical professionals, to reach a decision about whether [medical interventions] are appropriate and remain indicated throughout the course of treatment until the transition is made to adult care."[7] (Tr. 45:23-46:9, ECF No. 219 (Karasic)).

53. The WPATH Standards of Care and Endocrine Society Guidelines provide for a comprehensive mental health assessment and diagnosis before an adolescent is provided gender-affirming medical treatment. *Id.* at 43:13-44:13,155:17-22 (Karasic); Tr. 322:10-19, ECF No. 220 (Turban).

54. Psychotherapy can be important for individuals with gender dysphoria to address and alleviate other conditions such as depression and anxiety, but it does not alleviate the underlying distress due to the incongruence between a person's gender identity and birth-assigned sex. (Tr. 29:16-20, 64:1-7, ECF No. 219 (Karasic)). There are no psychotherapeutic interventions that have been demonstrated to be effective at alleviating the gender dysphoria itself. *Id.* at 99:22-100:3 (Karasic).

---

[7] Quotes from the WPATH Standards of Care refer to the current edition, version 8.

55.     Not all individuals experiencing gender incongruence decide to seek treatment beyond
        psychotherapy.

**Step Two: Puberty Blockers**

56.     The purpose of puberty blockers is to alleviate or prevent the worsening of the distress of
        gender dysphoria by pausing the physical changes that come with puberty. This treatment
        also provides the patient time to further understand their gender identity before initiating
        any irreversible medical treatments. *Id.* at 233:9-22 (Adkins); Tr. 318:7-22, ECF No. 220
        (Turban).

57.     Gonadotropin hormone-releasing hormone, or GnRH agonists (often referred to as
        puberty blockers), pause puberty at the stage it was in when treatment started. (Tr.
        202:23-203:16; 233:6-14, ECF No. 219 (Adkins)).

58.     Under the WPATH Standards of Care and Endocrine Society Guidelines, puberty
        blockers may be indicated as treatment for gender dysphoria for youth who have been
        confirmed to have started puberty, which is referred to as Tanner Stage 2. *Id.* at 205:3-15
        (Adkins). Tanner Stage 2 begins at the first sign of puberty. (Tr. 205:5-7, ECF No. 219
        (Adkins)). The age at which youth begin puberty varies significantly but typically starts
        between the ages of eight and fourteen for those assigned female at birth and between the
        ages of nine and fourteen for those assigned male at birth. *Id.* at 211:8-21 (Adkins).

**Step Three: Hormone Therapy**

59.     The purpose of hormone therapy is to alleviate the distress of gender dysphoria by
        aligning the body to be more congruent with the individual's gender identity. *Id.* at 37:23-
        38:2 (Karasic); 234:3-8 (Adkins); Tr. 417:21-418:9, ECF NO. 220 (Antommaria).

15

60.   Under the WPATH Standards of Care and Endocrine Society Guidelines, hormone therapy—estrogen and anti-androgens for transgender girls, and testosterone for transgender boys— may be indicated for some adolescents with gender dysphoria. (Tr. 36:11-21, ECF No. 219 (Karasic)).

61.   Transgender females treated with estrogen and anti-androgens will go through hormonal puberty like their cisgender female counterparts. They will develop typically female secondary sex characteristics such as breasts, softened skin, and fat distribution typical of females. *Id.* at 215:11-18 (Adkins).

62.   The WPATH Standards of Care and Endocrine Society Guidelines do not recommend hormone therapy for adolescents with gender dysphoria unless the patient's articulation of their gender identity has been long-lasting and stable. The WPATH Standards of Care specifically provide that hormone therapy should be recommended to adolescents only if the experience of gender incongruence has lasted for years. (Tr. 50:20- 51:4, ECF No. 219 (Karasic)).

63.   The WPATH Standards of Care and Endocrine Society Guidelines also require that, before providing hormone therapy, adolescents should demonstrate the emotional and cognitive maturity to understand the risks and be able to think into the future and appreciate the long-term consequences. *Id.* at 52:19-53:6 (Karasic); Tr. 400:22-401:15, ECF No. 220 (Antommaria).

64.   The WPATH Standards of Care provide detailed guidance to clinicians about how to assess adolescents' maturity. (Tr. 58:17-59:8, ECF No. 219 (Karasic)).

Appellate Case: 23-2681     Page: 116     Date Filed: 07/21/2023 Entry ID: 5295220   p116

**Step Four: Surgery**

65. The Arkansas Children's Hospital Gender Clinic does not provide surgical treatment to patients. (Tr., ECF No. 275 at 605:8-11 (Stambough); 520:14-18 (Hutchison)).

66. Genital surgeries for adolescents are extremely rare. (Tr. 36:11-21, 55:10-16; ECF No. 219 (Karasic); Tr. 820:23-24, ECF No. 246 (Levine)). In their many years of treating adolescents with gender dysphoria, neither Dr. Karasic nor Dr. Adkins has ever referred a minor patient for genital surgery. (Tr. 186:23-25, 189:21-190:5, ECF No. 219 (Karasic); 231:17-19 (Adkins)).

67. With respect to genital surgeries for minors, the Endocrine Society Guideline does not recommend any such surgeries until after age 18. *Id.* at 38:19-39:9 (Karasic). The WPATH Standards of Care do not have an age threshold for vaginoplasty but recommends that it should be offered only to patients under 18 with great caution after a thorough assessment of the patient's maturity. It does not recommend phalloplasty for anyone under 18. *Id.* at 36:22-37:7, 38:8-18 (Karasic).

68. In the rare instance that an adolescent has gender-affirming surgery, the overwhelming majority of surgeries are chest surgeries for adolescent transgender males. *Id.* at 36:18-20 (Karasic).

69. The WPATH Standards of Care and Endocrine Society Guidelines provide that chest masculinization surgery may be appropriate for some transgender male adolescents prior to age 18 to help align the body with the individual's gender identity to alleviate gender dysphoria. There are no specific age requirements but, like the requirements for hormone therapy, the gender incongruence must be long-standing, and the patient must be deemed

17

to have the cognitive maturity to understand the risks and effects of this treatment. *Id.* at 158:11-23 (Karasic).

**E.  Gender-Affirming Medical Care for Adolescents in Arkansas**

70.  The Arkansas Children's Hospital ("ACH") Gender Clinic is the primary provider of gender-affirming medical care for adolescents with gender dysphoria in Arkansas. It has seen more than 300 patients since it opened in 2018. (Tr. 516:13-517:1, 520:19-21, ECF No. 275 (Hutchison)).

71.  The ACH Gender Clinic's protocols[8] are aligned with the WPATH Standards of Care and Endocrine Society Guidelines. *Id.* at 518:20-23 (Hutchison); 602:21-604:20 (Stambough).

72.  In February 2022, leadership at ACH changed the protocols of the Gender Clinic to stop initiating gender-affirming medical care for patients under 18 who were not already receiving such treatment, while continuing such treatment for patients who were already receiving such care. *Id.* at 551:13-552:4 (Hutchison). The Hospital sent a letter to patients' families informing them that the change was due to concern that Act 626 might go into effect in the near future and disrupt patients' care. *Id.* at 552:5-17 (Hutchison); 602:10-20 (Stambough). The Clinic continues to provide hormone therapy to 81 patients under age 18. *Id.* at 602:21-603:4 (Stambough). Because the change in protocol was based on Act 626, Dr. Stambough expects that, if the law is permanently enjoined, the Gender Clinic will resume providing gender-affirming medical care for new patients. *Id.* at 603:5-10 (Stambough).

---

[8] References to ACH Gender Clinic protocols throughout these findings of fact refer to the protocols in place prior to February 2022, unless otherwise specified.

Appellate Case: 23-2681     Page: 118     Date Filed: 07/21/2023 Entry ID: 5295226

73.    Gender-affirming medical treatments that may be provided to adolescents at the ACH

Gender Clinic include puberty blockers, estrogen, testosterone blockers, and testosterone.

*Id.* at 518:24-519:15 (Hutchison).

74.    The ACH Gender Clinic creates individualized treatment plans tailored to the particular

needs of each patient. *Id.* at 521:1-9 (Hutchison); 604:2-6 (Stambough).

75.    Not every adolescent patient seen at the ACH Gender Clinic requests or receives gender-

affirming medical interventions. *Id.* at 522:4-11 (Hutchison); 604:21-606:19

(Stambough).

76.    ACH Gender Clinic patients work with Clinic staff and their therapists to assess their

gender identity. Some patients who have come to the Clinic with issues related to their

gender identity eventually came to identify with their birth-assigned sex. Those patients

did not receive medical interventions. *Id.* at 548:10-20 (Hutchison); 605:18-606:19

(Stambough).

77.    Sometimes, ACH Gender Clinic staff do not feel some adolescent patients are ready for

gender-affirming medical interventions and treatment will not be provided. *Id.* at 522:16-

25, 539:18-22 (Hutchison).

78.    Only four ACH Gender Clinic patients have been treated with puberty blockers. That is

because most patients come to the Clinic at older ages when such treatment would not be

indicated. (Tr. 519:12-15; 521:10-19, ECF No. 275 (Hutchison)). Patients who have

already progressed significantly into puberty are not appropriate candidates for puberty

blockers. *Id*. at 521:22-522:3.

19

79.    The ACH Gender Clinic protocols provide that the following criteria must be met before

initiating hormone therapy (estrogen and testosterone blockers for transgender girls, or

testosterone for transgender boys) for adolescents:

a.    the patient must be assessed by the Clinic's psychologist;

b.    the patient must meet the DSM-5 criteria for gender dysphoria;

c.    the patient must have a consistent and persistent gender identity;

d.    the patient must be in counseling with a therapist;

e.    the patient's therapist must be consulted and must not identify any concerns

about starting treatment;

f.    the patient must have the cognitive maturity to understand and weigh the risks

and benefits of treatment;

g.    the patient's parent must provide informed consent;

h.    the patient must receive a medical assessment including baseline lab work; and

i.    the patient must be 14 years of age or older.

*Id.* at 524:16-526:9, 529:25-530:14, 531:7-9 (Hutchison).

80.    The psychological evaluation conducted by the ACH Gender Clinic psychologist is

comprehensive and includes an assessment for gender dysphoria, the patient's degree of

dysphoria and the specific sources of distress, and other psychological assessments (e.g.,

for depression or anxiety) tailored to the patient's mental health needs. *Id.* at 526:18-

527:12 (Hutchison).

81.    The ACH Gender Clinic determines whether a patient's gender identity is persistent and

consistent through information collected from the patient, the patient's parents, the

20

patient's therapist, the Clinic psychologist, and the Clinic physician. *Id.* at 528:5-19 (Hutchison).

82. At the ACH Gender Clinic, it is common for Clinic patients to have a long-standing transgender identity by the time they come to the Clinic. The average length of time between when Clinic patients first identify as transgender and when they first tell a parent is 6.5 years. *Id.* at 528:20-25 (Hutchison).

83. The ACH Gender Clinic has very rarely had patients who only recently discovered their gender incongruence. In those cases, the patient would not be considered for hormone therapy for some time because there would be a need to see if the patient's gender identity remained consistent and persistent over time. *Id.* at 529:1-13 (Hutchison).

84. At the ACH Gender Clinic, the assessment of the patient's maturity is based on information from the parents, the Clinic psychologist, the Clinic physician, and the patient's therapist. *Id.* at 539:4-17 (Hutchison).

85. Where patients do not demonstrate the maturity to understand the potential risks and benefits of treatment, the ACH Gender Clinic will defer medical treatment. *Id.* at 539:18-540:1 (Hutchison).

86. In cases in which an ACH Gender Clinic patient's therapist has expressed concerns about beginning hormone therapy, e.g., if they had concerns about the patient's maturity or mood stability, treatment was delayed. *Id.* at 530:15-531:6 (Hutchison).

87. At the ACH Gender Clinic, no minor is provided hormone therapy unless the patient, their parents, their doctor, the Clinic psychologist, and the patient's therapist all approve treatment. *Id.* at 522:16-25, 530:15-531:14 (Hutchison).

88.     At the ACH Gender Clinic, for those patients who are treated with hormone therapy, the average length of time between a patient's first visit to the Clinic and the start of hormone therapy is about 10.5 months. *Id.* 529:18-24 (Hutchison).

89.     The average age of beginning hormone therapy for ACH Gender Clinic patients is 16. *Id.* at 526:10-17 (Hutchison).

90.     In the ACH Gender Clinic's informed consent process, the information provided to patients and their parents includes information about the possible risks and side effects of treatment, including potential risks to fertility related to hormone therapy and discussion of fertility preservation options. *Id.* at 531:15-532:18, 537:21- 538:14 (Hutchison); 613:20-614:3 (Stambough).

91.     The ACH Gender Clinic's informed consent process includes informing families about the limitations on what is known about the effects and risks of treatments. *Id.* at 533:3-11 (Hutchison); 604:12-19 (Stambough).

92.     Drs. Hutchison and Stambough similarly observed great distress in their gender dysphoric adolescent patients at the ACH gender clinic. Suicidal ideation and self-harm were common; some patients had attempted suicide, sometimes multiple times. *Id.* at 542:6-543:2 (Hutchison); 609:5-17 (Stambough).

**F.  The Parent and Minor Plaintiffs**[9]

**The Brandt Family**

93.     Plaintiff Dylan Brandt is 17 years old. (Tr. 658:8-12, ECF No. 275 (Joanna Brandt); 688:14-15 (Dylan Brandt)).

_____

[9] Dylan Brandt, Sabrina Jennen, Brooke Dennis, and Parker Saxton are referred to collectively as the "Minor Plaintiffs." Joanna Brandt, Lacey and Aaron Jennen, Amanda and Shayne Dennis, and Donnie Saxton are referred to collectively as the Parent Plaintiffs. Kathryn Stambough is referred to as the Physician Plaintiff.

22

94.     Plaintiff Joanna Brandt is Dylan's mother. *Id.* at 658:6-9 (J. Brandt).

95.     The Brandts live in Greenwood, Arkansas. *Id.* at 658:4-5 (J. Brandt); 688:10-11 (D. Brandt).

96.     Dylan was assigned female at birth, but his gender identity is male. *Id.* at 659:10-15 (J. Brandt); 688:16-20 (D. Brandt).

97.     Dylan's distress around his gender began before puberty. *Id.* at 689:13-24 (D. Brandt).

98.     Dylan informed his mother of his gender dysphoria through a letter he gave her in June 2019, when he was 13 years old. *Id.* at 659:16-18 (J. Brandt).

99.     Dylan has been diagnosed with gender dysphoria. *Id.* at 665:9-10 (J. Brandt).

100.    After informing his mother, Dylan started socially transitioning—using he/him pronouns and the name Dylan. *Id.* at 691:4-10 (D. Brandt); 662:14- 19 (J. Brandt). He already had short hair but cut his hair shorter and in more typically masculine ways. *Id.* at 663:10-19 (J. Brandt). He also began to shop in the boys' section of stores. *Id.* at 663:20-664:4 (J. Brandt). Through these steps, Dylan began to be recognized as a boy more in public. *Id.* at 664:5-7 (J. Brandt).

101.    Dylan's mood improved after he started to be recognized as a boy. *Id.* at 663:22-664:23 (J. Brandt).

102.    Dylan was referred to the ACH Gender Clinic by his pediatrician. *Id.* at 665:11-16 (J. Brandt).

103.    Dylan's first visit to the ACH Gender Clinic was in January 2020. *Id.* at 666:22- 25 (J. Brandt). At that visit, he and his mother met with Dr. Michele Hutchison— the director of the Gender Clinic at the time—and the Clinic's social worker. (Tr. 514:25-515:4, 517:14, ECF No. 275 (Hutchison); 667:1-7 (J. Brandt). Dr. Hutchison explained the

23

possible treatment options for adolescents with gender dysphoria and the risks and benefits of those treatments. *Id.* at 667:8-18, 668:6-11 (J. Brandt).

104. During his first visit to the ACH Gender Clinic, Dylan and his mother and Dr. Hutchison discussed mental health therapy. Dylan had been in therapy prior to that visit, but he was between therapists at the time and the Gender Clinic referred him to a therapist near where he lived. *Id.* at 667:19-668:3 (J. Brandt).

105. Menstrual cycles were causing Dylan great distress, Dr. Hutchison prescribed menstrual suppression medication at that January 2020 visit. *Id.* at 668:16-669:5 (J. Brandt).

106. Menstrual suppression did not alleviate Dylan's gender dysphoria. *Id.* at 669:8-10 (J. Brandt).

107. Eventually, Dylan began testosterone therapy in August 2020. This decision was made by his mother, a Clinic psychologist who evaluated him, his therapist, Dr. Hutchison, and Dylan. Everyone agreed it was appropriate for him.[10] *Id.* at 670:22-672:8 (J. Brandt)).

108. Dr. Hutchison had informed Dylan and his mother of the potential risks of treatment more than once. Joanna asked a lot of questions at the Clinic and had done research to make sure she was making the best medical decision for her child. *Id.* at 661:14-23, 662:20-663:7, 667:8-18, 668:6-15, 669:11-25, 670:1-21, 671:7-19 (J. Brandt).

109. As a parent, Joanna routinely makes medical decisions for her minor children. *Id.* at 658:13-21 (J. Brandt).

110. Dylan has now been on cross-sex hormone therapy for over two and a half years. *Id.* at 672:9-10 (J. Brandt).

---

[10] The trial transcript contains a typographical error. The visit at the ACH Gender Clinic was in August 2020, not August 2002 the date included in the trial transcript.

24

111.   Testosterone treatment has significantly alleviated Dylan's gender dysphoria. *Id.* at 673:3-25 (J. Brandt)).

112.   Dylan has not experienced any negative side effects from testosterone therapy. *Id.* at 672:11-12 (J. Brandt); 694:14-19 (D. Brandt).

113.   Dylan has continued regular therapy with a counselor. (Tr. 695:6-7, ECF No. 275 (D. Brandt).

114.   If Act 626 were to go into effect, medically detransitioning is not an option for Dylan. *Id.* at 696:3-10 (D. Brandt). His mother Joanna fears that stopping treatment would negatively affect his mental health and he would "lose all" of "who he has become." *Id.* at 675:4-14 (J. Brandt).

115.   Dylan and Joanna have discussed moving out of state or traveling out of state regularly for treatment if he cannot continue receiving treatment in Arkansas because of Act 626. *Id.* at 675:15-676:9 (J. Brandt); 696:11-12 (D. Brandt).

**The Jennen Family**

116.   Plaintiff Sabrina Jennen is 17 years old. (Tr. 447:18-20, ECF No. 220 (Jennen)).

117.   Plaintiffs Lacey and Aaron Jennen are her parents. *Id.* at 447:8-21 (Jennen).

118.   Sabrina has two younger sisters. *Id.* at 447:18-21 (Jennen).

119.   The Jennens live in Fayetteville, Arkansas. *Id.* at 459:25-460:1 (Jennen).

120.   Sabrina was assigned male at birth, but her gender identity is female. *Id.* at 448:15-20 (Jennen).

121.   Sabrina informed her parents of her gender dysphoria in July 2020, when she was 15. *Id.* at 448:21-449:23

25

122.  After informing her parents, Sabrina started to see a counselor, Cathy Campbell. *Id.* at
      452:3-10, 454:1-2 (Jennen); Tr. 72:16-18, ECF No. 282 (Campbell). Sabrina continues to
      see Ms. Campbell regularly. (Tr. 454:3-8, ECF No. 220 (Jennen)).

123.  Ms. Campbell diagnosed Sabrina with gender dysphoria. *Id.* at 453:15-25(Jennen); Tr.
      77:12-78:2, ECF No. 282 (Campbell).

124.  In the Summer of 2020, Sabrina started socially transitioning— she began to go by the
      name Sabrina and use she/her pronouns while at home. At the time, she and her family
      had just moved to Fayetteville, so she prepared to start the new school year as Sabrina.
      (Tr. 452:3-13, ECF No. 220 (Jennen)).

125.  Sabrina and Ms. Campbell first discussed hormone therapy in September 2020 when
      Sabrina described her intense distress. (Tr. 75:15-76:7, ECF No. 282 (Campbell). After
      that session, Sabrina discussed hormone therapy with her parents, who were initially
      hesitant. *Id.* at 76:20-24 (Campbell); Tr. 454:11-18, ECF No. 220 (Jennen).

126.  Because Ms. Campbell does not counsel patients about the medical risks of hormone
      therapy, she gave the Jennens Dr. Stephanie Ho's name and contact information so that
      they could speak with a medical doctor in Fayetteville who could best answer their
      questions. *Id.* at 76:25-77:8 (Campbell); Tr. 454:11-20, ECF No. 220 (Jennen)).

127.  Sabrina's parents wanted to do more research and better understand the potential risks
      and benefits of hormone therapy before consenting to Sabrina beginning treatment. *Id.* at
      454:21-455:17, 456:10-17 (Jennen).

128.  Sabrina and her parents visited Dr. Ho's office in December 2020. *Id.* at 455:18-22
      (Jennen). They met with a certified nurse practitioner who independently diagnosed
      Sabrina with gender dysphoria. (Tr. 82:18-83:1, ECF No. 282 (Ho). Dr. Ho's staff also

26

provided verbal and written information to the Jennens about hormone therapy, including

the risks and benefits and information related to fertility preservation, and answered the

Jennens' questions. (Tr. 455:23-456:7, ECF No. 220 (Jennen)).

129.    Before starting hormone therapy, Sabrina had therapy sessions with Ms. Campbell every

        other week for several months. *Id.* at 454:5-18 (Jennen); (Tr. 75:1-4, ECF No. 282

        (Campbell)). During that time, Sabrina's parents participated in some joint family

        sessions with Ms. Campbell. *Id*. at 75:5-14 (Campbell); Tr. 453:18-23, ECF No. 220

        (Jennen).

130.    Sabrina and her parents discussed and researched hormone therapy. They "took a lot of

        time, thought and prayer" about whether Sabrina should undergo hormone treatment for

        her gender dysphoria, and they made the decision as a family to move forward with

        exploring hormone treatment. (Tr. 456:10-17, 457:15-19, ECF No. 220 (Jennen)).

131.    Dr. Ho did her own assessment and diagnosed Sabrina with gender dysphoria. (Tr.

        749:14- 16, ECF No. 224 (Ho)). She also reviewed with the family how hormone therapy

        works and the potential risks and benefits of the treatment. (Tr. 456:25-457:11, ECF No.

        220 (Jennen)). Sabrina and her parents consented to Sabrina receiving hormone therapy,

        and Dr. Ho prescribed a testosterone blocker and estrogen. *Id.* at 457:15-19, 458:1-5

        (Jennen).

132.    Aaron and Lacey Jennen routinely make medical decisions for their children. *Id.* at

        457:12-14 (Jennen).

133.    Ms. Campbell had no concerns about Sabrina's ability to assent to hormone therapy. (Tr.

        77:25-78:2, ECF No. 282 (Campbell)).

134.    Sabrina has regularly visited Dr. Ho for monitoring and treatment since January 2021. Approximately every three months, Dr. Ho reviews lab tests to monitor Sabrina's hormone levels and check in about Sabrina's dysphoria. (Tr. 458:6- 16, ECF No. 220 (Jennen)).

135.    Sabrina's therapist and doctor agree that hormone therapy is benefitting Sabrina. (Tr. 78:24-79:9, ECF No. 282 (Campbell); Tr. 749:20-21, ECF No. 224 (Ho)).

136.    Ms. Campbell could readily see the change in Sabrina's mental health after starting hormone therapy; she was happier and more outgoing than Ms. Campbell had ever seen her. (Tr. 78:3-16, ECF No. 282 (Campbell)).

137.    For Aaron Jennen, Sabrina not receiving gender-affirming medical care is "not an option." Tr. 462:5-8, 462:20- 463:11, ECF No. 220 (Jennen)). He testified that he would "worry about her withdrawing back into the person that she was before she started it, a person that was unhappy, that said things to her mother and I like, what's the point of life. Saying things like, I don't see a future for myself, which is difficult because how amazing she is." *Id.* at 463:12-20 (Jennen). Aaron testified that if Act 626 went into effect, they would either move or travel out of state to get treatment for Sabrina. *Id.* at 462:5-19 (Jennen).

**The Saxton Family**

138.    Parker Saxton was 17 years old at the start of trial. (Tr. 430:14-15, ECF No. 220 (Saxton)).

139.    Donnie Ray Saxton is Parker's father. *Id.* at 430:9-19 (Saxton).

140.    The Saxtons live in Vilonia, Arkansas. *Id.* at 444:15-16 (Saxton).

28

141.    Parker was assigned female at birth, but his gender identity is male. *Id.* at 431:15-20
        (Saxton).

142.    Puberty caused significant distress for Parker. He suffered from anxiety and depression
        and would not socialize or answer his phone even with his closest friends. *Id.* at 432:12-
        15, 433:2-20 (Saxton). It was "troubling" for Donnie to watch. *Id.* at 433:2-7 (Saxton).

143.    Donnie took Parker to see a therapist and psychiatrist who treated him for anxiety and
        depression. *Id.* at 434:7-18 (Saxton).

144.    Parker was aware of his gender identity since around age 9. (Tr. 557:21-22, ECF No. 275
        (Hutchison). He informed his father in a letter in 2019 when he was approximately 14
        years old. (Tr. 431:24-432:4, 434:7-10; ECF No. 220 (Saxton)).

145.    At the time Donnie read Parker's letter, he "didn't have a clue what transgender meant
        outside of what we see in the news and everything." *Id.* at 434:19-435:2 (Saxton).

146.    If someone were to stereotype the most unlikely parent of a transgender child, it would be
        Donnie Ray Sexton. Donnie is a good and loving father.

147.    In June 2020, when Parker was 15, Parker's psychiatrist referred him to the Gender
        Clinic at ACH. *Id.* at 435:11-14, 25 (Saxton).

148.    At the ACH Gender Clinic, Parker initially was prescribed Depo-Provera as a menstrual
        suppressant to alleviate the distress caused by his period. *Id.* at 437:20-21 (Saxton).

149.    The menstrual suppression helped alleviate some of Parker's gender dysphoria but did
        not fully address it. Parker still had depression, social anxiety, compulsive bathing, and
        an aversion to his reflection. *Id.* at 437:22-438:9 (Saxton).

150.    Parker went to follow-up visits at the ACH Gender Clinic regularly. *Id.* at 438:14, 439:8
        (Saxton).

29

151.   About three or four months after his first visit, Parker expressed that he thought
       testosterone might be helpful for him. *Id.* at 439:9-12 (Saxton).

152.   On May 27, 2021, Parker began testosterone therapy. *Id.* at 442:21-25 (Saxton). Before
       starting treatment, Parker was evaluated by an ACH psychologist who confirmed the
       gender dysphoria diagnosis and conducted a psychological evaluation of Parker. *Id.* at
       440:4-19 (Saxton). At the May 27th appointment, Parker, Donnie, and Dr. Hutchison
       extensively discussed the risks and benefits of treatment—including the potential impact
       on Parker's fertility—and they ultimately decided to move forward. *Id.* at 439:11-441:3,
       442:25-443:15 (Saxton).

153.   As a parent, Donnie routinely makes medical decisions for his children. *Id.* at 430:21-25
       (Saxton).

154.   Testosterone therapy has significantly alleviated Parker's gender dysphoria. *Id.* at 443:18-
       20 (Saxton).

155.   Parker's doctors also observed the positive impact of testosterone therapy on Parker's
       gender dysphoria. (Tr. 559:9-23, ECF No. 275 (Hutchison); Tr. 619:13-15, EF No. 275
       (Stambough).

156.   Before Parker turned 18 in November 2022, the Saxton family talked about what they
       would do if Act 626 were to take effect and Parker could no longer receive testosterone
       therapy in Arkansas. It was a "hard talk," and they concluded that they'd "have to pick up
       and leave." (Tr. 445:21-446:17, ECF No. 220 (Saxton)).

157.   After HB 1570 was introduced, the possibility of care being prohibited resulted in Parker
       Saxton going to such a "dark place" that his father started sleeping near him because of
       concern he might hurt himself. *Id.* at 441:15-24, 442:2-14 (Saxton).

30

**The Dennis Family**

158. Plaintiff Brooke Dennis is 10 years old and is in fifth grade. (Tr. 638:18-21, ECF No. 275 (Dennis).

159. Plaintiffs Amanda and Shayne Dennis are her parents. *Id.* at 638:5-12 (Dennis).

160. Brooke has an older brother and a younger sister. *Id.* at 638:17-18 (Dennis).

161. The Dennises live in Bentonville, Arkansas. *Id.* at 650:3-10 (Dennis).

162. Brooke was assigned male at birth, but her gender identity is female. *Id.* at 639:11-15 (Dennis).

163. Brooke started identifying as a girl in second grade. *Id.* at 639:16-19 (Dennis).

164. Brooke continues to have fear, anxiety, and distress about the fact she could go through a typically male puberty. *Id.* at 620:21-621:6 (Stambough); 648:17-649:2 (Dennis).

165. Shortly after Brooke expressed her female gender identity to her mother in April 2020, the Dennises made an appointment for Brooke to see a therapist. *Id.* at 644:3-10 (Dennis). The Dennises wanted to have "as much information as possible to be able to make a good decision" on "how to move forward." *Id.* at 643:22- 24, 649:24-650:2 (Dennis).

166. After Brooke saw the therapist for a while, the therapist diagnosed Brooke with gender dysphoria. *Id.* at 644:13-17 (Dennis).

167. After the Dennises discussed Brooke's gender with her pediatrician, the pediatrician referred them to the ACH Gender Clinic. *Id.* at 644:18-645:6 (Dennis).

168. In October 2020, the Dennises had their first visit at the ACH Gender Clinic and met with Dr. Hutchison and other staff. *Id.* at 645:7-12 (Dennis). The purpose of the first visit was to help the family learn about the Clinic and the care they provided and get information about gender dysphoria and what they should be learning more about. *Id.* at 645:7-646:15

31

(Dennis). They discussed Brooke's history and childhood. *Id.* at 645:22-25 (Dennis). No
medical treatments for gender dysphoria were indicated for Brooke because she has not
yet started puberty. *Id.* at 645:7-648:16 (Dennis); 620:18-20 (Stambough).

169.    Brooke continues to express "a lot" of distress about her body related to her gender. She
is specifically anxious about going through puberty. *Id.* at 620:18-621:6 (Stambough);
647:9-23, 648:7-649:11 (Dennis).

170.    Brooke is still receiving counseling related to her gender dysphoria. *Id.* at 649:12-14
(Dennis).

171.    As parents, Amanda and Shayne routinely make medical decisions for their three
children. *Id.* at 649:15-17 (Dennis).

172.    Act 626 is causing great anxiety for the Dennis family. Amanda and Shayne have
discussed what they would do if Act 626 takes effect and Brooke is not able to get
gender-affirming medical treatment in Arkansas. They would need to regularly travel out
of state or move out of state to get Brooke care, and either scenario would be logistically,
financially, and emotionally difficult. *Id.* at 652:11-22 (Dennis).

173.    If the family were to move away, Amanda might have to give up her job as head of
business operations for the digital ad platform at Sam's Club within the Walmart
Enterprise, which would cause financial hardship for the family. *Id.* at 650:11- 14,
651:17-652:1, 654:3-656:18, 653:2-655:22 (Dennis).

174.    Amanda Dennis testified about the financial impact on the family, as well as the impact
on the care of her other two children and an aging relative, her job, and Brooke's
attendance at school if she and Brooke had to regularly travel out of state for medical
care. *Id.* at 652:11-657:11 (Dennis).

32

### G. **Studies and Findings on Treatments Prohibited by Act 626**

175.   Decades of clinical experience have shown that adolescents with gender dysphoria experience significant positive benefits to their health and well-being from gender-affirming medical care. (Tr. 67:8-12, ECF No. 219 (Karasic); 233:15-22 (Adkins); Tr. 298:7-18, 305:2-19, ECF No. 220 (Turban); Tr. 543:3-544:11, ECF No. 275 (Hutchison); Tr. 606:20-608:6, 609:22-610:1, ECF No. 275 (Stambough)).

176.   Clinical experience shows the long-term effectiveness of gender-affirming medical care as some adolescents with gender dysphoria are able to discontinue antidepressants and anti-anxiety medications after receiving gender-affirming medical care. (Tr. 231:23-232:7, ECF No. 219 (Adkins); Tr. 64:8-65:19, ECF No. 219 (Karasic)).

177.   There are 16 scientific studies assessing the use of puberty blockers and hormone therapy to treat adolescents with gender dysphoria, and this body of research has found these treatments are effective at alleviating gender dysphoria and improving a variety of mental health outcomes including anxiety, depression, and suicidality. (Tr. 295:16-18, 298:7-18, 300:24-301:2, 301:5-17, 302:20-303:8, 303:22-305:1, ECF No. 220 (Turban); Tr. 68:15-69:14, ECF No. 219 (Karasic)).

178.   The studies evaluating the use of puberty blockers to treat gender dysphoria saw improvements in mental health or that patients did not experience worsening of mental health as is typically the case when children with gender dysphoria go through puberty. (Tr. 299:5-301:2, 318:5-22, ECF No. 220 (Turban)).

179.   The studies evaluating the use of hormone therapy to treat adolescents with gender dysphoria had findings similar to the results of dozens of studies of gender-

33

affirming hormones for adults—both sets of studies found significant improvements in mental health. *Id.* at 302:20-303:21 (Turban).

180.   Conclusions cannot be drawn from any single study (in any area of medical research), but the body of medical research as a whole shows that gender-affirming medical treatments are effective at improving mental health outcomes for adolescents with gender dysphoria. *Id.* at 300:21-301:2 (Turban).

181.   The evidence base supporting gender-affirming medical care for adolescents is comparable to the evidence base supporting other medical treatments for minors. *Id.* at 389:25-390:3; 409:9-15 (Antommaria).

182.   The evidence supporting gender-affirming medical care for adolescents with gender dysphoria includes scientific studies, that are cross-sectional and longitudinal, and clinical experience. *Id.* at 295:22-296:8, 299:5-14, 305:2-19 (Turban). Longitudinal studies follow mental health before and after treatment. *Id.* at 296:24-2951 (Turban). Cross-sectional studies compare people who receive treatment and do not receive treatment at one point in time. *Id.* at 296:3-6 (Turban).

183.   There are no randomized controlled clinical trials evaluating the efficacy of gender-affirming medical care for adolescents. *Id.* at 296:9-13 (Turban). Such research is not possible because it would not be ethical or feasible to have a study in which a control group is not provided treatment that is known from clinical experience and research to benefit patients. *Id.* at 296:14-297:3 (Turban); 363:13-364:5, 385:23-386:7 (Antommaria). Additionally, it would not be possible to blind the studies to researchers and participants given the obvious physical effects of the treatments. *Id.* at 365:1-24,

387:16-388:2 (Antommaria); 296:14-297:11 (Turban); Tr. 67:19-68:14, ECF No. 219

(Karasic).

184.   It is common for clinical practice guidelines in medicine to make recommendations based

on low or very low-quality evidence such as cross-sectional and longitudinal studies. (Tr.

377:24-378:2, ECF No. 220 (Antommaria); Tr. 1269:12-17, ECF No. 249 (Hruz)).

185.   The treatments banned by Act 626 are widely recognized in the medical community,

including by the major professional medical associations, as effective treatments for

adolescents suffering from gender dysphoria, based on the clinical experience and

scientific research. (Tr. 34:2-12, 102:3-103:12, ECF No. 219 (Karasic)).

186.   There are no other evidence-based treatments besides those prohibited by Act 626 that

are known to alleviate gender dysphoria. (Tr. 326:16-327:5, ECF No. 220 (Turban)).

**H. <u>Potential Risks and Side Effects of the Gender-Affirming Care</u>**

187.   As with other medical treatments, gender-affirming medical treatments can have potential

risks and side effects that must be weighed by patients and their parents after being

informed of those risks and side effects by their doctors. (Tr. 390:4-392:4, 394:24-395:3,

400:11-21, 401:4-15, ECF No. 220 (Antommaria)).

188.   The risks of gender-affirming medical care are not categorically different than the types

of risks that other types of pediatric healthcare pose. *Id.* at 390:24-391:6 (Antommaria).

189.   For many adolescents the benefits of treatment greatly outweigh the risks.

190.   For many adolescents, gender-affirming medical care significantly alleviates the distress

of gender dysphoria, improves their mental health, and enables them to engage in school

and social activities.

35

191.    Adverse health effects from gender-affirming medical care are rare when treatment is
        provided under the supervision of a doctor. (Tr. 220:25-221:9, ECF No. 219 (Adkins)).

192.    The evidence showed that the risks associated with the treatments prohibited by Act 626
        are comparable to the risks associated with many other medical treatments that parents
        are free to choose for their adolescent children after weighing the risks and benefits. (Tr.
        930:17, ECF No. 246 (Levine); Tr. 1319:2-4, ECF No. 249 (Hruz)). Off-label use of
        drugs is both permitted and common in Arkansas. (Pl.'s Ex. 9, at 137:21-25 (Embry)).

193.    There is nothing unique about the risks of gender-affirming medical care for adolescents
        that warrants taking this medical decision out of the hands of adolescent patients, their
        parents, and their doctors.

194.    It is common for adolescents to undergo medical treatments that carry comparable or
        greater risks than gender-affirming medical care. (Tr. 389:25- 390:3, 394:20-395:3, ECF
        No. 220 (Antommaria)).

195.    There are treatments for conditions other than gender dysphoria that can impair a minor's
        fertility, e.g., treatments for certain rheumatologic conditions, kidney diseases, and
        cancers. *Id.* at 391:6-9; 417:8-12 (Antommaria); Tr. 222:23:19-24, ECF No. 219
        (Adkins). Some of these treatments are provided at ACH, when appropriate for the
        particular patient. (Tr. 615:10-12, ECF No. 275 (Stambough)). Patients and families are
        similarly informed of the risk and weigh it in deciding whether to undergo the medical
        treatment. (Tr. 222:19-24, 227:2-5, ECF No. 219 (Adkins); Tr. 615:13-25, ECF No. 275
        (Stambough)).

196.    Except for the potential risk to fertility, the risks associated with puberty blockers,
        testosterone, estrogen and anti-androgens are the same regardless of the condition for

36

which they are being used and whether they are used to treat birth- assigned males or birth-assigned females. (Tr. 206:18-21, 217:4-25, 219:13-220:2, ECF No. 275 (Adkins)).

197.    Puberty blockers that are used to delay puberty as treatment for gender dysphoria are also used to treat other conditions, including central precocious puberty. Central precocious puberty is puberty that starts earlier than the typical age for the start of puberty. (Tr. 204:11-18, ECF No. 219 (Adkins); Tr. 1223:6-10, ECF No. 249 (Hruz)). Precocious puberty can occur when a child is as young as two. (Tr. 211:3-5, ECF No. 219 (Adkins)).

198.    Decades of clinical experience and research on the use of puberty blockers, both for treatment of central precocious puberty and gender dysphoria, have shown this treatment to be safe. (Tr. 212:25-213:2, ECF No. 219 (Adkins)).

199.    Patients on puberty blockers for precocious puberty are, on average, treated for a longer period of time than gender dysphoria patients. (Tr. 210:19-211:7, ECF No. 219 (Adkins)). For precocious puberty, pubertal suppression treatment can last as long as nine years. For gender dysphoria, pubertal suppression treatment typically does not last for more than three or four years. This is the case at the ACH Gender Clinic. (Tr. 210:19-211:7, ECF No. 220 (Adkins); Tr. 540:2-542:5, ECF No. 275 (Hutchison)).

200.    An expected effect of puberty blockers is the delay of rapid accrual of bone mineralization that occurs during puberty. (Tr. 205:16-207:12, ECF No. 219 (Adkins); Tr. 390:8-16, ECF No. 220 (Antommaria)). While patients are on puberty blockers, they continue to accrue bone mineralization at prepubertal rate. (Tr., 209:2-13, ECF NO. 219 (Adkins)). Once puberty blockers are stopped and puberty resumes—either the person's endogenous puberty or an exogenous puberty prompted by hormone therapy—the accrual of bone mineralization increases at the usual pubertal rate. *Id.* at 209:2-210:1 (Adkins)).

201. Generally, a patient will reach the normal range of bone density within "two to three years after [a patient is] on either gender-affirming hormones or go[es] through [endogenous] puberty." *Id.* at 210:2-7 (Adkins).

202. There have been some patients who do not achieve full bone density after treatment with puberty blockers. These patients tend to have had low bone density and risk factors for low bone density to begin with. Such risk factors include a family history of osteoporosis, low Vitamin D status, low physical activity, poor nutritional status, or low weight. *Id.* at 210:8-18 (Adkins).

203. Puberty blockers are fully reversible. If an adolescent discontinues such treatment, endogenous puberty will resume. *Id.* at 206:13-17, 208:21- 209:1 (Adkins).

204. If a patient treated with puberty blockers stops treatment and resumes their endogenous puberty, the medication has no impact on fertility. *Id.* at 208:21- 209:1, 222:25-223:1 (Adkins).

**Masculinizing Hormone Therapy**

205. Testosterone is used to treat cisgender adolescent male patients for a number of conditions including delayed puberty, hypogonadism (where the brain does not tell the body to go through puberty), and micropenis. *Id.* at 213:11-19 (Adkins); Tr. 1248:19-1249:2, ECF No. 249 (Hruz).

206. Risks associated with taking testosterone, regardless of the condition for which it is used or the birth-assigned sex of the patient, include changes in cholesterol profile and blood thickness (hematocrit) to the typical male range. *Id.* at 215:19-216:20, 217:4-9, 221:10-222:2, 278:8-12 (Adkins); Tr. 390:20-23, ECF No. 220 (Antommaria); Tr. 1249:23-1250:8, ECF No. 249 (Hruz).

38

207. When treatment is monitored by a doctor to ensure appropriate therapeutic levels, adverse health effects are rare. (Tr. 220:25-221:9, ECF No. 219 (Adkins)).

208. When birth-assigned females are treated with testosterone, it can impact fertility. *Id.* at 216:21-217:3 (Adkins).

209. If testosterone therapy follows treatment with puberty blockers at Tanner 2 such that the ovaries never develop, it can cause infertility. This is discussed with patients and parents prior to initiating treatment. If maintaining fertility is important to the family, there are ways to manage treatment to preserve fertility, for example, by delaying the start of puberty blockers until a later stage of puberty or temporarily stopping blockers to allow ovaries to develop. *Id.* at 225:12-226:4; 226:5-22. (Adkins).

**Feminizing Hormone Therapy**

210. Hormone treatments used to treat transgender females with gender dysphoria— estrogen and anti-androgens—are used to treat many other conditions. (Tr. 203:1-25, ECF No. 219 (Adkins).

211. Estrogen is used to treat cisgender adolescent girls for a number of conditions including delayed puberty, ovarian failure, and Turner Syndrome (a congenital condition that prevents puberty from occurring). *Id.* at 214:3-11 (Adkins); Tr. 632:10-13, ECF No. 275 (Stambough); Tr. 1257:22-1258:10, ECF No. 249 (Hruz).

212. Anti-androgens are used to treat cisgender adolescent girls and women with polycystic ovarian syndrome and hirsutism. (Tr. 213:20-214:2, ECF No. 219 (Adkins); Tr. 1245:10-25, ECF No. 249 (Hruz)).

213. The risks of estrogen, regardless of the condition it is being used for and whether used on birth-assigned females or birth-assigned males, include blood clots (increasing stroke

39

risk), lower hemoglobin levels, and increase in prolactin. (Tr. 218:1-219:16, ECF No. 219 (Adkins); Tr.1259:15-24, 1261:18-21, ECF No. 249 (Hruz)). Adverse health effects of feminizing hormone therapy present primarily among those who use excessive and unmonitored amounts of estrogen. (Tr. 278:13-279:8, ECF No. 219 (Adkins)).

214. The risks and side effects of anti-androgens, regardless of the condition it is being used for and whether used to treat birth-assigned females or birth-assigned males, include an increase in potassium levels. *Id.* at 217:10-25 (Adkins).

215. When treatment with estrogen or anti-androgens is monitored by a doctor to ensure appropriate therapeutic levels, adverse health effects are rare. *Id.* at 218:1-219:16; 220:6-21 (Adkins).

216. When estrogen is used to treat birth-assigned males, it can impact fertility. This is therefore discussed with patients and parents prior to initiating treatment and fertility preservation options are discussed. *Id.* at 219:17-220:12 (Adkins).

217. If feminizing treatment follows treatment with puberty blockers at Tanner 2 such that the testicles never developed, it can cause infertility. *Id.* at 225:17-226:4 (Adkins).

**Chest Masculinization Surgery**

218. The surgical risks of chest masculinization surgery are comparable to the risks related to other chest surgeries adolescents may undergo, including mastectomy or breast reduction for cisgender girls and gynecomastia surgery for cisgender boys. (Tr. 391:10-392:16, ECF No. 220 (Antommaria).

**I. <u>Desistance, Detransitioning and Regret</u>**

219. There are some individuals who undergo gender-affirming medical treatment who later come to regret that treatment and, for some, it was because they came to identify with

40

their birth-assigned sex (sometimes referred to as detransitioning). This can happen with individuals who medically transitioned as adolescents or as adults. Regret over a medical procedure is not unique to gender-affirming medical care and is common in medicine. (Tr. 77:1-16, ECF No. 219 (Karasic)).

220.   In Dr. Karasic's clinical experience treating thousands of patients with gender dysphoria over 30 years, none of his patients came to identify with their sex assigned at birth after medically transitioning. *Id.* at 72:11-18 (Karasic). Some of Dr. Karasic's patients have halted their medical transition for other reasons such as lack of insurance coverage or fear of losing family support. Some of these patients later resumed their medical transition. None of his patients who stopped or paused medical transition did so because they came to identify with their sex assigned at birth. *Id.* at 72:19-73:17 (Karasic).

221.   Detransition is taken seriously by WPATH and medical providers. Parents and patients are advised of the potential that patients may ultimately come to a different understanding about their gender later in life. *Id.* at 75:13-24 (Karasic). The desistance studies relied on by the State to assert that gender incongruence will naturally desist for most youth were focused on prepubertal children and say nothing about the likelihood of gender incongruence desisting among adolescents, the group affected by Act 626. (Tr. 311:1-11, ECF No. 220 (Turban); Tr. 88:2-89:6, 93:2-17, ECF No. 219 (Karasic)).

222.   "Watchful waiting" is an approach used by some health care providers with pre-pubertal children with gender dysphoria. It entails following prepubertal children with gender dysphoria and not encouraging social transition prior to puberty. It is not a recognized approach for adolescents with gender dysphoria because it is understood that, at that point, gender incongruence is unlikely to desist. Even gender clinics using the "watchful

41

waiting" approach for prepubertal children provide gender-affirming medical care to patients whose gender dysphoria persisted past the onset of puberty. *Id.* at 96:21-98:6 (Karasic).

223.  Providing gender-affirming medical care does not cause youth to persist rather than desist in their gender incongruence. Adolescents with gender dysphoria are unlikely to desist whether or not they receive gender-affirming medical care. And youth do not receive medical treatment unless their gender incongruence has persisted into adolescence. *Id.* at 96:16-20, 99:4-25 (Karasic).

224.  Billy Burleigh and Laura Smalts testified about their experiences transitioning as adults and subsequently detransitioning. They stated they feel regret about their medical transitions. The Court finds these anecdotal experiences credible but also irrelevant to the issues to be decided. These witnesses' experiences are irrelevant to this case given that (i) neither sought nor received gender-affirming care as a minor (ii) both transitioned as adults (Tr. 1156:13-21, ECF No. 247 (Smalts); 1199:3-17, 1200:9-14 (Burleigh)); (iii) neither was treated in Arkansas *Id.* at 1157:2-11 (Smalts);  1210:15-23 (Burleigh)); (iv) they both detransitioned as a result of a religious experience and (v) continued to struggle with living consistently with their birth-assigned sex after deciding to detransition *Id.* at 1158:2-13, 1159:2-1160:2 (Smalts); 1203:10-1206:3, 1206:16-1207:1, 1207:8-13, 1207:22-25 (Burleigh)).

**J. Regulation of Medicine in Arkansas**

**The Arkansas State Medical Board Regulates the Practice of Medicine in Arkansas**

225.  All states have medical boards that safeguard the practice of medicine by evaluating accusations of unprofessional conduct and taking disciplinary action against providers,

Appellate Case: 23-2681     Page: 142     Date Filed: 07/21/2023 Entry ID: 5300226   06/20/2023 p142

which may include withdrawal of a medical professional's license. (Tr. 402:17-20, ECF No. 220 (Antommaria)).

226.    The Arkansas State Medical Board (the "Board") is the state entity charged with regulating the practice of medicine in Arkansas. (Pl, Ex. 9 at p. 42:7-11 (Embry)). The Board's structure and functions are governed by the Arkansas Medical Practices Act ("AMPA"). (Pls.' Ex. 11, at Subchapter 3, p. 21-25).

227.    The Board's mission is "to protect the public and act as their advocate by effectively regulating the practices of medical doctors. . .." (Pls.' Ex. 12; Pls.' Ex. 9 at 45:9-25 (Embry)). The Board regulates all the roughly 19,000-20,000 healthcare professionals whom it licenses. (Pls.' Ex. 9 at 42:20- 22, 43:19-25 (Embry)).

228.    The Board is authorized "to promulgate and put into effect such rules and regulations as are necessary to carry out the purposes of the Arkansas Medical Practices Act." (Pls.' Ex. 9 at 46:2-6 (Embry); Pls.' Ex. 11 Section 17-95-303(2) at 23). While the Board typically enacts regulations pursuant to explicit statutory requirements or requests made by legislators, if the Board has a concern about how medical care is being provided in a particular field, it can also draft a rule regarding that subject and submit it to the legislature for approval. (Pls.' Ex. 9 at 46:15-47:21, 49:4-10, 49:20-505, 54:15-20, 62:25-63:19 (Embry).)

229.    The Board tries to enact regulations that are consistent with best practices in a particular field. (Pls.' Ex. 9 at 60:22-61:3 (Embry)). The Board has worked with professional associations such as the Arkansas Medical Society in drafting rules, reviewing their best practice guidelines, and soliciting their expertise as professionals within their field. (Pls.'

Ex. 9 at 59:8-60:21 (Embry)). The Board may also look to national groups like the

American Medical Association for information. (Pls.' Ex. 9 at 63:20-64:10 (Embry)).

**The Board Investigates and Disciplines Medical Providers for Unprofessional Conduct**

230.    The Board is authorized to investigate and discipline the medical practitioners whom it

licenses for unprofessional conduct, including ethical violations as determined by the

Board. (Pls.' Ex. 9, at 93:22-24, 96:6-976, 101:9-102:5 (Embry); Pls.' Ex. 11 Section 17-

95-409(a)(1) -(a)(2) at 28-29). Investigations are often based on complaints filed with the

Board. Sometimes issues come to the Board's attention through other means, such as the

news. (Pls.' Ex. 9 at 43:9-18, 44:8-9, 72:21-74:18 (Embry)).

231.    The Board may, and does, investigate whether doctors are practicing their profession in a

way that could endanger the public health or welfare. (Pls.' Ex. 9 at 72:6- 18 (Embry);

Pls.' Ex. 11 at 17-80-106(c)(2) at 2).

232.    Failure to follow accepted medical practice can be a reason for investigation, and the

Board considers accepted standards in a field of medicine when assessing whether there

has been a violation of the AMPA. (Pls.' Ex. 9 at 81:16-19, 83:17-23 (Embry)).

233.    The penalties that the Board may impose for unprofessional conduct include revoking or

suspending licenses, issuing reprimands, imposing probation, and levying fines. (Pls.' Ex.

9 at 109:17-113:6, 114:3-115:3 (Embry); Pls.' Ex. 11 17-95-410(e)(3) at 29).

234.    When issues concerning particular medical care arise, the Legislature and the Board pass

laws and regulations to address how care is provided; they do not prohibit medical

treatments. (Pls.' Ex. 9 at 137:11-20 (Embry)).

235.    When over-prescription of opioids resulted in the opioid epidemic and caused harm to the

public in Arkansas, the Legislature passed the Chronic Intractable Pain Treatment Act.

44

(Pls.' Ex. 9 at 126:8-127:11 (Embry); Pls.' Ex. 11 Section 17-95-701 at 34-35). Rather than categorically banning opioids, the law provides a system of incremental sanctions for doctors who overprescribe opioids, beginning with monitoring prescribing habits, then voluntarily surrendering a DEA license for a period of time, then suspending the physician's license, and finally revoking the license. (Pls.' Ex. 11 Section 704(c)(1) at 35). Doctors have faced discipline for improper prescription of opioids under this section, including monitoring and the surrender of their DEA licenses. (Pls.' Ex. 9 at 130:5-8, 130:20-131:18 (Embry)). This system of incremental sanctions for improper prescription of opioids serves to effectively protect the public from harmful conduct. (Pls.' Ex. 9 at 131:19-22 (Embry)).

236.    Because of serious risks related to gastric bypass surgery, the Legislature and Board established informed consent requirements before a doctor can perform gastric bypass surgery. (Pls.' Ex. at 132:13-133:2 (Embry); Pls.' Ex. 11 Subsections A through M of Rule 27 mandate a lengthy list of various complications and information that the informed consent process must address; Pls.' Ex. 9 at 133:23-134:6 (Embry)). This includes 33 potential surgical complications, nutritional complications, psychiatric complications, eight pregnancy complications, and 22 additional complications. *Id.* at 134:7-135:20 (Embry)). The rule further requires that licensees inform patients that there is no guarantee of weight loss or long-term weight management as a result of getting surgery, and that a lifetime of follow-up medical care is required. *Id.* at 135:4-20 (Embry)). The informed consent provisions in the Board's regulation related to gastric bypass surgery effectively protect the public from harm. *Id.* at 136:6-14 (Embry).

45

237.    After the FDA concluded that it was "no longer reasonable to believe that oral

formulations of [hydroxychloroquine] and [chloroquine] may be effective in treating

COVID-19, nor [was] it reasonable to believe that the known and potential benefits of

these products outweigh their known and potential risks," (Pls.' Ex. 15). The Arkansas

Department of Health updated its guidance to indicate that this use "should be avoided"

in hospital and outpatient settings. But the guidance noted that "Unapproved use (i.e., 'off

label use') of these medications is left to the discretion of individual clinicians and their

patients." *Id.* The Board has not considered passing a regulation prohibiting the use of

hydroxychloroquine to treat COVID. (Pls.' Ex. 9 at 143:21-24 (Embry)). The Board has

received several complaints about a doctor inappropriately prescribing ivermectin to treat

incarcerated people with COVID at a county jail. *Id.* at 78:8-79:14, 144:14-23 (Embry).

The Board has not considered passing a rule prohibiting the use of ivermectin to treat

COVID-19. *Id.* at 148:13-16 (Embry); Pls.' Ex. 18 at 81:21-82:21 (Branman).

238.    Arkansas does not ban medical treatments for lack of randomized controlled clinical trials

supporting their use. (Pls.' Ex. 9 at 206:23-207:4 (Embry)).

239.    Arkansas does not ban medical treatments with a limited evidence base. *Id.* at 205:9-

206:6 (Embry).

240.    Even where there are known risks of a treatment and no evidence of effectiveness, the

Board leaves treatment decisions to patients, parents, and their physicians. *Id.* at 208:10-

16 (Embry).

241.    Arkansas does not ban medical treatments for minors on the rationale that minors cannot

provide informed assent. In Arkansas, parents usually are required consent to medical

46

treatment for their minor children, and the decision about whether to undergo care is between the physician and the parent and the minor patient. *Id.* at 174:2-15 (Embry).

242.  The Board is not aware of any minors in Arkansas who have been harmed by gender-affirming care. *Id.* at 227:17-22 (Embry).

243.  The Board has never received a complaint regarding gender-affirming medical care for minors or adults. *Id.* at 152:3-16 (Embry); Pls.' Ex. 18 at 103:7-10 (Branman).

244.  Since Embry became Executive Director in 2018, there has not been discussion about gender-affirming medical care for adults or minors at any Board meeting. (Pls.' Ex. 9 at 152:25-153:25, 217:2-6 (Embry)).

245.  Since Embry has been director, the Board has not considered passing a regulation concerning gender-affirming medical care. *Id.* at 154:2-6 (Embry). No one at the Board ever suggested to Embry that they saw a need for a regulation concerning gender-affirming medical care. *Id.* at 154:7-11 (Embry).

246.   If there is an issue regarding the over-prescription of gender-affirming medical treatment, the Board can propose a regulation to address that, as it did for the over-prescription of opioids. *Id.* at 210:25-211:11, 211:25-212:10 (Embry).

247.  If there are doctors providing gender-affirming medical treatments to adolescents without adequately informing them of the risks of those treatments, the Board could propose an informed consent regulation, as it did for gastric bypass surgeries. *Id.* at 212:11-21, 213:20-25 (Embry).

248.  The Board is the licensing entity for physicians who are providing procedures prohibited by Act 626. *Id.* at 179:25-180:6, 180:11-14 (Embry). The Board is ready to field any complaints alleging violations of Act 626 as those arise. *Id.* at 182:13-19 (Embry).

47

249.    If the Board receives a complaint that a doctor was providing gender-affirming medical care to an adolescent, the Board will follow the same general process that it uses for other complaints to determine whether the Act was violated. *Id.* at 182:4-12, 182:20-183:14 (Embry); Pls.' Ex. 18 at 108:3-110:3 (Branman).

250.    Under the Act, the referral for or provision of gender transition procedures to a minor constitutes unprofessional conduct. (Pls.' Ex. 9 at 178:20-179:6 (Embry)). If a doctor provided gender-affirming care prohibited by Act 626, the Board would have to make a finding of unprofessional conduct under the statute. *Id.* at 184:25-185:6 (Embry). The doctor would then be subject to discipline by the Board, including the potential revocation of their license to practice. *Id.* at 185:7-9, 185:22-186:2 (Embry).

### K. <u>Policy Concerns Expressed at Trial</u>

251.    The Arkansas chapter of the American Academy of Pediatrics, the Arkansas Academy of Pediatrics, the American College of OB/GYN, the American Academy of Child Adolescent Psychologists, the American Academy of Child and Adolescent Psychiatry, the Arkansas Psychological Association opined that HB1570 would penalize medical providers for "simply following best medical practices to provide or even refer for appropriate effective care that is based in science and evidence," cause immediate and irreversible harm to adolescents receiving care in-state, and limit physicians' ability to refer youth to care supported by medical experts. (Pls.' Ex. 23 at 25:25-27:10, 27:11-21).

### L. <u>The Harm to Plaintiffs and Others Should Act 626 Take Effect</u>

252.    If Act 626 takes effect, adolescents whose parents and doctors agree that gender-affirming medical care is appropriate treatment for their gender dysphoria will be unable to receive that care in their home state and unable to get referrals from their doctors to

Appellate Case: 23-2681     Page: 148     Date Filed: 07/21/2023 Entry ID: 5295226     June 20 2023 p148

receive care in other states. This will cause irreparable harm to the Plaintiff adolescents,

Plaintiff parents and Plaintiff doctor.

253.    The harms are severe and irreparable for adolescents with gender dysphoria who need but

are unable to access gender-affirming medical care.

254.    The fact that transgender adults face elevated rates of physical and mental health issues

due to stigma, discrimination, and having lived with gender dysphoria is not a reason to

deny treatment to adolescents with gender dysphoria; if anything, it supports the need for

access to treatment. (Tr. 47:16-25, ECF No. 219 (Karasic))

255.    Denying gender-affirming medical care to adolescents with gender dysphoria until they

reach age 18 means their bodies would go through irreversible pubertal changes

inconsistent with their gender identity. *Id.* at 234:18-235:7 (Adkins).

256.    Delaying gender-affirming medical care when indicated puts patients at risk of worsening

anxiety, depression, hospitalization, and suicidality. *Id.* at 236:11- 19, 237:1-5 (Adkins);

111:19-112:3 (Karasic)

257.    Act 626 will impact Arkansas adolescents with gender dysphoria who need but are

unable to access care. After ACH changed its policy in February 2022 to stop initiating

gender-affirming medical care for new patients given the possibility of Act 626 taking

effect, many patients for whom puberty blockers or hormone therapy are indicated have

been unable to access care elsewhere. (Tr. 611:10-20, ECF No. 275 (Stambough)). These

patients are experiencing anxiety and distress. *Id.* at 611:21-612:6 (Stambough).

258.    Not all adolescents with gender dysphoria will live to age 18 if they are unable to get

gender-affirming medical treatment. (Tr. 28:22-25, ECF No. 219 (Karasic) (testifying

about adolescent patients with gender dysphoria who made suicide attempts); 236:14-25

(Adkins) (testifying about losing a patient to suicide); Tr. 612:20-613:15, ECF No. 275

(Stambough) ("I am not hyperbolic when I say that I have concerns that not every patient

would be able to make it to 18."); 549:12-18 (Hutchison) (testifying that she is "worried

that we're going to lose some kids" if the law takes effect)).

259.   For those adolescents who are already being treated with puberty blockers or hormone

therapy and who would be forced to discontinue treatment, experts on both sides agree

that the harms are severe.

260.   The State's expert, Dr. Levine, described the psychological impact of cutting off gender-

affirming medical care for those currently receiving it as "shocking" and "devastating."

He testified he would expect doctors to "find a way" to help those patients, even

providing treatment in violation of the law. (Tr. 913:6-914:4, 914:24-915:12, ECF No.

246 (Levine) (suggesting doctors would provide care "privately . . . that you don't know

about," "under the radar")).

261.   Discontinuing testosterone in transgender males would cause a decrease in facial and

body hair growth, a return to a more typically feminine body shape, and lower muscle

mass, resulting in the body not being well-aligned with their gender identity. (Tr. 235:8-

17, ECF No. 219 (Adkins)).

262.   Discontinuing testosterone suppression and estrogen in transgender females would result

in the patient's beard coming back and shifts in body fat—less hips and chest—that do

not align with their gender identity. *Id.* at 235:20-236:10 (Adkins).

263.   Accessing care out of state is a considerable challenge with significant financial costs,

and it is not something all families have the resources to do. Having to regularly travel

out of state to take a child to doctor visits can be a great financial and logistical challenge

50

to families. (Tr. 675:15-677:5, 696:13-24, ECF No. 275 (J. Brandt); 652:11-657:11

(Dennis); Tr. 462:20-463:11, ECF No. 220 (Jennen); 445:21-446:17 (Saxton).

264. Pursuant to Act 626, doctors who provide gender-affirming medical care to minor

patients are engaging in unprofessional conduct and are subject to losing their medical

license. (Pls.' Ex. 16 at 20-9-1504(a)).

265. Dr. Levine, the State's expert, expressed concern about the possibility of doctors losing

their licenses for continuing to provide gender-affirming medical care. He testified that

would be "[d]raconian" and a loss of a community resource. (Tr. 915:13-916:7, 917:16-

918:11, ECF No. 246 (Levine)).

266. Requiring doctors to discontinue gender-affirming medical care that they are currently

providing to adolescent patients—and prohibiting them from referring those patients to

obtain care elsewhere—conflicts with their ethical obligation not to abandon patients

under the AMPA. (Pls.' Ex. 14 at 20-6-202(a)(2); Pls.' Ex. 9 at 244:2, 19-22; 244:23-24;

236:17-237:4 (Embry)).

267. The AMPA provides that "healthcare providers are prohibited legally and ethically from

abandoning a patient before treatment has been concluded." (Pls.' Ex. 14 at 20-6-

202(a)(2); Pls.' Ex. 9 at 244:2, 19-22; 244:23-24; 236:17-237:4 (Embry)). Under this

provision, if a doctor who is treating a patient is required to stop care before treatment is

concluded, the doctor has an ethical obligation to help the patient find care from another

doctor. *Id.* at 199:13-20 (Embry).

268. Doctors can be disciplined by the Board for abandoning a patient in violation of Ark.

Code Ann. § 20-6-202. *Id.* at 201:5-9 (Embry). "Healthcare providers are prohibited

legally and ethically from abandoning a patient before treatment has been concluded."

Ark. Code Ann. § 202(a)(2). The Board recognizes the harms of abandoning patients prior to the completion of treatment. *Id.* at 237:23-238:3, 283:13-17 (Embry); Pls.' Ex. 18 at 130:18-19 (Branman).

**M.  Plaintiffs' Experts**

 **Dan H. Karasic, M.D.**

269.  Dr. Dan Karasic is a psychiatrist with over 30 years of experience treating thousands of patients with gender dysphoria, including hundreds of adolescents. He is a professor emeritus of psychiatry at the University of California-San Francisco, where he has been on the faculty since 1991. Dr. Karasic received his medical degree from Yale School of Medicine and completed his residency at UCLA.

270.  Dr. Karasic was a co-author of the current and previous versions of the WPATH Standards of Care and was on the committee to revise the categories of gender identity disorders for DSM-V. He has trained over 1,000 health care providers in transgender health care, served as an expert consultant to organizations including the United Nations Development Programme, and given invited presentations around the world. Dr. Karasic has also published several books and scholarly articles on transgender health. In 2006, Dr. Karasic was given the honor of being named a Distinguished Fellow of the American Psychiatric Association. (Pls.' Ex. 2; Tr. 23:11-20, ECF No. 219 (Karasic)).

271.  Many of Dr. Karasic's patients, including adolescents, were profoundly impaired by gender dysphoria. He has had patients who were withdrawn from school or social interaction, patients who were suicidal or made suicide attempts, and patients who engaged in other forms of self-harm such as cutting their breasts or genitals, prior to getting treatment. *Id.* at 28:6-16, 29:9- 12 (Karasic).

**Deanna Adkins, M.D.**

272.    Dr. Deanna Adkins is a pediatric endocrinologist with 22 years of experience since completing medical school at the Medical College of Georgia and her residency at the University of North Carolina Hospitals. Dr. Adkins is an associate professor of pediatrics at Duke University, where she has been on the faculty since 2004. She is the director of the Duke University Child and Adolescent Gender Care Clinic.

273.    She has treated approximately 600 adolescent patients with gender dysphoria.

274.    Dr. Adkins also treats patients for a variety of other conditions requiring hormonal therapies, including differences of sexual development. (Pls.' Ex. 3; Tr. 195:25-196:21, 213:3-214:17, ECF No. 219 (Adkins)).

**Jack Turban III, M.D.**

275.    Dr. Jack Turban is a child and adolescent psychiatrist whose work has focused on the treatment of patients with gender dysphoria. After completing medical school at Yale and his residency at Massachusetts General Hospital and McLean Hospital in Boston, Dr. Turban completed a fellowship in Child and Adolescent Psychiatry at Stanford University School of Medicine. Dr. Turban is an associate professor of child and adolescent psychiatry at the University of California, San Francisco School of Medicine where he treats adolescents and children with gender dysphoria. He also conducts scientific research on the mental health and treatment of adolescents with gender dysphoria and has published over 20 peer reviewed articles on the subject. (Pls.' Ex. 1; Tr. 292:10-293:6, 293:13-294:1, ECF No. 220 (Turban)).

53

**Armand H. Matheny Antommaria, M.D, Ph.D.**

276.    Dr. Armand Antommaria is a pediatrician, pediatric hospitalist, and bioethicist. He
completed medical school at the Washington University School of Medicine and his
residency at the University of Utah. He is currently the director of the Ethics Center at
Cincinnati Children's Hospital Medical Center and a professor at the University of
Cincinnati School of Medicine. As director of the Ethics Center, Dr. Antommaria
provides clinical ethics consultation and works with a variety of medical teams to address
ethical issues that arise in the care that they provide, including the transgender clinic and
the differences of sex development clinic. He has also published numerous scholarly
articles about medical ethics. (Pls.' Ex. 4; Tr. 357:19-359:11, ECF No. 220
(Antommaria)).

**Kathryn Stambough, M.D.**

277.    Plaintiff Dr. Kathryn Stambough earned her medical degree from Washington University
School of Medicine in St. Louis and completed a fellowship in Pediatric and Adolescent
Gynecology at Baylor College of Medicine Texas Children's Hospital in Houston. (Tr.
598:2-9, ECF No. 275 (Stambough)).

278.    Dr. Stambough is an assistant professor at the University of Arkansas for Medical
Sciences ("UAMS") and a member of the Division of Pediatric and Adolescent
Gynecology. *Id.* at 598:20-599:3 (Stambough).

279.    Dr. Stambough has a clinical appointment at ACH where she practices in multiple clinics:
the Gender Clinic; the Gynecology Clinic; the In-STEP Clinic, which cares for patients
with differences of sexual development; and the Spinal Cord Disorders Clinic. She also

has a clinical appointment and serves as a member of the team at UAMS in the Adult Gender Clinic. *Id.* at 599:14-600:22 (Stambough).

280.   Dr. Stambough has been practicing in the ACH Gender Clinic since August 2020. She has been the Clinic's medical director since July 2022. *Id.* at 601:10-24 (Stambough).

281.   Currently, 248 patients are being actively seen in the ACH Gender Clinic. *Id.* at 601:25-602:6 (Stambough).

282.   The Clinic currently is providing hormone therapy to 81 patients. *Id.* at 602:21-603:4 (Stambough).

283.   Dr. Stambough treats patients in the Gender Clinic, including with puberty blockers and hormone therapy. *Id.* at 604:2-20, 619:7-12 (Stambough).

284.   Dr. Stambough has seen the distress of gender dysphoria experienced by her adolescent patients and how gender-affirming medical care alleviates that distress and improves her patients' health. *Id.* at 606:23-607:22 (Stambough).

285.   If Act 626 takes effect, Dr. Stambough would be unable to provide medically necessary care to patients and would be forced to leave them to needlessly suffer. *Id.* at 610:2-21, 612:3-613:15 (Stambough).

286.   In the course of her practice, Dr. Stambough sometimes refers patients to another healthcare provider which involves discussions with the patients and their families. *Id.* at 615:13-17 (Stambough). In making a referral, Dr. Stambough's discussion with her patients includes options for where to obtain the care. *Id.* at 615:18-25 (Stambough).

287.   If Act 626 were to go into effect, Dr. Stambough would be unable to make all the referrals necessary to care appropriately for her Gender Clinic patients. *Id.* at 616:1-5 (Stambough).

288.    Some of Dr. Stambough's gender dysphoria patients would not be able to bring a lawsuit

on their own behalf to challenge Act 626 for various reasons, including not being out to

members of their extended family or keeping their gender identity private in certain other

contexts. *Id.* at 618:20-25 (Stambough).

**Plaintiffs' Expert Opinions Generally**

289.    Plaintiffs' experts' extensive experience, their testimony in court, and their demeanor and

responsiveness to questions asked by both sides and the Court, show that all four of

Plaintiffs' expert witnesses have deep knowledge of the subject matter of their testimony

and were fully qualified to provide the opinion testimony they offered. They have

provided credible and reliable testimony relevant to core issues in this case.

**N. The State's Experts**

**Stephen B. Levine, M.D**.

290.    Dr. Stephen Levine is a licensed physician and Clinical Professor of Psychiatry at Case

Western Reserve University School of Medicine where he attended medical school. He

co-created the first gender identity clinic in Ohio in 1974 and has been seeing patients

since that time. He has authored five books on sexual health, is the Senior Editor of the

first three editions of the Handbook of Clinical Sexuality for Mental Health Professions.

He has authored numerous invited papers, commentaries, chapters, and book reviews and

was awarded a lifetime achievement award from the Society for Sex Therapy and

Research in March 2005. (Def. Tr. Ex. 1).

291.    Dr. Levine was the State's only expert witness who has experience treating patients with

gender dysphoria. In his practice, he has enabled minor patients with gender dysphoria to

access hormone therapy on a case-by-case basis. (Tr. 785:3-6, ECF No. 246 (Levine)).

56

Dr. Levine does not support banning gender-affirming medical care for adolescents with gender dysphoria. He has concerns about Act 626's impact on youth who are currently receiving gender-affirming hormones.

292.    Dr. Levine testified that doctors who provide gender-affirming medical care to adolescents with gender dysphoria encourage patients to identify as transgender and provide hormones immediately without assessing patients and addressing other mental health conditions or informing patients and their parents of the risks and the limitations of the evidence regarding treatments. *Id.* at 809:18- 810:4; 811:21-812:10; 824:5-14 (Levine). He offered no evidence that treatment was being provided this way in Arkansas or anywhere in the United States. Dr. Levine conceded he has no knowledge of how most gender clinics provide care and, thus, does not know how common it is for care to be provided in the way he described. *Id.* at 887:19-888:25 (Levine). He further does not know how care is provided by doctors in Arkansas. *Id.* at 888:24-891:16 (Levine).

293.    The Court found Dr. Levine a very credible witness who struggles with the conflict between his scientific understanding for the need for transgender care and his faith.

**Mark Regnerus, Ph.D.**

294.    Professor Mark Regnerus testified that all the major professional medical groups' support for gender-affirming medical care for adolescents with gender dysphoria is grounded in ideology rather than science. (Tr. 994:22-996:10, 1000:17-1001:1, ECF No. 248 (Regnerus)). Professor Regnerus' testimony did not offer any support for his conclusion, and the Court finds that there is no evidence to support this assertion.

295.    Professor Regnerus, a sociologist whose work has focused on sexual relationship behavior and religion, has no training or experience related to the fields of medicine or

57

mental health care, or the treatment of gender dysphoria. *Id.* at 974:5-977:22 (Regnerus).

He has never worked in a medical or mental health clinical setting. *Id.* at 977:1-22

(Regnerus).

296.   The Court does not credit the testimony of Professor Regnerus and gives it no weight

because the Court finds that he lacks the qualifications to offer his opinions and failed to

support them.[11]

**Patrick W. Lappert, M.D.**

297.   Dr. Patrick Lappert is Board-Certified in Surgery and Plastic Surgery. He is the Founding

Director of both the Pediatric Cleft Palate and Craniofacial Deformities Clinic and the

Wound Care Center at Naval Hospital Portsmouth, Virginia. He served the Office the

Surgeon General-U.S. Navy as a Specialty Leader in Plastic and Reconstructive Surgery.

---

[11] This is not the first time that Professor Regnerus's testimony as an expert witness has been questioned by a court. The district court in *DeBoer v. Snyder* found that Regnerus's research and testimony that gay parenting caused adverse outcomes in children was "entirely unbelievable and not worthy of serious consideration" and a "fringe viewpoint that is rejected by the vast majority of [the studies' authors'] colleagues across a variety of social science fields." *DeBoer v. Snyder*, 973 F. Supp. 2d 757, 766-68 (E.D. Mich.), rev'd on other grounds, 772 F.3d 388 (6th Cir. 2014), rev'd sub nom. *Obergefell v. Hodges*, 576 U.S. 644, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015); *see e.g., Kitchen v. Herbert*, 755 F.3d 1193, 1225 (10th Cir. 2014) (citing Rule 28(j) Letter at 2, No. 13–4178 (10th Cir., filed Apr. 9, 2014) (acknowledging that appellants' main scientific authority [Regnerus's research] on this issue "cannot be viewed as conclusively establishing that raising a child in a same-sex household produces outcomes that are inferior to those produced by man-woman parenting arrangements"); Ian Farrell & Nancy Leong, Gender Diversity and Same-Sex Marriage, 114 Colum. L. Rev. Sidebar 97, 101 (2014) (noting the "now-discredited study by Mark Regnerus" which was "suspect from creation--it was funded by conservative think tanks" and "suspect in methodology[.] . . . Moreover, Regnerus's department at the University of Texas publicly stated that it did not sanction his work. Social Science Research, in which the study originally appeared, later performed an audit and announced that the study should not have been published[.]"); Nathaniel Frank, What Does Mark Regnerus Want?, Slate (July 10, 2014, 10:20 AM), http://www.slate.com/blogs/outward/2014/07/10/mark_regnerus_ is_back_with_more_anti_gay_family_science.html (on file with the Columbia Law Review); Philip N. Cohen, 200 Researchers Respond to Regnerus Paper, Family Inequality (June 29, 2012, 11:00 AM), http://familyinequality.wordpress.com/2012/06/29/200-researchers-respond-to-regnerus-paper/ (on file with the Columbia Law Review) (finding peer-review process abnormally short and questioning reviewers' expertise and impartiality); Dep't of Sociology, Statement from the Chair Regarding Professor Regnerus, Univ. of Tex. at Austin (Apr. 12, 2014), http:// www.utexas.edu/cola/depts/sociology/news/7572 (on file with the Columbia Law Review) ("Dr. Regnerus' opinions ... do not reflect the views of the Sociology Department of The University of Texas at Austin."); Darren E. Sherkat, The Editorial Process and Politicized Scholarship: Monday Morning Editorial Quarterbacking and a Call for Scientific Vigilance, 41 Soc. Sci. Res. 1346, 1347-49 (2012) (finding "serious flaws and distortions" in Regnerus's paper)).

June 20 2023 p158

298.    Dr. Lappert has no training or professional experience in mental health or gender

dysphoria and has never provided gender-affirming surgery. He acknowledges that he is

not an expert in the treatment of gender dysphoria. (Tr. 1040:16-1042:18, ECF No. 248

(Lappert)).

299.    Like Professor Mark Regnerus and Dr. Paul Hruz, Dr. Lappert was recruited by the

Alliance Defending Freedom ("ADF") at a seminar held in Arizona. The meeting was

held to gather witnesses trained in various fields that would be willing to testify in favor

of laws passed that limit transgender care. The ADF is an organization committed to

protecting God's design for marriage and family. (Tr. 1029:16-1031:24, ECF No. 248

(Regnerus)). The ADF is not a scientific organization, but a Christian-based legal

advocacy group. *Id.* at 1080:21-25 (Lappert). While there is nothing nefarious about an

organization recruiting witnesses to testify for their cause, it is clear from listening to the

testimony that Professor Mark Regnerus, Dr. Paul Hruz, and Dr. Lappert were testifying

more from a religious doctrinal standpoint rather than that required of experts by

*Daubert*.

300.    Dr. Lappert offered opinions regarding the circumstances under which he believes

cosmetic or aesthetic surgeries are ethically appropriate in adults and minors and the

potential risks of various surgeries outside of the context of gender transition. The

relevance of Dr. Lappert's testimony was unclear. The Court finds that he is not qualified

to offer relevant opinions given his lack of experience related to gender dysphoria.

301.    Dr. Lappert does not meet the requirements under *Daubert* to give opinions relevant to

this case.

302.    Dr. Lappert acknowledged that his opinions were his own and were inconsistent with his

peers and the American Society of Plastic Surgeons. *Id.* at 1080:5-9, 1081:16-21

(Lappert).

**Paul W. Hruz, M.D., Ph.D.**

303.    Dr. Paul Hruz is a Pediatric Endocrinologist. He is currently the Associate Professor of

Pediatrics, Endocrinology and Diabetes and the Associate Professor of Pediatrics, Cell

Biology & Physiology at Washington University of St. Louis School of Medicine. He

received his M.D. and Ph.D. in Biochemistry from the Medical College of Wisconsin. He

received certification in Healthcare Ethics from the National Catholic Bioethics Center in

2017. In addition to teaching and authorship of many articles and papers, Dr. Hruz

practices Pediatric Endocrinology at St. Louis Children's Hospital.

304.    Dr. Hruz has never treated a patient for gender dysphoria. (Tr. 1317:21-23, ECF No. 249

(Hruz)).

305.    The legislative findings in Act 626 assert that there is insufficient evidence of the efficacy

of gender-affirming medical care for minors. Some of the state's expert witnesses—Dr.

Levine and Dr. Hruz—offered opinions to that effect. (Tr. 833:12-16, ECF No. 246

(Levine); Tr. 1274:15-25, ECF No. 249 (Hruz)). The Court does not credit these opinions

because it finds that the evidence showed that decades of clinical experience in addition

to a body of scientific research demonstrate the effectiveness of these treatments. For the

same reason, the Court finds that the treatments banned by Act 626 are not

"experimentation" on youth, as suggested by the Act's title. ARK. CODE ANN. § 20-9-

1501 (2021) ("Arkansas Save Adolescents from Experimentation (SAFE) Act"); Tr.

382:25-383:4, ECF No. 220 (Antommaria)).

60

306.  Dr. Hruz suggested that the Court should disregard the body of research showing benefits of gender-affirming medical care for adolescents because it is low-quality research, and the studies have methodological limitations such as lack of a control group or cross-sectional design. (Tr. 1275:20-1277:4, 1277:18-1278:21, 1279:7-1280:22, 1291:14-1292:8, ECF No. 249 (Hruz)). The Court declines to do that. The Court finds that the quality of the evidence supporting gender-affirming medical interventions for adolescents with gender dysphoria is comparable to the quality of evidence supporting many other medical treatments minors and their families may pursue. And while the Court recognizes that the studies on gender-affirming medical care for adolescents, like studies in all areas of medical research, have strengths and weaknesses, it does not credit Dr. Hruz's assessment that the entire body of research is, therefore, meaningless. The body of research, taken as a whole, shows these treatments provide significant benefits to adolescents with gender dysphoria.

307.  Dr. Hruz also testified about risks of puberty blockers, testosterone, anti-androgens, and estrogen, suggesting this is a basis to prohibit gender-affirming medical care for adolescents. *Id.* at 1247:4-10; 1257:11-20, 1261:18-25; 1262:1-1263:13 (Hruz). The weight of evidence speaks to the contrary.

308.  Like Plaintiffs' experts, Dr. Hruz recognized that apart from the potential impact on fertility, the risks of these treatments also exist when these medications are provided to treat other conditions in cisgender patients. *Compare Id. with* 1229:24- 1230:22, 1249:14-1250:8, 1259:15-1260:3 (Hruz). These risks have not prevented Dr. Hruz from providing these medications to cisgender patients in his pediatric endocrine practice. *Id.* at 1222:22-24, 1244:11-17, 1248:16-18, 1257:21-24 (Hruz).

**Defendant's Expert Opinions Generally**

309.   The State suggests that Act 626 is consistent with medical guidelines issued by "nations

around the world." *See* Def. Tr. Br. at 21. Their experts referenced guidelines issued by

government health authorities in Sweden, Finland, and the United Kingdom. But the

Court finds that the evidence showed that none of these guidelines have prohibited

gender-affirming medical care for minors. (Tr. 405:19-406:6, 406:20-407:24, ECF No.

220 (Antommaria)).

310.   In Sweden, Finland and the United Kingdom, gender-affirming medical care is provided

to adolescents with gender dysphoria when indicated under their guidelines. For example,

in Finland, the guidelines provide that hormone therapy can be provided to minors based

on a thorough case-by-case consideration if it can be ascertained that the adolescent's

identity as the other sex is of a permanent nature and causes severe dysphoria. (Tr.

938:23-939:3, ECF No. 246 (Levine)). In the United Kingdom, the National Health

Service has expanded care from one central clinic to regional clinics to broaden access to

care. (Tr. 406:20-407:19, ECF No. 220 (Antommaria)).

311.   Most of the State's expert witnesses, Professor Mark Regnerus, Dr. Stephen Lappert, and

Dr. Paul Hruz, were unqualified to offer relevant expert testimony and offered unreliable

testimony. Their opinions regarding gender-affirming medical care for adolescents with

gender dysphoria are grounded in ideology rather than science. *See also Doe v. Ladapo*,

2023 WL 3833848, at *2 (N.D. Fla. June 6, 2023) (comments on expert testimony of

Lappert and Hruz); *Kadel v. Folwell*, 620 F. Supp. 3d 339, 368 (M.D.N.C. 2022) (same).

### III.    Conclusions of Law

#### A. Standing

Constitutional standing requires that at least one plaintiff demonstrate they have

suffered a concrete and particularized injury that is fairly traceable to the challenged

action and is likely to be redressed by a court ruling in the plaintiff's favor. *See Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "To show standing under Article III

of the U.S. Constitution, a plaintiff must demonstrate (1) injury in fact, (2) a causal

connection between that injury and the challenged conduct, and (3) the likelihood that a

favorable decision by the court will redress the alleged injury." *Iowa League of Cities v.*

*EPA*, 711 F.3d 844, 869 (8th Cir. 2013) (citations omitted). The undisputed evidence at

trial established that, if the Act were to go into effect, (i) three of the Minor Plaintiffs—

Parker Saxton, Dylan Brandt, and Sabrina Jennen—would have to discontinue treatment

that they, their parents, and their doctors all agree is medically indicated for them and

benefitting their health and well-being, and Minor Plaintiff Brooke Dennis would be

unable to obtain treatment she will imminently need; (ii) the Parent Plaintiffs would have

to watch their children suffer the loss of care or endure severe personal and financial

hardship to access care for their children in other states, and (iii) the Physician Plaintiff,

Dr. Kathryn Stambough, would be unable to treat her patients who need care, leaving

them to suffer, and unable to refer them to other doctors to provide care when necessary.

As the Court has held, those injuries are directly traceable to the Act and would be

redressed by a permanent injunction barring its enforcement. The evidence presented at

trial confirms that Plaintiffs have standing to pursue their claims.

B.  **Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "Put another way, state action is unconstitutional when it creates 'arbitrary or irrational' distinctions between classes of people out of 'a bare ... desire to harm a politically unpopular group.'" *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020), as amended (Aug. 28, 2020) (quoting *Cleburne*, 473 U.S. at 446–47). It protects against intentional and arbitrary discrimination. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). State action is generally presumed to be lawful and will be upheld if the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne*, 473 U.S. at 440.

The rational basis test, however, does not apply when a classification is based upon sex. Rather, a sex-based classification is subject to heightened scrutiny, as sex "frequently bears no relation to the ability to perform or contribute to society." *Id.* at 440–41 (quoting *Frontiero v. Richardson*, 411 U.S. 677 (1973)). Act 626 discriminates on the basis of sex because a minor's sex at birth determines whether the minor can receive certain types of medical care under the law. *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 669 (8th Cir. 2022). The evidence presented at trial supports this conclusion. A minor assigned male at birth is not prohibited under Act 626 from receiving testosterone or surgical procedures "such as subcutaneous mastectomy, voice surgery, liposuction, lipofilling, pectoral implants, or various aesthetic procedures" for the purpose of aligning himself with his biological sex. Act 626 does not prohibit a minor

64

assigned female at birth from receiving estrogen or surgical procedures "such as augmentation mammoplasty, facial feminization surgery, liposuction, lipofilling, voice surgery, thyroid cartilage reduction, gluteal augmentation, hair reconstruction or other aesthetic procedures" to enhance her appearance as long as the enhancements align with her biological sex. "The biological sex of the minor patient is the basis on which the law distinguishes between those who may receive certain types of medical care and those who may not. The Act is therefore subject to heightened scrutiny." *Id.* at 670 (citing *Heckler v. Mathews*, 465 U.S. 728, 744 (1984)).

The Act also discriminates against transgender people. The law prohibits medical care that only transgender people choose to undergo, i.e, medical or surgical procedures related to gender transition.[12] "[T]ransgender people constitute at least a quasi-suspect class." *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020); *accord Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020) (discrimination for being transgender is discrimination "on the basis of sex"). Transgender people satisfy all indicia of a suspect class: (1) they have historically been subject to discrimination; (2) they have a defining characteristic that bears no relation to their ability to contribute to society; (3) they may be defined as a discrete group by obvious, immutable, or distinguishing characteristics; and (4) they are a minority group lacking political power. *See Grimm*, 972 F.3d at 610-613.

"[A]ll gender-based classifications today warrant heightened scrutiny." *United States v. Virginia*, 518 U.S. 515, 555 (1996) (citing *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127,136 (9th Cir. 1994) (internal quotation marks omitted)); *see also Harrison v.*

---

[12] The State argues that people who are not transgender may seek gender transition procedures. There is no evidence in the record to support this argument.

*Kernan*, 971 F.3d 1069, 1077 (2020); *Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 952 (W.D. Wisc. 2018) (recognizing that "heightened scrutiny may be appropriate either on the basis of sex discrimination or through recognizing of transgender as a suspect or quasi-suspect class.")).

"Statutes that discriminate based on sex must be supported by an 'exceedingly persuasive justification.' The government meets this burden if it can show that the statute is substantially related to a sufficiently important government interest." *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 670 (8th Cir. 2022) (quoting *United States v. Virginia*, 518 U.S. 515, 531-33 (1996)). Heightened or intermediate scrutiny imposes a burden "rest[ing] entirely on the State" to demonstrate an "exceedingly persuasive" justification for the differential treatment. *Virginia*, 518 U.S. at 533. A state "must show at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Id.* (internal quotation marks and citations omitted). And "[t]he justification must be genuine, not hypothesized or invented post hoc in response to litigation." *Id.*

The State claims that by banning gender-affirming care the Act advances the State's important governmental interest of protecting children from experimental medical treatment and safeguarding medical ethics. Throughout this litigation, the State has attempted to meet their heavy burden by offering the following assertions in support of banning gender-affirming medical care for adolescents: (i) that there is a lack of evidence of efficacy of the banned care; (ii) that the banned treatment has risks and side effects; (iii) that many patients will desist in their gender incongruence; (iv) that some patients

will later come to regret having received irreversible treatments; and (v) that treatment is being provided without appropriate evaluation and informed consent.  The evidence presented at trial does not support these assertions.

**a.  <u>Efficacy</u>**

The evidence at trial showed that the prohibited medical care improves the health and well-being of many adolescents with gender dysphoria. Three of Plaintiffs' experts and two Arkansas doctors detailed the significant mental health benefits of gender-affirming medical care for adolescents with gender dysphoria which they have observed clinically. Drs. Karasic, Turban, and Adkins have collectively treated thousands of patients with gender dysphoria and testified about their own clinical experiences witnessing the positive, life-changing impact of gender-affirming medical interventions on their adolescent patients as well as the comparable experiences of their colleagues around the country. (Tr. 67:8-12, ECF No. 219 (Karasic); 233:15-22 (Adkins); Tr. 298:7-18, 305:2-19, ECF No. 220 (Turban); Tr. 543:3-544:11, ECF No. 275 (Hutchison), 606:20-610:1 (Stambough). Drs. Stambough and Hutchison similarly testified about the many positive impacts of gender-affirming medical interventions on the health and well-being of their adolescent patients in Arkansas. (Tr. 543:3-544:11, ECF No. 275 (Hutchison), 606:20-610:1 (Stambough)). The testimony showed that the benefit of this care is long lasting. *Id.*

The State put forth no evidence contesting the extensive clinical experience of Plaintiffs' witnesses. In fact, the State's only expert witness to have ever treated patients for gender dysphoria, Dr. Levine, testified that he felt a decision about whether an adolescent should pursue hormone therapy should be made by a "team of well-informed

doctor[s], scientifically well-informed, parents that have a respect for the doctor and have met with the doctor numerous times, and the doctor who has a relationship with the patient." (Tr. 909:7:25, ECF No. 246 (Levine)). He went on the say that "after that patient has had a process of psychotherapy where these matters, their ambivalence, the uncertainty, their eating disorders, and their self-harm episodes, et. cetera, have been thoroughly explored—if that team of doctors, patient, and parent want to do that [hormone therapy] that's what doctors do. We do that for cancer as well, you know." *Id.*

Plaintiffs' experts testified about the body of research demonstrating that the banned medical interventions improve patient health. (Tr. 295:16-18, 298:7-18, 300:24-301:17, 302:20-303:8, 303:22-305:1, ECF No. 220 (Turban); 219:68:15-69:14 (Karasic)). Dr. Turban testified about the sixteen studies conducted in multiple countries over the past twenty years that collectively show that use of pubertal suppression and gender-affirming hormones to treat adolescents with gender dysphoria improves patient health and prevents the worsening of distress upon the onset of puberty. *Id.* at 295:16-18 (Turban). He testified as well that the studies about the efficacy of hormone therapy show positive outcomes consistent with dozens of studies about the efficacy of such therapy to treat gender dysphoria in adults. *Id.* at 302:20-303:21 (Turban).

This expert testimony about positive research and clinical evidence was bolstered by the unrebutted testimony of the Parent Plaintiffs who explained how gender-affirming medical care positively transformed the lives of their adolescent children with gender dysphoria. For adolescents, like Minor Plaintiffs Parker Saxton, Dylan Brandt, and Sabrina Jennen, this care allowed them to grow from depressed, anxious, and withdrawn young people into happy and healthy teenagers who looked forward to their futures.

The State offered no evidence to refute the decades of clinical experience demonstrating the efficacy of gender-affirming medical care. Additionally, the State's experts offered no evidence-based treatment alternatives. When asked at trial what would happen if a law like Act 626 were to go into effect, Dr. Turban explained:

> It would be emotional to think about. Because the reality is that we frequently in clinic have families that are coming to us with these young people who are really struggling with severe anxiety, depression, sometimes suicidal thoughts, sometimes their mental health is declining so dramatically that they can't go to school, and it's my job to tell families what the evidence-based approaches are to help their child. So if these treatments were not an option, I'd be left without any evidence-based approaches to treat this young person's gender dysphoria.

(Tr. 326:16-327:5, ECF No. 220 (Turban)).

The evidence showed that based on the decades of clinical experience and scientific research, it is widely recognized in both the medical and mental health fields— including by major medical and mental health professional associations—that gender-affirming medical care can relieve the clinically significant distress associated with gender dysphoria in adolescents.[13] The State failed to provide sufficient evidence that the banned treatments are ineffective or experimental.

**b. <u>Risks and Side Effects</u>**

It is undisputed that puberty blocking hormones delay the rapid accrual of bone mineralization that occurs during puberty. (Tr. 205:16-201:12, ECF No. 219 (Adkins)); Tr. 390:8-16, ECF No. 220 (Antommaria)). This is a risk for cisgender and transgender

---

[13] The State urges the Court to disregard the major medical organizations' views about gender-affirming medical care for adolescents with gender dysphoria, claiming they are based on ideology rather than science. To support this claim, they offered the testimony of Professor Mark Regnerus, but his testimony did not offer any support for this assertion. *See* Pls.' Proposed FOF ¶ 383. To accept this claim would require the Court to both credit Professor Regnerus' testimony and the notion that every major medical association in the United States is driven by ideology rather than science and patient well-being. There is no basis and no evidence supporting such a conspiratorial assessment of all the major medical associations.

adolescents. Puberty blocking hormones do not stop bone mineralization. Instead, adolescents on these hormones continue to accrue bone mineralization at a prepubertal rate. (Tr. 209:2-13, ECF No. 219 (Adkins)). Once puberty blockers are stopped and puberty resumes, either the person's endogenous puberty or an exogenous puberty prompted by hormone therapy, the accrual of bone mineralization increases at the usual pubertal rate. *Id.* at 209:2-210:1 (Adkins).

It is undisputed that when adolescent birth-assigned females with gender dysphoria are treated with testosterone, their fertility can sometimes be impaired. If testosterone follows puberty blockers at certain stages of the adolescent's development, the adolescent can become infertile. These risks are discussed with patients and parents and fertility options are discussed. There are also risks associated with testosterone therapy given to cisgender adolescent males including changes in cholesterol profile and blood thickness. However, Dr. Adkins testified that when a doctor monitors treatment to ensure appropriate therapeutic levels, adverse health effects are rare. *Id.* at 220:25-221:9 (Adkins).

Estrogen and anti-androgens are used to treat birth-assigned males with gender dysphoria. It is undisputed that when estrogen is used to treat birth-assigned males, it can sometimes impair their fertility. If estrogen treatment follows puberty blockers at certain stages of the adolescent's development, the adolescent can become infertile. When estrogen or anti-androgens are given to birth-assigned males, the hormones can limit the patient's sexual arousal or ability to orgasm. *Id.* at 229:17-230:2 (Adkins). These risks are discussed with patients and parents. The risks can be managed by the doctor to preserve fertility or treatment can be provided to address a decrease in sexual satisfaction in most

70

cases. There are also risks for cisgender females from treatment with estrogen or anti-androgens. Again, when a doctor monitors treatment to ensure appropriate therapeutic levels, adverse health effects are rare.

The State failed to provide sufficient evidence that Act 626's ban on transgender care is justified by the risks of the treatment. As stated, the evidence at trial showed the risks associated with gender-affirming care for adolescents are no greater than the risks associated with many other medical treatments that are not prohibited by Act 626. (Tr. 390, ECF No. 220 (Antommaria); Tr. 212:11-12, ECF No. 219 (Adkins)). The evidence showed that the banned treatments are effective to treat gender dysphoria and the benefits of the treatments greatly outweigh the risks. The State failed to meet their burden to show that the risks of gender-affirming care banned by Act 626 substantially outweigh the benefits.

c. **Desistance and Regret**

The State argues that minors with gender dysphoria will desist with age. They contend that there is a significant risk of harm to a minor who elects to undergo gender hormone therapy or surgery because they will eventually identify with their sex assigned at birth and regret the treatment they sought as a minor. The State offered the testimony of Dr. Levine to support this argument. The Court found Dr. Levine's testimony to be inconsistent and unreliable in this area. To the contrary, the evidence proved that there is broad consensus in the field that once adolescents reach the early stages of puberty and experience gender dysphoria, it is very unlikely they will subsequently identify as cisgender or desist. (Tr. 310:13-25, ECF No. 220 (Turban)). The testimony confirmed

that for most people gender identity is stable over their lifetime. (Tr. 31, ECF No. 219

(Karasic)).

**d.  <u>Proper Evaluation and Informed Consent</u>**

The State spent a great deal of time at trial arguing that the number of children

identifying as transgender has increased in the last decade and researchers theorize that

the increase could be due to mental illness, social encouragement, or abuse. The State

argues that the "affirmative" model of treating gender dysphoria which utilizes puberty

blockers, cross-sex hormones and surgeries allows doctors to "throw caution out the

window." (Post-Tr. Br., ECF No. 265 at 4). However, there was no evidence that doctors

in Arkansas negligently prescribe puberty blockers or cross-sex hormones to minors.

The State argues that many doctors do not require mental health counseling before

treatment and will let children get hormone therapy and permanently altering surgeries

upon demand. The evidence at trial did not support the State's argument. The State's

experts admitted that they have had no contact with any Arkansas doctors or information

about how doctors in Arkansas treat minors with gender dysphoria. (Tr. 113:1-12, ECF

No. 246 (Levine)). There was no evidence presented that surgeons in Arkansas are

performing gender transforming surgeries on minors much less performing surgeries on

demand. In fact, the evidence confirmed that doctors in Arkansas do not perform gender

transition surgeries on any person under the age of 18, the age which Act 626 targets.

There was testimony that WPATH Standards of Care, which are aligned with the

ACH Gender Clinic protocols, recommend a comprehensive bio-psychosocial assessment

of adolescent patients who present with gender identity related concerns and seek gender

transition care. (Tr. 43:13-47:7, ECF No. 219 (Karasic)). The Standards of Care

72

"recommend healthcare professionals involve relevant disciplines including mental health and medical professionals to reach a decision about whether puberty suppression, hormone initiation, or gender-related surgery for gender diverse and transgender adolescents are appropriate and remain indicated throughout the course of treatment until transition is made to adult care." *Id.* Before initiating gender-affirming medical treatment to adolescents, the WPATH Standards of Care state that the patient should have a history of gender diversity lasting years and meet the criteria for a gender dysphoria diagnosis. *Id.* at 50-51. The diagnostic criteria for gender dysphoria includes six months of clinically significant distress or social or occupational impairment. *Id.* This six-month period is in addition to the years of gender diversity history that the Standards of Care require. *Id.*

Dr. Hutchinson testified that while she was the medical director at the Arkansas Children's Hospital Gender Clinic she always did a full assessment of an adolescent seeking care for gender dysphoria. (Tr. 523:10-528:19, ECF No. 275 (Hutchison)). Her assessment included family history, physical history, and psychosocial evaluations. *Id.* Before cross-sex hormone therapy could be prescribed in the Clinic, the adolescent had to meet the criteria for a gender dysphoria diagnosis, meet with a clinical psychologist, have ongoing therapy with a therapist, show consistent and persistent gender identity in their affirmed gender and show mood stability. *Id.* Dr. Cathey, an Arkansas doctor, testified that she requires a diagnosis of gender dysphoria before prescribing feminizing or masculinizing hormone therapy to minors (Tr. 754-759, 54-59, ECF No. 224 (Cathey)). After a diagnosis, she will prescribe hormones to minors aged 16 and older but only with parental consent. *Id.*

Rather than protecting children or safeguarding medical ethics, the evidence showed that the prohibited medical care improves the mental health and well-being of patients and that, by prohibiting it, the State undermined the interests it claims to be advancing. Further, the various claims underlying the State's arguments that the Act protects children and safeguards medical ethics do not explain why only gender-affirming medical care—and all gender-affirming medical care—is singled out for prohibition. The testimony of well-credentialed experts, doctors who provide gender-affirming medical care in Arkansas, and families that rely on that care directly refutes any claim by the State that the Act advances an interest in protecting children.

Based on the record, the Court concludes that Act 626 prohibits medical care on the basis of sex and the State has failed to meet its demanding burden of proving the Act advances its articulated interests. The Court finds that Act 626 violates Plaintiffs' rights to equal protection.

## C. <u>Due Process</u>

Even if the Court found that Act 626 passed constitutional muster under the Equal Protection Clause, it fails under due process analysis. The Due Process Clause of the Fourteenth Amendment forbids states to "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*,

74

530 U.S. 57, 65 (2000); *see also Kanuszewski v. Mich. Dep't of Health and Human Serv's*, 927 F.3d 396, 419 (6th Cir. 2019) ("[P]arents' substantive due process right to make decisions concerning the care, custody, and control of their children includes the right to direct their children's medical care."). Parents are presumed to be acting in the best interest of their children. *Parham v. J.R.,* 442 U.S. 584, 602 (1979).

As the Court has previously found, the Parent Plaintiffs have a fundamental right to seek medical care for their children and, in conjunction with their adolescent child's consent and their doctor's recommendation, make a judgment that medical care is necessary. "[T]the Fourteenth Amendment 'forbids the government to infringe . . . 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.'" *Glucksberg*, 521 U.S. at 721 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). Strict scrutiny is the appropriate standard of review for infringement of a fundamental parental right. However, even under the heightened scrutiny standard, Act 626 fails.

The State has a compelling interest in "safeguarding the physical and psychological well-being of a minor. . .." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty*., 457 U.S. 596, 607 (1982). As explained, the State has failed to present evidence that the gender-affirming procedures banned by Act 626 jeopardize the physical or psychological well-being of a minor with gender dysphoria. There is no evidence that the Arkansas healthcare community is throwing caution to the wind when treating minors with gender dysphoria.

Moreover, the evidence shows that the Arkansas Medical Board has successfully navigated the regulation of the healthcare community in controversial areas such as the

opioid crisis and gastric bypass surgery. The Arkansas Medical Board is the best option for regulating the ethical considerations as well as the duties of the healthcare community in circumstances like the treatment of gender dysphoria. Plaintiff Parents' testimony at trial confirmed that they have made the decision to get gender-affirming care for their children after discussions with and observations of their child, thorough research, counseling, and consultation with a doctor. They are acting in the best interest of their children. Act 626 would take away these parents' fundamental right to provide healthcare for their children and give that right to the Arkansas Legislature.

Further, Act 626's ban of all gender transition procedures "including without limitation physician's services, inpatient and outpatient hospital services, or prescribed drugs related to gender transition" is not narrowly tailored to achieve the State's articulated interests. Though the State applauds the efforts of European countries to restrict gender-affirming care for minors with gender dysphoria, the State's expert testified that no other country in the world has taken Arkansas's broad stance. None of these countries have imposed a ban on all gender-affirming care.

For these reasons, the Court finds that Act 626 violates the Parent Plaintiffs' rights to substantive due process.

**D. <u>First Amendment</u>**

Act 626 provides that "[a] physician, or other healthcare professional shall not refer any individual under eighteen (18) years of age to any healthcare professional for gender transition procedures." Ark. Code Ann. § 20-9-1502(b). Dr. Stambough claims that Act 626 restricts her freedom of speech by barring her from referring her patients to other healthcare professionals for gender transition treatment in violation of the First

76

Amendment. The State argues that the Act targets conduct, not communication, by healthcare professionals. In support, the State cites to the definition of "referral" on Healthcare.gov. (Defs.' Post-Tr. Br., ECF 265 at 25.). The website defines referral as follows:

> A written order from your primary care doctor or you to see a specialist or get certain medical services. In many Health Maintenance Organizations (HMOs), you need to get a referral before you can get medical care from anyone except your primary care doctor. If you don't get a referral first, the plan may not pay for the services.

https://www.healthcare.gov/glossary/referral (last visited May 24, 2023).

The State argues that writing an order, or "referring," a patient to another physician for gender transition procedures amounts to a treatment order. A treatment order is professional conduct subject to regulation by the State, even if it incidentally involves speech. The State argues that the Act's purpose is to encourage speech in the form of psychotherapy for treatment of gender dysphoria.

The Court is not persuaded by these arguments. The Act does not define the word "refer." Prosecutors and the Arkansas State Medical Board are unlikely to rely on the Health Insurance Marketplace's website when determining whether a healthcare professional has violated Act 626. Had the Arkansas Legislature intended to bar physicians from writing an order directing a patient to seek gender transition procedures from another provider it could have included that statement in the Act. *See* S.B. 184, ALA. 2022 Reg. Sess. (2022); *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1149 (M.D. Ala. 2022) (Alabama's transgender healthcare ban legislation prohibits the "prescribing or administering" of gender transition treatment which is conduct not speech.).

As written, Act 626 clearly regulates speech and not conduct as argued by the State. It prevents doctors from informing their patients where gender transition treatment may be available. It effectively bans their ability to speak to patients about these treatments because the physician is not allowed to tell their patient where it is available. "[A] State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 439 (1963); *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371–72 (2018) ("[T]his Court has not recognized 'professional speech' as a separate category of speech. Speech is not unprotected merely because it is uttered by 'professionals.'").

Act 626 is a content and viewpoint-based regulation of speech because it restricts healthcare professionals from making referrals for "gender transition procedures" only, not for other purposes. As a content and viewpoint-based regulation, it is "presumptively unconstitutional" and is subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Again, the State explains that it has a compelling interest in keeping children away from gender transition procedures because their efficacy and safety are doubtful. The problem with this argument is that the State has failed to prove that gender-affirming care for minors with gender dysphoria is ineffective or riskier than other medical care provided to minors. The State also contends it has a compelling interest in regulating the ethics of the medical profession. There was no evidence presented that an Arkansas physician or healthcare provider has been ethically compromised in their treatment of adolescents with gender dysphoria or their communication with patients regarding gender

transitioning procedures. As stated, the Arkansas Medical Board has proven to be an effective regulator of Arkansas healthcare professionals in controversial areas of medicine.

For these reasons, the Court finds that the State has failed to prove that its interests in the safety of Arkansas adolescents from gender transitioning procedures or the medical community's ethical decline are compelling, genuine, or even rational. Act 626 violates Dr. Stambough's rights under the First Amendment.

### E. Permanent Injunction

Plaintiffs seek permanent injunctive relief. To obtain a permanent injunction, Plaintiffs were required to "show actual success on the merits." *Miller v.* Thurston, 967 F.3d 727, 735 (8th Cir. 2020). Substantial evidence at trial demonstrated that Act 626 violates Plaintiffs' constitutional rights. Testimony from the Minor Plaintiffs, their parents, Dr. Stambough and the experts proved that they would suffer immediate and irreparable harm from Act 626 if it were to go into effect. This harm to Plaintiffs and the public interest is outweighed by any potential harm to the State of Arkansas caused by the entry of a permanent injunction.

### IV.    Conclusion

For these reasons, the Court hereby orders that Defendant Tim Griffin, in his official capacity as Attorney General of the State of Arkansas, and all those acting in concert with him, including employees, agents, successors in office, and the members of the Arkansas State Medical Board are permanently enjoined from enforcing House Bill

1570, Act 626 of the 93rd General Assembly of Arkansas, codified at Ark. Code Ann. §§

20-9-1501 to 20-9-1504 and 23-79-164. The Clerk is directed to close the case. [14]

IT IS SO ORDERED this 20th day of June, 2023.

_____
James M. Moody Jr.
United States District Judge

---

[14] The Court retains jurisdiction to consider motions for attorneys' fees.

80

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DYLAN BRANDT, et al.,                                          PLAINTIFFS

V.                                    4:21CV00450 JM

LESLIE RUTLEDGE, et al.,                                       DEFENDANTS

## JUDGMENT

Pursuant to the Order entered on this day, Judgment is hereby entered in favor of the

Plaintiffs and against the Defendants.

IT IS SO ORDERED this 20th day of June, 2023.

_____
James M. Moody Jr
United States District Judge

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DYLAN BRANDT, *et al.*,                                                    PLAINTIFFS,

v.                                  No. 4:21-CV-00450-JM

TIM GRIFFIN, in his official capacity as
the Arkansas Attorney General, *et al.*,                         DEFENDANTS.

### NOTICE OF APPEAL

Defendants, Tim Griffin, in his official capacity as the Attorney General of the State of Arkansas; Amy E. Embry in her official capacity as the Executive Director of the Arkansas State Medical Board; and Sylvia D. Simon, Robert Breving Jr., John H. Scribner, Elizabeth Anderson, Rhys L. Branman, Edward "Ward" Gardner, Rodney Griffin, Betty Guhman, Brian T. Hyatt, Timothy C. Paden, Don R. Philips, William L. Rutledge, David L. Staggs, and Veryl D. Hodges, in their official capacities as members of the Arkansas State Medical Board,[1] give notice of their appeal to the United States Court of Appeals for the Eighth Circuit from this Court's Order (Doc. 283) issued on June 20, 2023, and the Judgment entered the same day.  (Doc. 284).

The Eighth Circuit has jurisdiction because this is an appeal from a final judgment of a district court of the United States, 28 U.S.C. 1291, which also confers jurisdiction over "all of the previous rulings and orders that led up to and served as a predicate for that final judgment."  *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001); *see Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019).

---

[1] Sylvia D. Simon, Robert Breving, Jr., Rhys L. Branman, Brian T. Hyatt, William L. Rutledge, and David L. Staggs are no longer serving on the Arkansas State Medical Board. Their successors in office are Michael J. Birrer, Christopher D. Davis, C. Wesley Kluck, Jr., Brian L. McGee, Matthew A. Sellers, and Brad A. Thomas, who are automatically substituted as parties.  Fed. R. Civ. P. 25(d); Fed. R. App. P. 43(c)(2).

Dated:  July 20, 2023                    Respectfully submitted,

                                         TIM GRIFFIN
                                            Attorney General
                                         NICHOLAS J. BRONNI (2016097)
                                            Solicitor General
                                         DYLAN L. JACOBS (2016167)
                                            Deputy Solicitor General
                                         MICHAEL A. CANTRELL (2012287)
                                            Assistant Solicitor General
                                         OFFICE OF THE ARKANSAS
                                            ATTORNEY GENERAL
                                         323 Center Street, Suite 200
                                         Little Rock, Arkansas 72201
                                         (501) 682-2007 (main)
                                         Dylan.Jacobs@ArkansasAG.gov

                                         *Counsel for Defendants*

2

U. S. COURT OF APPEALS - EIGHTH CIRCUIT
NOA SUPPLEMENT

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

Please note any additions or deletions to the style of the case from the style listed on the docket sheet (or attach an amended docket sheet with the final style of case)

Date 7/20/2023

| | |
|---|---|
| **Caption:** | Brandt et al v. Griffin et al |
| **Case No.:** | 4:21-cv-00450-JM |
| **Appellant:** | Tim Griffin, et al |
| **Appellant's Attorney(s):** | Michael Cantrell, Nicholas Bronni, Dylan Jacobs, Hannah Templin |
| **Appellees:** | Dylan Brandt, et al |
| **Appellee's Attorney(s):** | Alexander Holland, Alvin Halpern, Breean Walas, Chase Stangio, Christopher Travis, et al |
| **Court Reporter(s):** | Karen Dellinger, Valarie Flora, Elaine Hinson, |
| **Name of Person who prepared appeal:** | Forrest Dunn, Deputy Clerk (501-604-5341) |

| Length of Trial (# of days) | Fee Paid? Y/N: | IFP Granted? Y/N | Pending IFP Motion Pending? Y/N |
|---|---|---|---|
| 8 | N | N | N |

| Counsel Retained/Appointed/Pro Se | Pending Motions? Y/N |
|---|---|
| Retained | N |

**CRIMINAL CASES ONLY:**

Is defendant incarcerated? _____

Where? _____
Address of Defendant: _____

Please list all other defendants in this case if there were multiple defendants:
_____

Special Comments: _____