No. 23-2681

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

DYLAN BRANDT, et al.,
Plaintiffs-Appellees,

v.

TIM GRIFFIN,
in his official capacity as the Arkansas Attorney General, et al.,
Defendants-Appellants.

On Appeal from the United States District Court for the
Eastern District of Arkansas
No. 4:21-CV-00450 JM (Hon. James M. Moody, Jr.)

**Defendants-Appellants' Petition for Initial Hearing En Banc**

TIM GRIFFIN
 Arkansas Attorney General

NICHOLAS J. BRONNI
 Arkansas Solicitor General

DYLAN L. JACOBS
 Deputy Solicitor General

MICHAEL A. CANTRELL
 Assistant Solicitor General

OFFICE OF THE ARKANSAS
 ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
dylan.jacobs@arkansasag.gov

# TABLE OF CONTENTS

Table of Contents ................................................................................................. i

Table of Authorities .............................................................................................. ii

Rule 35(b)(1) Statement ........................................................................................1

Background .............................................................................................................2

Reasons Why Initial Hearing En Banc Should Be Granted ..................................11

    I.    The panel's conclusion that heightened scrutiny applies to regulations of gender-transition procedures makes this Court an outlier among the circuits. ..............................................................11

    II.   The Court should take this case en banc now rather waiting for the panel to apply its prior erroneous opinion. ...............................15

Conclusion ...........................................................................................................18

Certificate of Compliance ....................................................................................19

Certificate of Service ...........................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**

*Brandt by & through Brandt v. Rutledg*e,
   47 F.4th 661 (8th Cir. 2022) ..................................................... 8, 11-13, 16

*Brandt by & through Brandt v. Rutledge*,
   No. 21-2875, 2022 WL 16957734 (8th Cir. Nov. 16, 2022) ................... 8, 11, 15

*Brandt v. Rutledge*,
   551 F. Supp. 3d 882 (E.D. Ark. 2021) ............................................................. 7

*Dobbs v. Jackson Women's Health Org.*,
   142 S. Ct. 2281 (2022) ................................................................................ 2, 13

*Doe 1 v. Thornbury*,
   75 F.4th 655 (6th Cir. 2023) ........................................................................... 11

*Eknes-Tucker v. Governor of Alabama*,
   No. 22-11707, — F.4th —, 2023 WL 5344981
   (11th Cir. Aug. 21, 2023) ..................................................................... 2, 5, 11-14

*Howe v. Varity Corp.*,
   36 F.3d 746 (8th Cir. 1994) ............................................................................ 16

*Koe v. Noggle*,
   No. 1:23-CV-2904-SEG (N.D. Ga. Sept. 5, 2023) .......................................... 11

*L. W. by & through Williams v. Skrmetti*,
   73 F.4th 408 (6th Cir. 2023) ................................................................. 2, 4, 11-14

*Reed v. Reed*,
   404 U.S. 71 (1971) ......................................................................................... 12

*Tineo v. Att'y Gen. United States of Am.*,
   937 F.3d 200 (3d Cir. 2019) ............................................................................ 16

**Statutes**

2021 Ark. Act 626 ................................................................................................... 6

Ark. Code Ann. 20-9-1501(6)(A) .............................................................. 6, 12-13

Ia. Stat. 147.164 ..................................................................................................... 16

Laws 2023, LB 574 sec. 17 (Nebraska) ................................................................. 16

ii

Mo. Stat. 191.1720 ................................................................................16

N.D.C.C. 12.1-36.1-02 ..........................................................................16

S.D.C.L. 34-24-34 .................................................................................16

**Other Authorities**

Society for Evidence Based Gender Medicine (SEGM), *Denmark Joins
  the List of Countries That Have Sharply Restricted Youth Gender
  Transitions* (Aug. 17, 2023), https://perma.cc/9RG8-ETZ2 ..............................6

Appellate Case: 23-2681    Page: 4    Date Filed: 09/07/2023 Entry ID: 5314002

# RULE 35(b)(1) STATEMENT

If there's ever been a case warranting initial hearing en banc, this is it. It involves a question of exceptional importance affecting the laws of all but one state in this Circuit, on which two other circuits rejected this Court's panel precedent.

Last year, a panel of this Court held that intermediate scrutiny applied to laws regulating pediatric gender-transition procedures and upheld a preliminary injunction against Arkansas's law barring those procedures. That was erroneous, and Arkansas sought en banc review, arguing that the panel should have applied rational-basis review and upheld Arkansas's law. Five members of this Court voted to grant Arkansas's petition, and three members of this Court concluded that such review wasn't warranted at that time because the district court was poised to conclude a final trial on the merits that might change the result. So the case returned to the district court, and applying the wrong standard to essentially the same factual record, the district court permanently enjoined Arkansas's law. And the panel—bound by an erroneous standard—is all but certain to reach the same result. That alone would normally warrant skipping the panel stage.

But here, initial hearing en banc is even more warranted because the panel's erroneous standard conflicts with the decisions of two other circuits. Following the denial of Arkansas's petition, both the Sixth and Eleventh Circuits concluded that the panel applied the wrong legal standard, held laws regulating pediatric gender-

1

transition procedures are only subject to rational-basis review, and sustained two substantially similar laws. *See Eknes-Tucker v. Governor of Alabama*, No. 22-11707, — F.4th —, 2023 WL 5344981 (11th Cir. Aug. 21, 2023); *L. W. by & through Williams v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023). That's because—as both of those circuits explained—under the Supreme Court's most recent equal-protection holding in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2281 (2022), regulations of gender-transition procedures do not implicate a suspect classification and thus do not warrant heightened scrutiny. That's the correct analysis, and applying that standard, Arkansas's law—and similar laws enacted in all but one state in this Circuit—are constitutional.

So to avoid unnecessary delay, wasting judicial resources, and to align this Court's precedent with the rest of the country, this Court should grant initial hearing en banc, overrule the panel's decision, join the Sixth and Eleventh Circuits in holding that rational-basis review applies, and reverse the decision below.

## BACKGROUND

1. *Sex, gender, and gender dysphoria.*

Clinicians treat sex and gender as distinct concepts. Sex is biological, while gender or "gender identity" refers to a mentality. R. Doc. 283, at 5 (district court's final order). "Gender incongruence" occurs when gender does not correspond with

2

sex, *id.* and when coupled with "clinically significant distress," that may lead to the psychological condition known as "gender dysphoria." R. Doc. 283, at 6.

Until recently, childhood gender incongruence was very rare. For the few children who did experience gender incongruence, it usually "naturally desist[ed]" by puberty. R. Doc. 283, at 41. So gender incongruence was treated without surgical or serious medical intervention. Such "[w]atchful waiting" avoids transitioning a child toward presenting with a cross-sex identity. R. Doc. 283, at 41. And "[p]sychotherapy can be important" for treating "depression and anxiety," which are among the common comorbidities of gender dysphoria. R. Doc. 283, at 14.

This case isn't about those traditional methods. It's about the "rise in referrals to gender clinics . . . in recent years," R. Doc. 283, at 8, and the corresponding explosion in gender-transition procedures. Unlike established treatments that target a child's psychological distress, those procedures involve both pharmaceutical and surgical intervention designed to transform a child's sex traits and "align the body with [the child's] gender identity." R. Doc. 283, at 19. That effort typically happens in three steps: puberty blockers, then cross-sex hormones, then surgeries.

"Puberty blockers" are a class of drug that the FDA has approved to treat precocious (earlier than normal) puberty. R. Doc. 283, at 37. These drugs aren't FDA-approved for gender-dysphoria treatments, where they're used to halt normal puberty. R. Doc. 283, at 15. Instead of treating an abnormality, these treatments

3

leave children—who have reached the typical age of puberty—in a prepubertal physical state for as long as "three or four years." R. Doc. 283, at 37. Unsurprisingly, there are significant health risks associated with such a use. For instance, such treatments can lower bone density, R. Doc. 283, at 37-38, and lead to long-term sexual problems where sex organs don't properly mature. R. Doc. 283, at 70. And such treatments pause a child's development before the point at which, if left alone, "gender incongruence will naturally desist for most youth." R. Doc. 283, at 41.

Cross-sex hormones are next. Normal hormonal treatments (testosterone for boys, estrogen for girls) are often used to treat medical conditions like delayed puberty. R. Doc. 283, at 38. Cross-sex hormones (estrogen for boys, testosterone for girls) are not FDA-approved for gender transition or anything else. *See L. W.*, 73 F.4th at 418. Cross-sex hormones have serious health risks, including an increased risk of cardiovascular disease through "changes in cholesterol profile and blood thickness," R. Doc. 283, at 38, an increased risk of blot clots and stroke, lower hemoglobin levels, and increased prolactin, R. Doc. 283, at 39-40. And when used after puberty blockers, cross-sex hormones nearly always cause permanent sterilization. R. Doc. 283, at 39-40, 70.

4

Finally, some minors pursue surgery, including double mastectomies that remove healthy breasts (which the district court euphemistically called "chest masculinization surgery"). R. Doc. 283, at 17. And others pursue irreversible genital surgery (phalloplasty and vaginoplasty). *Id.* Indeed, the district court even relied on guidelines allowing vaginoplasty with no "age threshold." *Id.*

No one seriously disputes that gender-transition procedures carry serious risks and consequences. Both Plaintiffs' witnesses and the district court recognized as much. R. Doc. 283, at 70. And the risks aren't only physical. Instead, many children "later come to regret" those procedures and "identify with their" biological sex rather than their perceived gender identity. R. Doc. 283, at 40-41; accord R. Doc. 283, at 41 (regret "can happen with individuals who medically transitioned as adolescents or as adults" and "is common in medicine").

Nor is there any real dispute that research regarding these treatments is sparse. "There are no randomized controlled clinical trials evaluating the efficacy of gender-affirming medical care for adolescents." R. Doc. 283, at 34. What studies do exist are "low or very low-quality evidence." R. Doc. 283, at 35. And against that backdrop, many European countries restrict these procedures. R. Doc. 283, at 62; *see also Eknes-Tucker*, 2023 WL 5344981, at *8 ("Sweden, Finland, France, Australia, New Zealand, and the United Kingdom have raised concerns about the risks associated with puberty blockers and cross-sex hormone treatment

and supported greater caution and/or more restrictive criteria in connection with such interventions.").[1]

2. *The SAFE Act.* Two years ago, Arkansas adopted the SAFE Act in response to an explosion in experimental gender-transition procedures. *See* 2021 Ark. Act 626. The Arkansas General Assembly recognized that for children "[t]he risks of gender-transition procedures far outweigh any benefit at this stage of clinical study." 2021 Ark. Act 626, sec. 2(15). The Act thus prohibits physicians from providing to a minor "any medical or surgical service" designed to "[a]lter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex" or "[i]nstill or create physiological or anatomical characteristics that resemble a sex different from the individual's biological sex . . . for the purpose of assisting an individual with a gender transition." Ark. Code Ann. 20-9-1501(6)(A). The Act doesn't restrict procedures once children reach adulthood, and it encourages children with gender dysphoria to seek mental health care.

3. *Procedural history.* Plaintiffs sued. First, they claimed the SAFE Act violated the Equal Protection Clause because it discriminates based on sex and

---

[1] Since the decision below, Denmark too has shifted its approach. *See* Society for Evidence Based Gender Medicine (SEGM), *Denmark Joins the List of Countries That Have Sharply Restricted Youth Gender Transitions* (Aug. 17, 2023), https://perma.cc/9RG8-ETZ2.

Appellate Case: 23-2681    Page: 10    Date Filed: 09/07/2023 Entry ID: 5314002

transgender status and fails intermediate scrutiny. R. Doc. 1, at 41. Second, they claimed the Act violated a fundamental substantive-due-process right to "seek and follow medical advice." R. Doc. 1, at 43. Third, they claimed the Act somehow violated the First Amendment by barring doctors from referring children for illegal procedures. R. Doc. 1, at 44-46.

Plaintiffs sought a preliminary injunction, and the district court initially granted that motion from the bench and largely without explanation. R. Doc. 59. Then, nearly two weeks later, the district court issued a written order concluding that intermediate scrutiny applied to Plaintiffs' equal-protection claims and strict scrutiny to their fundamental-rights and First Amendment claims and that the Act failed both standards. That order didn't discuss any of the hundreds of pages of expert material, other evidence, or the risks identified by Arkansas. Instead, the district court simply cited an amicus brief filed by medical trade groups and concluded, from it, that "[g]ender affirming treatment is supported by medical evidence that has been subject to rigorous study" and that Arkansas's law was "unnecessar[y]." *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 891 (E.D. Ark. 2021).

Arkansas appealed, and a panel of this Court affirmed—but only on the basis of Plaintiffs' equal-protection theory. The panel held that the SAFE Act discriminates based on sex because "under the Act, medical procedures that are permitted for a minor of one sex are prohibited for a minor of another sex." *Brandt by &*

7

*through Brandt v. Rutledge*, 47 F.4th 661, 669 (8th Cir. 2022). It reasoned that "[a] minor born as a male may be prescribed testosterone or have breast tissue surgically removed, . . . but a minor born as a female" may not. *Id.* It ignored the absence of factual findings, opining that there was sufficient information in the record that the district court could have cited.

Arkansas sought en banc review. Five judges voted in favor, agreeing that "this is a case of exceptional importance" and ought to be heard en banc. *Brandt by & through Brandt v. Rutledge*, No. 21-2875, 2022 WL 16957734, at *1 (8th Cir. Nov. 16, 2022) (Stras, J., dissenting from denial). Three judges concluded that such review was "not appropriate" at that time because the case was "in the midst of a [merits] trial." *Id.* (Colloton, J., concurring in denial). Arkansas's petition thus fell one vote short on the ground that a trial ruling might change things.

But the trial, and subsequent order, largely mirrored the preliminary-injunction proceedings. Plaintiffs' experts—four practitioners whose business is facilitating pediatric gender-transition procedures—opined that the evidence doesn't justify banning the procedures. And Arkansas's experts (including physicians who don't make their living from facilitating childhood transitions) detailed the undisputed risks associated with gender-transition procedures and explained the lack of evidence supporting the efficacy of such procedures.

8

The district court permanently enjoined the Act. It reiterated its prior legal conclusions, following the panel's direction that it apply intermediate scrutiny. R. Doc. 283, at 66. It acknowledged many of the risks associated with these procedures, including permanent sterilization. *E.g.*, R. Doc. 283, at 70. But it held that practitioners who make their living performing such procedures, rather than legislators, should decide how states should respond to those risks.

As for Arkansas's experts—physicians who deem these procedures unethical and thus don't participate in them—the district court found that they couldn't be trusted because they are religious. Indeed, citing nothing more than their attendance at a seminar sponsored by "a Christian-based legal advocacy group," the district court found that Dr. Paul Hruz (a respected pediatric endocrinologist) and Dr. Patrick Lappert (a cosmetic and plastic surgeon who "served the Office of the Surgeon General-U.S. Navy as a Specialty Leader in Plastic and Reconstructive Surgery") were testifying "more from a religious doctrinal standpoint" rather than as medical experts. R. Doc. 283, at 58-59. The district court made a similar finding about Dr. Stephen Levine, an award-winning psychiatrist and researcher who has treated patients with gender dysphoria for decades. R. Doc. 283, at 56-57. The district court found that Dr. Levine was "a very credible witness," but discredited his opinions based on Dr. Levine's "conflict between his scientific understanding for the need for transgender care and his faith." R. Doc. 283, at 57.

9

Arkansas timely appealed and now seeks an initial hearing by the en banc court.

Appellate Case: 23-2681    Page: 14    Date Filed: 09/07/2023 Entry ID: 5314002

# REASONS WHY INITIAL HEARING EN BANC SHOULD BE GRANTED

## I. The panel's conclusion that heightened scrutiny applies to regulations of gender-transition procedures makes this Court an outlier among the circuits.

The panel concluded that any regulation of pediatric gender-transition procedures is subject to heightened scrutiny because it necessarily classifies based on sex. *See Brandt*, 47 F.4th at 669-70. Five judges of this Court previously voted to vacate that decision. *Brandt*, 2022 WL 16957734, at *1. And the Sixth and Eleventh Circuits have now rejected the panel's conclusion and applied rational-basis review to sustain substantially identical statutes. *See L. W.*, 73 F.4th at 419; *Eknes-Tucker*, 2023 WL 5344981, at *16-17.[2] Now is the time for the full Court to step in, overrule the panel opinion, and bring this Circuit in line with the rest of the Nation. Indeed, absent action by the full Court the laws of all but one state in this Circuit will be subject to challenge.

---

[2] On July 8, 2023, the Sixth Circuit stayed a district-court order enjoining Tennessee's similar law pending appeal. *See L. W.*, 73 F.4th at 419. In light of that decision, the district court that had preliminarily enjoined Kentucky's similar law stayed its own order pending appeal, and the Sixth Circuit upheld that stay. *See Doe 1 v. Thornbury*, 75 F.4th 655 (6th Cir. 2023). Those cases were consolidated and argued on September 1. And the Sixth Circuit has pledged to issue a final decision in both "no later than September 30." *L. W.*, 73 F.4th at 422.

On August 21, the Eleventh Circuit issued a final decision vacating the preliminary injunction against Alabama's similar law. *Eknes-Tucker*, 2023 WL 5344981, at *16-17. Following that decision, the district court that had preliminarily enjoined Georgia's similar stayed its own order. *See Order, Doc. 119, Koe v. Noggle*, No. 1:23-CV-2904-SEG (N.D. Ga. Sept. 5, 2023).

Appellate Case: 23-2681    Page: 15    Date Filed: 09/07/2023 Entry ID: 5314002

Under the Equal Protection Clause, states may not provide "dissimilar treatment for men and women who are . . . similarly situated." *Reed v. Reed*, 404 U.S. 71, 77 (1971). Sex-based classifications warrant intermediate scrutiny. *Id.* The panel held that Arkansas's law classifies based on sex on two distinct theories— both of which were considered and rejected by the Sixth and Eleventh Circuits. *See Eknes-Tucker*, 2023 WL 5344981, at *16-17 (citing with approval Judge Stras's statement dissenting from en banc denial); *L. W.*, 73 F.4th at 421 (citing *Brandt* and acknowledging that it took a "different approach[]").

*First*, the panel concluded that the Act classifies based on sex because it "prohibits 'gender transition procedures,' which are defined as procedures or medications that are intended to change 'the individual's biological sex.'" *Brandt*, 47 F.4th at 669 (quoting Ark. Code Ann. 20-9-1501(6)(A)). On the panel's view, the Act's very definition of what is prohibited rests on a sex classification and makes the statute subject to intermediate scrutiny.

The Sixth and Eleventh Circuits rejected that conclusion and held that nearly identical laws are facially sex-neutral. Both held that there is no sex-based classification where a state prohibits gender-transition procedures for both sexes. The Sixth Circuit held that because Tennessee's nearly identical law "bans [gender-transition procedures] for minors of both sexes," it "does not prefer one sex to the detriment of the other" and is therefore subject only to rational-basis review.

12

*L. W.*, 73 F.4th at 419. Similarly, the Eleventh Circuit held that Alabama's nearly identical law "does not establish an unequal regime for males and females" but instead "restricts [gender-transition procedures] for *all* minors." *Eknes-Tucker*, 2023 WL 5344981, at *16 (emphasis in original). The same is true here because Arkansas's law prohibits gender-transition procedures for *all* minors regardless of sex. *See* Ark. Code Ann. 20-9-1501(6)(A).

*Second*, the panel also held that the Act, as a practical matter, classifies based on sex because specific "medical procedures . . . are permitted for a minor of one sex" and "prohibited for a minor of another sex." *Brandt*, 47 F.4th at 669. For instance, the panel noted that under the Act, a "minor born as a male may be prescribed testosterone . . . , but a minor born as a female is not permitted to seek the same medical treatment." *Id.* Thus, according to the panel, a "minor's sex at birth determines whether or not the minor can receive certain types of medical care" and that means "Act 626 discriminates on the basis of sex." *Id.*

The Sixth and Eleventh Circuits held that approach is foreclosed by the Supreme Court's decision in *Dobbs*. There, the Supreme Court held that "[t]he regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny . . . ." *Dobbs*, 142 S. Ct. at 2245-46.

Applying that holding, the Sixth Circuit held that, contrary to the panel's reasoning here, Tennessee's nearly identical law doesn't, as a practical matter,

13

classify based on sex because the specific gender-transition procedures that are prohibited can each only be undergone by one sex. That is, a "girl cannot transition through use of estrogen; only testosterone will do that" and a "boy cannot transition through use of testosterone; only estrogen will do that." *L. W.*, 73 F.4th at 419. The use of testosterone to transition and the use of estrogen to transition are each sex-specific procedures, and "the reality that the drugs' effects correspond to sex in these understandable ways and that Tennessee regulates them does not require skeptical scrutiny." *Id.* The court thus applied rational basis.

The Eleventh Circuit reached the same conclusion. "The cross-sex hormone treatments for gender dysphoria are different for males and for females because of biological differences between males and females—females are given testosterone and males are given estrogen." *Eknes-Tucker*, 2023 WL 5344981, at *16. "For that reason, it is difficult to imagine how a state might regulate the use of puberty blockers and cross-sex hormones for the relevant purposes in specific terms without referencing sex in some way." *Id.* The court held that intermediate scrutiny is not applicable simply because a state chooses to regulate procedures that "are themselves sex-based." *Id.*

The panel's decision to apply intermediate scrutiny to regulations of gender-transition procedures leaves this Circuit standing alone. The laws at issue in Tennessee, Kentucky, Alabama, and Georgia are no different than Arkansas's. Yet

14

states in the Sixth and Eleventh Circuits may protect children from these procedures so long as the prohibition is rational, while states in this Circuit may only do so if their laws survive a more demanding standard.

The full Court should hear this case en banc, overrule the panel decision, and follow the Sixth and Eleventh Circuits in holding that rational-basis review applies.

## II. The Court should take this case en banc now rather waiting for the panel to apply its prior erroneous opinion.

A year ago, a near-majority of this Court concluded that "this is a case of exceptional importance." *Brandt*, 2022 WL 16957734, at *1 (Stras, J., dissenting from denial) (quotation omitted). It concerns "a major piece of Arkansas legislation," *id.*, the first of its kind that has since been echoed by nearly half the country (including all but one state in this Circuit). While three members of the Court deemed it "not appropriate for rehearing en banc" last year "in the midst of a trial," *id.* (Colloton, J., concurring in denial), now is the appropriate time, and the Court should not wait for a second decision from the panel. Review is appropriate now for two primary reasons.

*First*, the panel's significant errors weigh in favor of immediate en banc hearing. The dissenting members of the Court correctly recognized that "[t]he panel opinion will frame the debate in the future, if not effectively decide any later appeal." *Id.* (Stras, J., dissenting from denial). The panel has already held that the

15

SAFE Act discriminates based on sex and is therefore subject to intermediate scrutiny, and a subsequent panel is bound by that legal conclusion. *See Howe v. Varity Corp.*, 36 F.3d 746, 752 (8th Cir. 1994). The panel's opinion thus significantly constrains litigation of this appeal. The full Court can consider what standard of review ought to apply to Arkansas's law—and substantially identical laws adopted by all but one state in this Circuit.[3]

In cases challenging government action "the standard of review is often outcome determinative." *Tineo v. Att'y Gen. United States of Am.*, 937 F.3d 200, 212 (3d Cir. 2019) (cleaned up). That was true for the district court here, and there's every reason to think that would likewise be true for the same panel applying that same erroneous standard to essentially the same record as before. Indeed, the panel previously upheld the preliminary injunction based on "the district court's weighing of the competing evidence," *Brandt*, 47 F.4th at 670, and while the record is certainly more voluminous now, the facts haven't really changed. The same experts testified about the same medical research, and the district court, as it did before, resolved every dispute as to what ought to be done about that evidence against the State. R. Doc. 283, at 61. So there's no reason to wait to reconsider the

---

[3] *See* Ia. Stat. 147.164; Mo. Stat. 191.1720; Laws 2023, LB 574 sec. 17 (Nebraska); N.D.C.C. 12.1-36.1-02; S.D.C.L. 34-24-34.

Appellate Case: 23-2681    Page: 20    Date Filed: 09/07/2023 Entry ID: 5314002

appropriate standard of review, and this Court should grant initial hearing en banc to align this Court with the rest of the Circuits.

*Second*, immediate en banc review is warranted to avoid needlessly wasting judicial and public resources and to prevent harms to children. Another round of panel review will require significant time and the parties to fully brief this case under an erroneous standard that the full Court—like the Sixth and Eleventh Circuits—is likely to reject. In the meantime, children in Arkansas will continue to suffer the consequences of experimental procedures—including, as the district court acknowledged, permanent sterilization. R. Doc. 283, at 39-40, 70. And leaving the panel's erroneous decision in place for longer invites further meritless, time-consuming, and costly challenges to the laws of other states in this Circuit.

Instead, this Court should grant initial hearing en banc so the parties can brief the relevant standard and appeal just once. And doing so, this Court should join the rest of the Nation, hold rational basis applies to laws like Arkansas's, and finally allow Arkansas's law to go into effect.

17

## CONCLUSION

For these reasons, this petition should be granted.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

NICHOLAS J. BRONNI
  Arkansas Solicitor General

DYLAN L. JACOBS
  Deputy Solicitor General

MICHAEL A. CANTRELL
  Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-2007
dylan.jacobs@arkansasag.gov

Appellate Case: 23-2681     Page: 22     Date Filed: 09/07/2023 Entry ID: 5314002

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it  contains 3,804 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this document complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Times New Roman, using Microsoft Office.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/  Dylan L. Jacobs*
Dylan L. Jacobs

## CERTIFICATE OF SERVICE

I certify that on September 7, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/ Dylan L. Jacobs*
Dylan L. Jacobs