IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

DYLAN BRANDT, *et al.*,
    *Plaintiffs-Appellees*,

v.

TIM GRIFFIN, *et al.*,
    *Defendants-Appellants*.

_____

Appeal from the United States District Court for the Eastern
District of Arkansas, Hon. James M. Moody, Jr., No. 4:21-CV-00450

**BRIEF FOR THE STATES OF MISSOURI, IOWA,
NEBRASKA, NORTH DAKOTA, AND SOUTH DAKOTA
IN SUPPORT OF DEFENDANTS-APPELLANTS'
PETITION FOR INITIAL HEARING EN BANC**

_____

**ANDREW T. BAILEY**
*Attorney General*

Joshua M. Divine, MO 69875
*Solicitor General*
207 W. High St.
Jefferson City, Missouri 65101
Phone: 573-751-8870
Josh.Divine@ago.mo.gov

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

STATEMENT OF INTEREST AND INTRODUCTION ........................... 1
ARGUMENT ................................................................................................ 2
   I.  *Brandt* affects all States in the Eighth Circuit that have similar laws. ................................................................................ 2
   II.  States in the Eighth Circuit have a strong interest in obtaining clarity as quickly as possible in light of the emerging national consensus against these interventions. ............ 4
   III. *Brandt* is a national outlier and should be speedily corrected. ...... 7
CONCLUSION ......................................................................................... 11
CERTIFICATE OF COMPLIANCE ..................................................... 123
CERTIFICATE OF SERVICE ................................................................ 13

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Brandt by & through Brandt v. Rutledge*,

   47 F.4th 661 (8th Cir. 2022) ............................................ 1–4, 6, 7, 9, 10

*Dobbs v. Jackson Women's Health Organization*,

   142 S. Ct. 2228 (2022) ................................................................... 9, 10

*Doughty v. Dir. of Revenue*,

   387 S.W.3d 383 (Mo. 2013) ................................................................. 3

*Eknes-Tucker v. Gov. of Alabama*,

   No. 22-11707, 2023 WL 5344981 (11th Cir. Aug. 21, 2023) ............ 9, 10

*Glossip v. Mo. Dep't of Transp. & Highway Patrol Emps. Ret. Sys.*,

   411 S.W.3d 796 (Mo. 2013) ................................................................. 3

*L. W. v. Skrmetti*,

   73 F.4th 408 (6th Cir. 2023) ............................................................ 9, 10

**Statutes**

Ark. Code § 20-9-1502(a) ........................................................................ 8

Ark. Code § 20-9-1501(6) ........................................................................ 8

Iowa Code § 147.164 ............................................................................... 2

Mo. Rev. Stat § 191.1720 ..................................................................... 2, 8

N.D. Cent. Code § 12.1-36.1 ................................................................2

Neb. Rev. Stat. § 71-7304 ...................................................................2

S.D. Codified Laws § 34-24-34 ...........................................................2

**Other Authorities**

*Care of Children and Adolescents with Gender Dysphoria: Summary*, Socialstyrelsen: The National Board of Health and Welfare (Feb. 2022) ................................................................................................5

Joseph Elkadi, et al., *Developmental Pathway Choices of Young People Presenting to a Gender Service with Gender Distress: A Prospective Follow-Up Study*, Children (Basel, Switzerland) vol. 10(2) 314 (Feb. 2023)) ..................................................................................................5

NHS England, *Interim Service Specification* (2022) ...............................4

Respaut & Terhune, *Putting Numbers on the Rise in Children Seeking Gender Care*, Reuters (Oct. 6, 2022) ...................................................6

*Topic Brief: Treatments for Gender Dysphoria in Transgender Youth*, AHRQ, Nom. No. 0928 (2021) .............................................................5

# STATEMENT OF INTEREST AND INTRODUCTION

Missouri and four other States in the Eighth Circuit—Iowa, Nebraska, North Dakota, and South Dakota—file this amicus brief as of right under Rule 29(a)(2) in support of Arkansas' petition for initial en banc review because each Amici State has a law similar to Arkansas', and all these States have a strong interest in this Court speedily resolving the critical questions involved. The *Brandt* decision is a national outlier that adopts incorrect presumptions and fails to cite arguably the most relevant precedent. And if interpreted the way plaintiffs and the district court below interpreted it, the decision would impose a straitjacket preventing States in the Eighth Circuit from regulating procedures that Sweden has said cause more harms than benefits, Finland has described as experimental, and European countries and dozens of States have greatly restricted.

This legal issue greatly affects the ability of States to respond to a pressing need involving health and welfare of children. The Court should not hesitate to fully resolve the issue en banc.

# ARGUMENT

*Brandt* affects nearly all States in the Eighth Circuit, even States like Missouri that so far have faced litigation only in state court. The States have a strong interest in regulating procedures deemed by an emerging international consensus to be too dangerous. And the *Brandt* decision is both incorrect and an outlier nationally.

## I.  *Brandt* affects all States in the Eighth Circuit that have similar laws.

Following significant restriction of gender transition interventions by European countries, every State in the Eighth Circuit but one now has a law regulating gender transition interventions.[1] All these States would clearly be able to enforce their laws if situated in the Sixth or Eleventh Circuits, but back home the *Brandt* decision clouds the issue.

This is true not only for States sued in federal district court, where Eighth Circuit precedent is binding, but also States sued in their own courts. Missouri, for example, was recently sued in state court solely under the Missouri Constitution, yet the plaintiffs there relied heavily on *Brandt* because the Missouri Constitution is coextensive with the U.S.

---

[1] Mo. Rev. Stat § 191.1720; Iowa Code § 147.164; Neb. Rev. Stat. § 71-7304; N.D. Cent. Code § 12.1-36.1; S.D. Codified Laws § 34-24-34.

2

Constitution with respect to equal protection and due process, and Missouri courts thus look to Eighth Circuit precedent as persuasive authority. *See Suggestions in Supp. of Mot. for Prelim. Inj., Noe v. Parson*, No. 23AC-CC04530, at 3, 26, 30, 32, 35–37, 41–43, 49, 56 (Cole Cnty. 2023) (citing *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022)); *see also Glossip v. Mo. Dep't of Transp. & Highway Patrol Emps. Ret. Sys.*, 411 S.W.3d 796, 805 (Mo. 2013) ("[T]he Missouri Constitution's equal protection clause is coextensive with the Fourteenth Amendment."); *Doughty v. Dir. of Revenue*, 387 S.W.3d 383, 387 (Mo. 2013) (describing the "due process protections of both our state and national constitutions" as "coextensive").

*Brandt* in fact creates the destabilizing possibility of state courts and federal courts in the same jurisdiction splitting on the same issue. While plaintiffs here argue that the *Brandt* decision justifies preliminary injunctive relief in federal court, just three weeks ago a state court in Missouri, assessing the same legal issues, denied preliminary injunctive relief, concluding that the plaintiffs "ha[ve] not shown probable success" on the merits, "have not clearly shown a sufficient threat of irreparable injury," and have not rebutted arguments that "[t]he science and medical

3

evidence is conflicting." *Order Denying Mot. for Prel. Inj., Noe v. Parson* (Aug. 25, 2023). *Brandt* creates the risk that a State could prevail if sued in state court but lose if sued in federal district court.

   II.   **States in the Eighth Circuit have a strong interest in obtaining clarity as quickly as possible in light of the emerging national consensus against these interventions.**

This issue requires prompt attention because it involves urgent health and welfare concerns for children. In recent months and years, several European countries—including Sweden, Finland, Norway, and the United Kingdom—have greatly restricted the use of these interventions after determining that there is not sufficient evidence to prove safety or efficacy in light of the known and serious side effects. In many of these countries, surgeries are prohibited entirely for minors, and hormonal interventions are allowed only in formal research protocols (which have not yet begun); they are not permitted in general medicine. *See, e.g.,* NHS England, *Interim Service Specification* 16 (2022) (stating that, following rigorous reviews of the evidence, the National Health

4

Service "will only commission [puberty blockers] in the context of a formal research protocol").[2]

Sweden, for example, restricted the use of these interventions after determining in early 2022 that "the risks of puberty suppressing treatment with GnRH-analogues [puberty blockers] and gender-affirming hormonal treatment currently outweigh the possible benefits." *Care of Children and Adolescents with Gender Dysphoria: Summary*, Socialstyrelsen: The National Board of Health and Welfare 3 (Feb. 2022) (quoted in Joseph Elkadi, et al., *Developmental Pathway Choices of Young People Presenting to a Gender Service with Gender Distress: A Prospective Follow-Up Study*, Children (Basel, Switzerland) vol. 10(2) 314 (Feb. 2023)).[3] The U.S. Agency for Healthcare Research and Quality similarly agreed two years ago that these interventions lack evidentiary support: "There is a lack of current evidence-based guidance for the care of children and adolescents who identify as transgender, particularly regarding the benefits and harms of pubertal suppression, medical affirmation with hormone therapy, and surgical affirmation." *Topic Brief:*

---

[2] https://perma.cc/N3CY-JYNY
[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9955757

5

*Treatments for Gender Dysphoria in Transgender Youth*, AHRQ, Nom. No. 0928, at 2 (2021).[4]

When comparing the speculative benefits of these interventions with their known risks—*e.g.*, infertility, interference with normal brain development, increased rates of cardiovascular disease and cancer, and decreased life expectancy—it is entirely reasonable for health regulators to follow the emerging international consensus and restrict the use of these interventions. The *Brandt* decision, interpreted the way the district court did and plaintiffs do, threatens the ability of States to exercise one of their most fundamentally important sovereign functions.

That sovereign function is needed now more than ever because States have seen the number of individuals seeking these interventions skyrocket in just the past five years. Reuters reports that the number of individuals seeking these interventions tripled between 2017 and 2021. Respaut & Terhune, *Putting Numbers on the Rise in Children Seeking*

---

[4] https://effectivehealthcare.ahrq.gov/system/files/docs/topic-brief-gender-dysphoria.pdf

6

*Gender Care*, Reuters (Oct. 6, 2022).[5] The numbers have increased even more since 2021.

### III. *Brandt* is a national outlier and should be speedily corrected.

As Arkansas notes, every federal court of appeals to consider the issue after *Brandt* has rejected its reasoning. For good reason. As *Brandt* was the first federal court of appeals decision to be released on this issue, *Brandt* did not have the benefit of the arguments that have percolated in the past year. *Brandt* thus makes several fundamental errors that this Court should speedily correct. This filing briefly touches on two errors.

First, the decision misunderstood how these statutes operate. *Brandt* applied heightened scrutiny to the Arkansas statute on the theory that, under the statute, "[a] minor born as a male may be prescribed testosterone … but a minor born as a female is not permitted to seek the same treatment." *Brandt*, 47 F.4th at 669. This premise is fundamentally flawed. These statutes in fact do *not* prohibit females from receiving testosterone while allowing the same for males. Both female and male patients naturally have both testosterone and estrogen (though

---

[5] https://www.reuters.com/investigates/special-report/usa-transyouth-data/

in substantially different levels). These laws do not prohibit female (or male) patients from receiving testosterone to fix, for example, a gland problem. So it is *not* true that a "minor born male may be prescribed testosterone . . . but a minor born female is not permitted to seek the same treatment." *Id.*

Rather, these laws simply restrict one specific procedure: gender transition. And they restrict that procedure *regardless* of sex and *regardless* of whatever device or method a physician may choose to use. Missouri, for example, restricts using "testosterone, estrogen, *or* other androgens" administered "for the purpose of a gender transition." Mo. Rev. Stat. §§ 191.1720.2(2), 191.1720.4 (emphasis added). And Arkansas' law states that a "physician or other healthcare professional shall not provide gender transition procedures" to minors and defines "gender transition procedure" to include "*any* medical or surgical service … that seeks to" cause gender transition. Ark. Code §§ 20-9-1502(a), 20-9-1501(6) (emphasis added). In other words, under these laws both males and females can still receive testosterone or estrogen for a whole variety of medical purposes, but *no* male or female is allowed to receive *any*

8

hormone for the purpose of gender transition. The same procedure is regulated the same way for both male and female patients.

These laws thus plainly classify based solely on procedure, not sex, and are thus subject only to rational basis review because they treat similarly situated male and female patients alike, as every other federal court of appeals to address the issue has concluded. *Eknes-Tucker v. Gov. of Alabama*, No. 22-11707, 2023 WL 5344981, at *15 (11th Cir. Aug. 21, 2023); *L. W. v. Skrmetti*, 73 F.4th 408, 419, 421 (6th Cir. 2023). Indeed, the logic of *Brandt* (as interpreted by plaintiffs and the district court) does "not equalize burdens or benefits between girls and boys"; it merely "force[s] [States] to *either* ban puberty blockers and hormones for all purposes *or* allow them for all purposes." *Eknes-Tucker*, 2023 WL 5344981, at *20 (Brasher, J., concurring) (emphasis in original).

Second, *Brandt* overlooked binding Supreme Court precedent. As every other court of appeals to address these issues has determined, the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), compels the conclusion that even if these statutes did treat male and female patients differently (because male and female patients have different natural hormone levels), that

9

would not raise concerns about equal protection because "'[t]he regulation of a medical procedure that only one sex can undergo does not trigger heightened constitutional scrutiny.'" *Eknes-Tucker*, 2023 WL 5344981, at *17 (quoting *Dobbs*, 142 S. Ct. at 2245–46); *L. W.*, 73 F.4th at 419 (same). Unlike the Sixth and Eleventh Circuits, *Brandt* did not cite *Dobbs*, presumably because *Dobbs* was issued just days after oral argument in *Brandt,* so the Court may not have been aware of *Dobbs'* relevance.

The Court should waste no time in speedily correcting these flaws and bringing the Eighth Circuit into alignment with every other federal court of appeals to have addressed this issue.

10

Appellate Case: 23-2681    Page: 14    Date Filed: 09/14/2023 Entry ID: 5318337

## CONCLUSION

Amici States are actively addressing one of the most important issues affecting the health and welfare of children today. The States urge this Court to grant initial hearing en banc to speedily resolve this incredibly important issue.

September 14, 2023

Respectfully submitted,

**ANDREW T. BAILEY**,
Attorney General

/s/ *Joshua M. Divine*
Joshua M. Divine, 69875MO
  Solicitor General
Office of the Attorney General
207 West High St.
Jefferson City, MO 65101
Phone: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for Amicus Curiae*

*Counsel for Additional Amici States*

Brenna Bird
Attorney General
State of Iowa

Michael T. Hilgers
Attorney General
State of Nebraska

Drew H. Wrigley
Attorney General
State of North Dakota

Marty J. Jackley
Attorney General
State of South Dakota

12

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that Appellants' Brief complies with the typeface and formatting requirements of Fed. R. App. P. 29 and 32, in that it is written in Century Schoolbook 14-point font, and that it contains 1,798 words as determined by the word-count feature of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The hard copies submitted to the clerk are exact copies of the CM/ECF submission.

*/s/ Joshua M. Divine*
Joshua M. Divine

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was electronically filed on September 14, 2023, with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system; that all participants are registered CM/ECF users; and that service will be accomplished by the CM/ECF system.

*/s/ Joshua M. Divine*
Joshua M. Divine